## No. 26-11284

## In the United States Court of Appeals for the Eleventh Circuit

HEALTHY GULF, HABITAT RECOVERY PROJECT, CENTER FOR BIOLOGICAL DIVERSITY, SIERRA CLUB, and TURTLE ISLAND RESTORATION NETWORK,

PETITIONERS,

V.

U.S. DEPARTMENT OF THE INTERIOR, DOUG BURGUM, BUREAU OF OCEAN ENERGY MANAGEMENT, and MATTHEW GIACONA,

RESPONDENTS,

BP EXPLORATION & PRODUCTION INC.

INTERVENOR-RESPONDENT.

On Petition for Review of Final Agency Action of the Bureau of Ocean Energy Management

## BP EXPLORATION & PRODUCTION INC.'S MOTION TO DISMISS OR TRANSFER FOR IMPROPER VENUE

A. Katrine Jakola
Kristopher S. Ritter
KIRKLAND & ELLIS LLP
333 W. Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000

George W. Hicks, Jr.
  *Counsel of Record*
Aaron L. Nielson
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 75205
(214) 972-1770
george.hicks@kirkland.com

*Counsel for Intervenor-Respondent BP Exploration & Production Inc.*

July 15, 2026

No. 26-11284, *Healthy Gulf et al. v. U.S. Department of the Interior et al.*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

In compliance with 11th Circuit Rule 26.1-1, the undersigned certifies that the following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this particular case or appeal, and includes subsidiaries, conglomerates, affiliates, and parent corporations, including any publicly held company that owns 10% or more of the party's stock, and other identifiable legal entities related to a party.

1. BP Exploration & Production Inc. (Intervenor-Respondent)

2. BP p.l.c. (Parent of Intervenor-Respondent)

3. Bureau of Ocean Energy Management (Respondent)

4. Burgum, Doug (Secretary of the Interior, Respondent)

5. Center for Biological Diversity, Inc. (Petitioner)

6. Ellis, Angela (Counsel for Respondents)

7. Earthjustice (Counsel for Petitioners)

8. Giacona, Matthew (Director of Bureau of Ocean Energy Management, Respondent)

9. Habitat Recovery Project (Petitioner)

10. Hardy, Brettny (Counsel for Petitioners)

11. Healthy Gulf (Petitioner)

12. Hicks, Jr., George W. (Counsel for Intervenor-Respondent)

13. Jakola, A. Katrine (Counsel for Intervenor-Respondent)

14. Kirkland & Ellis LLP (Counsel for Intervenor-Respondent)

15. Nielson, Aaron L. (Counsel for Intervenor-Respondent)

16. Ritter, Kristopher S. (Counsel for Intervenor-Respondent)

17. Roy, Rumela (Counsel for Petitioners)

18. Sierra Club (Petitioner)

19. Turtle Island Restoration Network (Petitioner)

20. United States Department of Interior (Respondent)

/s/ *George W. Hicks, Jr.*

Attorney for Intervenor-
Respondent BP Exploration &
Production Inc.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ............................................................. C-1

TABLE OF CITATIONS ...................................................................... ii

INTRODUCTION ...................................................................................1

BACKGROUND .....................................................................................1

A. Legal Background .......................................................................1

B. Factual Background.....................................................................3

ARGUMENT..........................................................................................5

I. Venue Is Improper Because No "Affected State" Under OCSLA Lies Within This Circuit.........................................................................5

    A. Louisiana Is the Only "Adjacent State" Under OCSLA. .........8

    B. Only Louisiana Is Directly Connected by Transportation Facilities to the Kaskida Project.....................16

    C. Only Louisiana Will Directly Receive Oil Extracted From the Kaskida Project. ........................................................17

    D. The Secretary Has Not Designated Any State in Accordance with 43 U.S.C. §1331(f)(4)....................................18

    E. The Secretary Has Not Made Any Finding Regarding a State in Accordance with 43 U.S.C. §1331(f)(5)......................19

II. Alabama Is Not An "Affected State" Under OCSLA............................20

III. Because Venue Is Improper, The Court Must Dismiss The Petition Or, Alternatively, Transfer It To The Fifth Circuit. ................25

CONCLUSION ......................................................................................26

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Atl. Maritime Servs., LLC v. Ecopetrol Am., LLC,*
2026 WL 322641 (E.D. La. Feb. 6, 2026) ............................................. 11-13, 15

*Becker v. C.I.R.,*
852 F.2d 524 (11th Cir. 1988) ................................................................. 25-26

*Bourg v. BT Operating Co.,*
2009 WL 960011 (S.D. Tex. Apr. 8, 2009) ........................................................13

*Danos & Curole Marine Contractors, Inc. v. BP Am. Prod. Co.,*
61 F.Supp.3d 679 (S.D. Tex. 2014) ......................................................... 12-15

*Defenders of Wildlife v. Bureau of Ocean Energy Mgmt.,*
684 F.3d 1242 (11th Cir. 2012) ............................................................... 1-2, 16

*Edwardsen v. U.S. Dep't of Interior,*
268 F.3d 781 (9th Cir. 2001) ..........................................................................6

*Federal Power Comm'n v. Texaco, Inc.,*
377 U.S. 33 (1964) .................................................................................. 25-26

*Ga. Republican Party v. SEC,*
888 F.3d 1198 (11th Cir. 2018) ....................................................................26

*Gulf Offshore Co. v. Mobil Oil Corp.,*
453 U.S. 473 (1981) .......................................................................................9

*Gulf Restoration Network v. Salazar,*
683 F.3d 158 (5th Cir. 2012) ....................................................................2, 6

*Lewis v. Helmerich & Payne Int'l Drilling Co.,*
2015 WL 1040458 (E.D. La. Mar. 10, 2015) .......................................... 14-15

*Noel v. Freeport-McMoran Oil & Gas, LLC,*
2017 WL 515072 (E.D. La. Feb. 8, 2017) ......................................................14

*Organic Cannabis Found., LLC v. Comm'r of Internal Revenue*,
  962 F.3d 1082 (9th Cir. 2020) ...................................................................19

*Panhandle E. Pipe Line Co. v. Fed. Power Comm'n*,
  324 U.S. 635 (1945) ..............................................................................8

*Snyder Oil Corp. v. Samedan Oil Corp.*,
  208 F.3d 521 (5th Cir. 2000) ...........................................9-11, 14-16

*Tana Exploration Co. v. Implicit Oil & Gas, L.P.*,
  2015 WL 13697932 (S.D. Tex. Mar. 30, 2015) ..............................13

*Total E & P USA, Inc. v. Marubeni Oil & Gas (USA), Inc.*,
  389 F.Supp.3d 478 (S.D. Tex. 2018) ...................................... 9, 11-15

*United States v. Pendergrass*,
  995 F.3d 858 (11th Cir. 2021) ...........................................................22

**Statutes**

16 U.S.C. §1456(c)(3)(B) ............................................................................22

43 U.S.C. §1331 *et seq.* ..............................................................................1

43 U.S.C. §1331(f)............................................................1, 7-8, 16-21

43 U.S.C. §1331(f)(1) .............................................................8, 10, 16, 21

43 U.S.C. §1331(f)(2) ......................................................................16, 17, 21

43 U.S.C. §1331(f)(3) ..................................................................................18

43 U.S.C. §1331(f)(4) ...........................................................................18, 21

43 U.S.C. §1331(f)(5) ...........................................................................19, 22

43 U.S.C. §1333(a)(1)(A) ..........................................................................17

43 U.S.C. §1333(a)(2) ........................................................ 8-10, 16, 21

43 U.S.C. §1333(a)(2)(A) ......................................................................9, 15

43 U.S.C. §1334(a) ........................................................................................2

43 U.S.C. §1349(c)(2) ................................................ 1, 3, 5-6, 20, 25

43 U.S.C. §1349(c)(3) ..................................................................................26

43 U.S.C. §1351........................................................................................2

43 U.S.C. §1351(h)(1)(B)..............................................................................22

**Regulations**

15 C.F.R. §930.76........................................................................................22

30 C.F.R. §250.201(a) ..................................................................................2

30 C.F.R. §550.101 ........................................................................................2

30 C.F.R. §550.260 ........................................................................................22

30 C.F.R. §550.270(a)(2)..............................................................................22

71 Fed. Reg. 127 (Jan. 3, 2006) ..................................................................12

## INTRODUCTION

Petitioners challenge the federal government's approval of the Development Operations Coordination Document ("DOCD") submitted by BP Exploration & Production Inc. ("bp") in conjunction with the Kaskida project, an oil and gas development located 190 miles southwest of Louisiana in the Western Gulf of America. But Petitioners filed in the wrong court. Under the Outer Continental Shelf Lands Act ("OCSLA"), judicial review of the government's approval of a DOCD is available "only in a United States court of appeals for a circuit in which an affected State is located." 43 U.S.C. §1349(c)(2). OCSLA provides five ways in which a state can be an "affected State," *see id.* §1331(f), but no state "located" in this circuit satisfies any of them. Only Louisiana—located in the Fifth Circuit—satisfies any of OCSLA's criteria. Because venue is improper in this circuit, the Court must dismiss the petition or transfer it to the Fifth Circuit.

## BACKGROUND

### A. Legal Background

OCSLA governs oil and gas leasing, exploration, and development on the Outer Continental Shelf ("OCS"). *See* 43 U.S.C. §1331 *et seq.*; *see also Defenders of Wildlife v. Bureau of Ocean Energy Mgmt.*, 684 F.3d 1242, 1246 (11th

1

Cir. 2012). The Secretary of the Interior is charged with administering OCSLA, and the Secretary has delegated the authority to "regulate oil, gas, and sulphur exploration, development, and production operations" on the OCS to the Bureau of Ocean Energy Management ("BOEM"). *See* 43 U.S.C. §1334(a); 30 C.F.R. §550.101; *see also Defenders of Wildlife*, 684 F.3d at 1246.

Under OCSLA, development occurs in four stages: "(1) preparation of a leasing program; (2) lease sales; (3) exploration by the lessees; and (4) development and production." *Defenders of Wildlife*, 684 F.3d at 1246. Each stage involves a separate administrative review. *See id.*; *see also Gulf Restoration Network v. Salazar*, 683 F.3d 158, 165 (5th Cir. 2012). This case involves only the final stage—development and production.

The development and production stage requires the lessee to submit a development and production plan ("DPP"). *See* 43 U.S.C. §1351; *Gulf Restoration Network*, 683 F.3d at 165. For developments in the Western Gulf of Mexico, lessees submit a DOCD, which is a "modified form of a DPP" with substantially the same requirements. *Gulf Restoration Network*, 683 F.3d at 169-70; *see* 30 C.F.R. §250.201(a).

Before conducting any development and production activities, the lessee must obtain BOEM's approval of the DPP or DOCD. *See Gulf*

*Restoration Network*, 683 F.3d at 170.  OCSLA then provides for direct judicial review of BOEM's approval in an appropriate court of appeals:

> Any action of the Secretary to approve, require modification of, or disapprove any exploration plan or any development and production plan under this subchapter shall be subject to judicial review only in a United States court of appeals for a circuit in which an affected State is located.

43 U.S.C. §1349(c)(2).

## B.      Factual Background

The Kaskida project is an oil and gas development and production site located in Blocks 292, 293, 336, and 337 of the Keathley Canyon in the Western Gulf of America.  *See* BOEM022504; Declaration of John Boyle ("Boyle Decl.") ¶3.[1]  Within these blocks, bp intends to drill, complete, and produce six wells with four associated backup locations, in addition to installing a floating production unit with twelve mooring lines. BOEM022504.

The Kaskida project is located 190 miles southwest of the coast of Louisiana—far closer to Louisiana than any other state.  BOEM022504. Supplies and facilities to support the project will be located in Port Fourchon,

---

[1] Citations to "BOEM_____" are to the administrative record filed on July 1, 2026.  *See* Dkt. 24.

Louisiana (approximately 220 miles away), which will also be the debarkation point for supplies, equipment, and crews for the project. BOEM022505. Helicopter support will be provided out of Houma, Louisiana (approximately 229 miles away). *Id.*



BOEM001320.

Kaskida will have the capacity to produce 80,000 barrels of crude oil per day from six wells in the first phase. Boyle Decl. ¶4. Production is expected to start as early as 2029. *Id.* ¶5. Crude oil from the project will be

transported using a pipeline system directly connected to terminals in Louisiana. *Id.* ¶10. Any vessels carrying oil extracted from the project will transport the oil directly to Louisiana. *Id.* ¶11. No other state will be directly connected to the project or directly receive oil extracted from the project. *Id.* ¶12.

BP submitted its DOCD to BOEM in February 2025 and an amended version on November 13, 2025. BOEM022502. On March 13, 2026, BOEM approved the amended DOCD. BOEM002013; Dkt. 1-3 at 2-3. On April 20, 2026, Petitioners filed a petition for review of BOEM's approval of the DOCD, asserting that BOEM's approval "is arbitrary, capricious, and not in accordance with law." Dkt. 1-2 at 2.

## ARGUMENT

**I.** **Venue Is Improper Because No "Affected State" Under OCSLA Lies Within This Circuit.**

OCSLA provides: "Any action of the Secretary to approve, require modification of, or disapprove any exploration plan or any development and production plan under this subchapter shall be subject to judicial review only in a United States court of appeals for a circuit in which an affected State is located." 43 U.S.C. §1349(c)(2). A DOCD is considered a "modified form

of" a development and production plan and thus is also subject to judicial review under this provision. *Gulf Restoration Network*, 683 F.3d at 169-71.

Section 1349(c)(2) "provides for exclusive jurisdiction in the court of appeals" of challenges to approvals of exploration plans, development and production plans, and DOCDs. *Edwardsen v. U.S. Dep't of Interior*, 268 F.3d 781, 784 (9th Cir. 2001). It also contains a venue requirement specifying the *particular* court of appeals in which a challenger must seek judicial review: "only in a United States court of appeals *for a circuit in which an affected State is located*." 43 U.S.C. §1349(c)(2) (emphasis added).

OCSLA explicitly defines "affected State" as a state that satisfies one of five criteria:

> The term "affected State" means, with respect to any program, plan, lease sale, or other activity, proposed, conducted, or approved pursuant to the provisions of this subchapter, any State—
>
> (1) the laws of which are declared, pursuant to section 1333(a)(2) of this title, to be the law of the United States for the portion of the outer Continental Shelf on which such activity is, or is proposed to be, conducted;
>
> (2) which is, or is proposed to be, directly connected by transportation facilities to any artificial island or structure referred to in section 1333(a)(1) of this title;

(3) which is receiving, or in accordance with the proposed activity will receive, oil for processing, refining, or transshipment which was extracted from the outer Continental Shelf and transported directly to such State by means of vessels or by a combination of means including vessels;

(4) which is designated by the Secretary as a State in which there is a substantial probability of significant impact on or damage to the coastal, marine, or human environment, or a State in which there will be significant changes in the social, governmental, or economic infrastructure, resulting from the exploration, development, and production of oil and gas anywhere on the outer Continental Shelf; or

(5) in which the Secretary finds that because of such activity there is, or will be, a significant risk of serious damage, due to factors such as prevailing winds and currents, to the marine or coastal environment in the event of any oilspill, blowout, or release of oil or gas from vessels, pipelines, or other transshipment facilities.

43 U.S.C. §1331(f).

Accordingly, venue in this circuit for review of BOEM's approval of bp's DOCD is proper only if one of the three states "located" in this circuit—Alabama, Florida, and Georgia—satisfies any of the foregoing five criteria. None does. Rather, the only state that satisfies any of OCSLA's "affected

State" criteria is Louisiana, located in the Fifth Circuit.  As a result, venue is

improper in this Court.[2]

### A.  Louisiana Is the Only "Adjacent State" Under OCSLA.

The first §1331(f) criterion provides that an "affected State" means any

state "the laws of which are declared, pursuant to section 1333(a)(2) of this

title, to be the law of the United States for the portion of the outer Continental

Shelf on which such activity is, or is proposed to be, conducted."  43 U.S.C.

§1331(f)(1).  In turn, §1333(a)(2) provides:

> [T]he civil and criminal laws of each adjacent State … are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf, and the President shall determine and publish in the Federal Register such projected lines extending seaward and defining each such area.

---

[2] No court has addressed whether the failure to satisfy §1349(c)(2)'s language is a jurisdictional, rather than venue, flaw.  The Supreme Court has observed that a provision allowing judicial review of agency orders in "any circuit wherein the natural-gas company to which the order relates is located or has its principal place of business" goes "to venue not to jurisdiction." *Panhandle E. Pipe Line Co. v. Fed. Power Comm'n*, 324 U.S. 635, 638 (1945).  Whether the flaw is venue-based or jurisdictional, however, the result is the same: this case cannot proceed in this Court.

*Id.* §1333(a)(2)(A). Under this provision, "events occurring on" the OCS are "governed by federal law, the content of which is borrowed from the law of the adjacent State." *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 481 (1981).

To determine the "adjacent State" whose laws apply to OCS activity, courts conduct an "adjacency determination" under §1333(a)(2). *Snyder Oil Corp. v. Samedan Oil Corp.*, 208 F.3d 521, 523 (5th Cir. 2000). This entails examining which state's boundaries the relevant OCS "portion" would lie within if all states' "boundaries were extended seaward to the outer margin of the outer Continental Shelf." 43 U.S.C. §1333(a)(2)(A).

Although the statute states that "the President shall determine and publish" such "boundaries," *id.*, no President has made that determination, and no such boundaries have ever been published. *See Snyder*, 208 F.3d at 524; *Total E & P USA, Inc. v. Marubeni Oil & Gas (USA), Inc.*, 389 F.Supp.3d 478, 482 (S.D. Tex. 2018). Absent such presidentially determined boundaries, to ascertain the "adjacent State," the Fifth Circuit and district courts within that circuit look to "four types of evidence": "(1) geographic proximity; (2) which coast federal agencies consider the subject platform to be 'off of'; (3) prior court determinations; and (4) projected boundaries." *Snyder*, 208

9

F.3d at 524.[3]  Each category firmly demonstrates that Louisiana is the "adjacent State" with respect to the Kaskida project.  Therefore, the law of Louisiana would apply under 43 U.S.C. §1333(a)(2), and Louisiana is the only state that is an "affected State" under the first §1331(f)(1) criterion.

> **1.** *Geographic Proximity: Kaskida is Far Closer to Louisiana than Any State in This Circuit.*

The Kaskida project is closer to Louisiana than any other state.  The project is located at 26.68865547º N, 92.53102505º W.  *See* BOEM, Exploration and Development Plans Information, https://tinyurl.com/yjrb2hd4.  That location is approximately 190 miles from the coast of Louisiana.  *See* BOEM022504 (stating that "[t]he Proposed Action is located southwest of Port Fourchon, Louisiana, approximately 190 miles … from the nearest shoreline in Terrebonne Parish, Louisiana"); Boyle Decl. ¶6.  The next closest states are Texas and Mississippi, approximately 228 and 316 miles away.  Boyle Decl. ¶¶7-8.  The nearest coast of a state within this circuit is Alabama, approximately 354 miles away—nearly *double* the distance from Louisiana.

---

[3] BP is unaware of any decision outside the Fifth Circuit addressing how to determine the "adjacent State" under 43 U.S.C. §1333(a)(2).  As such, Fifth Circuit cases provide the most relevant guidance.

*Id.* ¶9. Although this factor is "not necessarily controlling," *Total*, 389 F.Supp.3d at 483, the fact that the Kaskida project is far closer to Louisiana than any other state strongly shows that Louisiana is the "adjacent State."

**2.** ***Federal Agency Determinations: Federal Agencies Consistently Treat Kaskida as Off Louisiana's Coast.***

"Agency determinations are relevant in the adjacent state analysis because agency determinations of projected boundaries, or other determinations of a similar nature, make it more probable that if the President does ever 'project boundaries' those boundaries will be consistent with these other agency determinations." *Id.*; *see also Snyder*, 208 F.3d at 525.

Federal agencies overwhelmingly consider the Kaskida project "to be 'off of'" the coast of Louisiana. *Snyder*, 208 F.3d at 524. For instance, BOEM's environmental assessment for the Kaskida project repeatedly refers to Louisiana as the nearest coast. *See, e.g.*, BOEM022504, BOEM022505, BOEM022519; *see also Atl. Maritime Servs., LLC v. Ecopetrol Am., LLC*, 2026 WL 322641, at *5 (E.D. La. Feb. 6, 2026) (second factor satisfied where federal agencies identified lease "as being 'offshore Louisiana'"). BOEM has also published the "OCS Plans Map for Coastal Zone Management Program." *See* Declaration of George W. Hicks, Jr. ("Hicks Decl.") ¶2 & Ex. A. Courts

have deemed this map "persuasive" and "the most probative evidence" because it "follows the dictates of §1333" and "fairly allocates the Gulf waters to the states consistent with their share of the coastline." *Total*, 389 F.Supp.3d at 483-84; *see also Danos & Curole Marine Contractors, Inc. v. BP Am. Prod. Co.*, 61 F.Supp.3d 679, 690-91 (S.D. Tex. 2014). The Kaskida project is "exclusively in" Louisiana waters on the Plans Map. *Total*, 389 F.Supp.3d at 486-87.

The Kaskida project is also "exclusively" within Louisiana's extended boundaries according to numerous other maps that BOEM or its predecessor, the Mineral Management Service (MMS), have promulgated and courts have invoked. These maps include (1) BOEM's Right-of-Way Pipeline Map for CZM Program, *see* Hicks Decl. ¶3 & Ex. B; (2) MMS's "offshore administrative boundaries" map from 2006, *see id.* ¶4 & Ex. C; and (3) BOEM's "offshore administrative boundaries" map from 2010, *see id.* ¶5 & Ex. D; *see also Atl. Maritime*, 2026 WL 322641, at \*5; *Total*, 389 F.Supp.3d at 483-87; *Danos*, 61 F.Supp.3d at 688-91; 71 Fed. Reg. 127, 127 (Jan. 3, 2006) (noting that MMS's 2006 map was developed in part to "[a]ssist[] in 'affected State' status under" OCSLA).

In short, federal agency materials "place[] the [Kaskida project] within the projected boundaries of Louisiana," further "weigh[ing] in favor of finding that Louisiana is the adjacent state to the [Kaskida project] for purposes of OCSLA." *Atl. Maritime*, 2026 WL 322641, at *5.

### 3. *Prior Court Determinations: Courts Have Consistently Treated Even More Eastern Blocks as Louisiana-Adjacent.*

While no court has previously determined which state is "adjacent" to the Kaskida project, cases determining adjacency for other Gulf locations establish that the Kaskida project is Louisiana-adjacent. *See Total*, 389 F.Supp.3d at 487-90 (addressing third factor by evaluating cases regarding other locations); *accord Danos*, 61 F.Supp.3d at 687-88.

Numerous courts have held that locations *east* of the Kaskida project— and therefore closer to the states within this circuit—are nevertheless "adjacent" to Louisiana. In *Atlantic Maritime*, the court held that a lease in Mississippi Canyon Block 948 is adjacent to Louisiana. 2026 WL 322641, at *1, *5. In *Bourg v. BT Operating Co.*, the court held that an offshore platform in Eugene Island Block 294 is adjacent to Louisiana. 2009 WL 960011, at *1, *4 (S.D. Tex. Apr. 8, 2009). And in *Tana Exploration Co. v. Implicit Oil & Gas, L.P.*, the court held that Main Pass Block 207 was Louisiana-adjacent. 2015

13

WL 13697932, at *1, *2 (S.D. Tex. Mar. 30, 2015). Each of these blocks is significantly east of the Keathley Canyon, where the Kaskida project is located. *See* Hicks Decl. ¶6 & Ex. E.

Moreover, in cases holding that Alabama, not Louisiana, was the adjacent state, the relevant locations were *even further* east of the locations noted above (all found to be Louisiana-adjacent), and each location was due south of Alabama. *See, e.g.*, *Snyder*, 208 F.3d at 528 (Main Pass Block 261); *Noel v. Freeport-McMoran Oil & Gas, LLC*, 2017 WL 515072, at *1 (E.D. La. Feb. 8, 2017) (Viosca Knoll Block 915); *Lewis v. Helmerich & Payne Int'l Drilling Co.*, 2015 WL 1040458, at *4 (E.D. La. Mar. 10, 2015) (Viosca Knoll Block 956); *Danos*, 2014 WL 6477175, at *6 (Viosca Knoll Block 915); *see* Hicks Decl. ¶6 & Ex. E. BP is aware of no case holding that a location as far west as the Kaskida project—or anything close to it—is adjacent to Alabama.

In short, the blocks previously determined to be Alabama-adjacent "are all significantly" further east of the Kaskida project. *Total*, 389 F.Supp.3d at 489-90. And the blocks previously determined to be Louisiana-adjacent "are significantly closer" to the Kaskida project—and still well east of the Kaskida project. *Id.*; *cf. Danos*, 61 F.Supp.3d at 688. This factor thus weighs in favor of Louisiana being the adjacent state.

**4.** *Projected Boundaries: All Credible Projected Boundaries Place Kaskida Within Louisiana's Boundaries.*

As the BOEM and MMS maps demonstrate, if the boundaries of the Gulf states were "extended seaward to the outer margin of the Outer Continental Shelf," the Kaskida project would plainly fall within the boundary of Louisiana. 43 U.S.C. §1333(a)(2)(A); Hicks Decl. ¶¶2-5 & Exs. A-D; *Atl. Maritime*, 2026 WL 322641, at *5 (noting that federal agency maps "place[] the Gunflint Lease within the projected boundaries of Louisiana").

Prior decisions addressing "projected boundaries" have focused on the Mississippi/Alabama boundary. They have "applied a due south or natural southeasterly extension of the Mississippi/Alabama border into the OCS," causing a project to fall within Alabama's boundary. *Total*, 389 F.Supp.3d at 490; *see also Snyder*, 208 F.3d at 526; *Lewis*, 2015 WL 1040458, at *4; *Danos*, 61 F.Supp.3d at 691. But extending the Mississippi/Alabama border in either of those directions does not cause the Kaskida project to fall within Alabama's boundary. Indeed, there is no credible projection—in any direction—of the Alabama border that places Kaskida within its boundary, as opposed to Louisiana's.

In sum, every *Snyder* factor—geographic proximity, federal agency determinations, prior court decisions, and projected boundaries—overwhelmingly identifies Louisiana as the "adjacent State" to the Kaskida project under 43 U.S.C. §1333(a)(2), thus making Louisiana an "affected State" under 43 U.S.C. §1331(f)(1). And because no other state is the "adjacent State," no other state—including Alabama, Florida, or Georgia—is an "affected State" under the first §1331(f) criterion.[4]

**B.  Only Louisiana Is Directly Connected by Transportation Facilities to the Kaskida Project.**

The second §1331(f) criterion provides that an "affected State" includes any state "which is, or is proposed to be, directly connected by transportation facilities to any artificial island or structure referred to in section 1333(a)(1) of this title." 43 U.S.C. §1331(f)(2). Section 1333(a)(1)

---

[4] In the only case in which this Court has reviewed an approval under §1349(c)(2), *Defenders of Wildlife*, no party appeared to dispute venue. However, the relevant location was the Appomattox Field, which is on the far east side of the Mississippi Canyon (Blocks 348, 391, and 392)—well east of Kaskida—and due south of the Alabama coastline. *See Defenders of Wildlife*, 684 F.3d at 1246 (referring to "offshore Alabama leases"); Shell Gulf of Mexico Inc., Supplemental Exploration Plan, No. S-07444, Mississippi Canyon Blocks 348, 391, and 392, Leases OCS-G 19939, OCS-G 26252, and OCS-G 26253, Offshore Alabama, at 5 (Dec. 21, 2010), https://tinyurl.com/rk2j8nkp.

provides in relevant part that federal law applies to "all artificial islands on the outer Continental Shelf; [and] … installations and other devices permanently or temporarily attached to the seabed" used for exploring for, developing, or producing resources.  43 U.S.C. §1333(a)(1)(A).

Louisiana is the only state that "is, or is proposed to be, directly connected by transportation facilities" to any of the structures comprising the Kaskida project—including "artificial islands," "installations," or "other devices permanently or temporarily attached to the seabed" for purposes of energy production.  To transport crude oil, the project will utilize a pipeline system "directly connected" to terminals in Louisiana.  Neither Alabama, Florida, nor Georgia "is, or is proposed to be, directly connected by transportation facilities" to any of the structures comprising the Kaskida project.  43 U.S.C. §1331(f)(2); Boyle Decl. ¶¶10, 12.

### C. Only Louisiana Will Directly Receive Oil Extracted From the Kaskida Project.

The third §1331(f) criterion provides that an "affected State" includes any state "which is receiving, or in accordance with the proposed activity will receive, oil for processing, refining, or transshipment which was extracted from the outer Continental Shelf and transported directly to such

17

State by means of vessels or by a combination of means including vessels."

43 U.S.C. §1331(f)(3). Louisiana is the only state that "is receiving, or … will receive, oil … extracted from" the Kaskida project "and transported directly" to that state "by means of vessels or by a combination of means including vessels." Neither Alabama, Florida, nor Georgia will receive oil extracted from the Kaskida project and transported to it by vessels or a combination of means including vessels. *See* Boyle Decl. ¶¶11, 12.

> **D. The Secretary Has Not Designated Any State in Accordance with 43 U.S.C. §1331(f)(4).**

The fourth §1331(f) criterion provides that an "affected State" means any state "which is designated by the Secretary as a State in which there is a substantial probability of significant impact on or damage to the coastal, marine, or human environment, or a State in which there will be significant changes in the social, governmental, or economic infrastructure, resulting from the exploration, development, and production of oil and gas anywhere on the outer Continental Shelf." 43 U.S.C. §1331(f)(4).

BP is not aware that the Secretary of Interior, or any delegee, has "designated" any state as one "in which there is a substantial probability of significant impact on or damage to the coastal, marine, or human

environment, or a State in which there will be significant changes in the social, governmental, or economic infrastructure, resulting from the exploration, development, and production of oil and gas anywhere on the outer Continental Shelf." *See, e.g.*, *Organic Cannabis Found., LLC v. Comm'r of Internal Revenue*, 962 F.3d 1082, 1090 (9th Cir. 2020) (explaining that statutory requirement of "designation" means "a formal designation"). Accordingly, no state satisfies this criterion—much less Alabama, Florida, or Georgia.

### E. The Secretary Has Not Made Any Finding Regarding a State in Accordance with 43 U.S.C. §1331(f)(5).

Finally, the fifth §1331(f) criterion provides that an "affected State" means any state "in which the Secretary finds that because of such activity there is, or will be, a significant risk of serious damage, due to factors such as prevailing winds and currents, to the marine or coastal environment in the event of any oilspill, blowout, or release of oil or gas from vessels, pipelines, or other transshipment facilities." 43 U.S.C. §1331(f)(5). The provision's reference to "such activity" refers back to the definition of "affected State," meaning "with respect to any program, plan, lease sale, or other activity, proposed, conducted, or approved pursuant to the provisions of this subchapter." *Id.* §1331(f).

BP is not aware that the Secretary of Interior, or any delegee, has issued a "find[ing]" with respect to any state that, because of "such activity"—*i.e.*, the activity set forth in the DOCD and approved by BOEM—there "is, or will be, a significant risk of serious damage, due to factors such as prevailing winds and currents, to the marine or coastal environment in the event of any oilspill, blowout, or release of oil or gas from vessels, pipelines, or other transshipment facilities." Consequently, no state satisfies this criterion, including Alabama, Florida, or Georgia.

* * *

In sum, the only state that satisfies any of the "affected State" criteria of 43 U.S.C. §1331(f) is Louisiana. Because Louisiana is within the Fifth Circuit, not this circuit, the Fifth Circuit is the only court in which venue is proper under 43 U.S.C. §1349(c)(2).

## II. Alabama Is Not An "Affected State" Under OCSLA.

Petitioners have conceded that they must satisfy 43 U.S.C. §1349(c)(2) in order for this case to proceed in this Court. *See* Pet'rs' Resp. to Jurisdictional Question 5, Dkt. 12-1 (May 15, 2026). They have nevertheless asserted that "venue is appropriate in this Court because Alabama is an

'affected State' located within the Eleventh Circuit." *Id.* at 6. Petitioners are incorrect.

Alabama does not satisfy any of the OCSLA's five criteria for an "affected State." 43 U.S.C. §1331(f). It is not an "adjacent State" whose laws apply under 43 U.S.C. §1333(a)(2), and thus it does not satisfy §1331(f)(1). It is not directly connected by transportation facilities to, and will not directly receive any oil extracted from, the Kaskida Project, and thus does not satisfy §1331(f)(2) or (3). Boyle Decl. ¶¶10-12. The Secretary has not "designated" Alabama as a state "in which there is a substantial probability of significant impact on or damage to the coastal, marine, or human environment, or a State in which there will be significant changes in the social, governmental, or economic infrastructure, resulting from the exploration, development, and production of oil and gas anywhere on the outer Continental Shelf," and thus Alabama does not satisfy §1331(f)(4). And the Secretary has not made a "find[ing]" that "because of such activity"—*i.e.*, development of the Kaskida project—"there is, or will be, a significant risk of serious damage, due to factors such as prevailing winds and currents, to the marine or coastal environment" of Alabama "in the event of any oilspill, blowout, or release of oil or gas from vessels, pipelines, or other transshipment facilities," and

21

thus Alabama does not satisfy §1331(f)(5). Because Alabama does not satisfy "the plain language of the statute," the Court "need go no further" to conclude that venue is improper. *United States v. Pendergrass*, 995 F.3d 858, 872 (11th Cir. 2021).

To support venue in this Court, Petitioners have asserted that BOEM "has designated Alabama as an affected state because it sought consistency concurrence from Alabama under the Coastal Zone Management Act ('CZMA')." Dkt. 12-1 at 6 (citing BOEM022539). This argument lacks merit.

Under OCSLA and the CZMA, if a DOCD applicant's activities "affects any land use or water use in the coastal zone of a state with a [CZM] program," the applicant must include a certification that it "complies with" the "policies" of that state's CZM program and its activities "will be carried out in a manner consistent with such program." 43 U.S.C. §1351(h)(1)(B); 16 U.S.C. §1456(c)(3)(B); *see also* 30 C.F.R. §550.260; 15 C.F.R. §930.76. Each such state must then provide its "concurrence" with the certification. 43 U.S.C. §1351(h)(1)(B); *see also* 30 C.F.R. §550.270(a)(2).

BOEM issues guidance to OCS lessees in the form of "Notices to Lessees," or "NTLs." NTLs "outline what information [a lessee] must provide in various submittals required by the regulations," and "provide

guidance and interpretations regarding regulatory requirements." U.S. Dep't of Interior, Bureau of Ocean Energy Management, Notice to Lessees (NTL) and Operators of Federal Oil & Gas Leases in the Outer Continental Shelf (OCS): Elimination of Expiration Dates on Certain Notices to Lessees and Operators Pending Review and Reissuance (Feb. 6, 2015) ("Expiration Date NTL"), https://tinyurl.com/bdh6e6ee.

In its applicable NTL regarding DOCD contents—which was the NTL applicable to bp here—BOEM instructs that lessees must "[p]rovide a Coastal Zone Management Act consistency certification according to 15 CFR 930.76(c) and (d) for each affected State." BOEM000028. BOEM then explains that "[a] State is an affected State when" it satisfies any of four criteria: "(1) Your activities are adjacent to a State as shown on the maps on the MMS website … ; (2) You propose to use a service or supply base within a State's coastal zone; (3) You propose construction or expansion of an onshore base; or (4) You propose to store or dispose of solid and liquid wastes within a State's coastal zone." *Id.*[5]

---

[5] Although this NTL, first published in 2008, shows an expiration date of March 31, 2013, a later NTL "eliminat[ed] the expiration dates … from NTLs currently posted on the BOEM website," as the 2008 NTL is. Expiration Date

Consistent with that guidance, bp attached consistency certifications for Louisiana, Texas, and Alabama to its DOCD. BOEM001296; BOEM001839-001870. BP included Alabama because, while "[a]ll land-based support activities, including transport to and from the site, will be from Louisiana," it nevertheless "expects to utilize the port of Mobile, Alabama for subsea logistics support," thereby satisfying the second criterion in BOEM's NTL ("us[ing] a service or supply base within a State's coastal zone"). BOEM001841. Like Louisiana and Texas, Alabama then provided its concurrence with bp's consistency certification, which bp provided in its DOCD. BOEM022539.

Nothing in this box-checking exercise demonstrates that Alabama is an "affected State" under OCSLA's statutory definition. BP solicited and received Alabama's concurrence with its CZMA consistency certification pursuant to a different definition of "affected State" in the applicable NTL—in particular, a provision ("us[ing] a service or supply base within a State's coastal zone") that does not appear in OCSLA's statutory text and is not one

NTL, at 2; *see* https://tinyurl.com/3yhbzm7h (showing 2008 NTL on BOEM website).

of the five criteria for an "affected State" under OCSLA. Furthermore, nothing in bp's certification or Alabama's concurrence establishes that any of the five criteria for an "affected State" under OCSLA's definition is satisfied, much less with respect to Alabama. Only Louisiana satisfies the first three OCSLA "affected state" criteria—and no state satisfies the last two—confirming that venue in this Court is improper.

## III. Because Venue Is Improper, The Court Must Dismiss The Petition Or, Alternatively, Transfer It To The Fifth Circuit.

Because "venue is not proper in this court," the Court "may not resolve" this case "on the merits." *Becker v. C.I.R.*, 852 F.2d 524, 525 (11th Cir. 1988). Instead, as the Supreme Court has indicated, the proper course is to dismiss the petition. In *Federal Power Comm'n v. Texaco, Inc.*, 377 U.S. 33 (1964), the Court held that a petitioner challenging an agency determination did not satisfy the relevant venue provision and the "Court of Appeals therefore erred in failing to dismiss its petition for lack of venue." *Id.* at 39. Here too, because Petitioners have not satisfied §1349(c)(2)'s venue requirement, their petition should be dismissed.

To be sure, this Court has observed that it is "hesitant" to dismiss an improperly filed petition "where dismissal would deprive a party of its right

to appellate review." *Ga. Republican Party v. SEC*, 888 F.3d 1198, 1205 (11th Cir. 2018). Instead, the Court has "'inherent authority to transfer an appeal when this is not the court of proper venue'" if doing so "'would be in the interest of justice.'" *Id.* (quoting *Becker*, 852 F.2d at 526). The 60-day period for filing a petition for review of BOEM's approval has passed, *see* 43 U.S.C. §1349(c)(3), so if the Court deems it "in the interest of justice," it can alternatively exercise its "inherent authority" to transfer this case to the Fifth Circuit. *Id.* Because this outcome is in tension with *Texaco*, the better course is simply to dismiss the petition. At a minimum, however, this case cannot proceed in this Court.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the petition or transfer it to the Fifth Circuit.

July 15, 2026                          Respectfully submitted,

                                       s/ *George W. Hicks, Jr.*

A. Katrine Jakola                      George W. Hicks, Jr.
Kristopher S. Ritter                     *Counsel of Record*
KIRKLAND & ELLIS LLP                   Aaron L. Nielson
333 W. Wolf Point Plaza                KIRKLAND & ELLIS LLP
Chicago, IL 60654                      4550 Travis Street
(312) 862-2000                         Dallas, TX 75205
                                       (214) 972-1770
                                       george.hicks@kirkland.com

*Counsel for Intervenor-Respondent BP Exploration & Production Inc.*

# CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing motion contains 5,191 words and thus complies with Federal Rule of Appellate Procedure 27(d)(2)(A). The motion also complies with the typeface and style requirements of Federal Rule of Appellate Procedure 32(a)(5) & 32(a)(6) because it has been prepared in a proportionally spaced, roman style typeface of 14 points or more.

s/ *George W. Hicks, Jr.*
George W. Hicks, Jr.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically on July 15, 2026, and will, therefore, be served electronically upon all counsel.

s/ *George W. Hicks, Jr.*
George W. Hicks, Jr.

No. 26-11284

# In the United States Court of Appeals for the Eleventh Circuit

HEALTHY GULF, HABITAT RECOVERY PROJECT, CENTER FOR BIOLOGICAL DIVERSITY, SIERRA CLUB, and TURTLE ISLAND RESTORATION NETWORK,

PETITIONERS,

v.

U.S. DEPARTMENT OF THE INTERIOR, DOUG BURGUM, BUREAU OF OCEAN ENERGY MANAGEMENT, and MATTHEW GIACONA,

RESPONDENTS,

BP EXPLORATION & PRODUCTION INC.

INTERVENOR-RESPONDENT.

On Petition for Review of Final Agency Action of the Bureau of Ocean Energy Management

## DECLARATION OF JOHN BOYLE

I, John Boyle, declare and state as follows:

1. I am over the age of 21, am competent to make this declaration, and have personal knowledge of all statements made herein.

2. I am Project General Manager for BP Exploration & Production Inc. ("bp"). The statements made herein are based on my personal knowledge and experience working in offshore development in the Gulf of America, including the Kaskida project.

3. The Kaskida project is an oil and gas development and production site located in the Keathley Canyon area of the Western Gulf of America—specifically, Blocks 292, 293, 336, and 337 of the Keathley Canyon.

4. The Kaskida project is the newest of bp's six hubs in this region and will have the capacity to produce 80,000 barrels of crude oil per day from six wells in the first phase.

5. Production from the Kaskida project is expected to start as early as 2029.

6. The location of the Kaskida Project is 190 miles from the southwest coast of Louisiana, closer than any other state.

7. The next closest state to the Kaskida project is Texas, which is approximately 228 miles away.

8. The third closest state to the Kaskida project is Mississippi, which is approximately 316 miles away.

9. The Kaskida project is approximately 354 miles from Alabama.

10. Crude oil from the Kaskida project will be transported using a pipeline system directly to Louisiana.

11. Any vessels carrying oil extracted from the Kaskida project will transport the oil directly to Louisiana.

2

12. No other state besides Louisiana will be directly connected to any of the structures comprising the Kaskida project or directly receive oil extracted from the Kaskida project.

I declare under penalty of perjury that the foregoing is to the best of my knowledge true and correct.

_____
John Boyle

Dated: July 13, 2026

## No. 26-11284

## In the United States Court of Appeals for the Eleventh Circuit

HEALTHY GULF, HABITAT RECOVERY PROJECT, CENTER FOR BIOLOGICAL DIVERSITY, SIERRA CLUB, and TURTLE ISLAND RESTORATION NETWORK,
PETITIONERS,

V.

U.S. DEPARTMENT OF THE INTERIOR, DOUG BURGUM, BUREAU OF OCEAN ENERGY MANAGEMENT, and MATTHEW GIACONA,
RESPONDENTS,

BP EXPLORATION & PRODUCTION INC.
INTERVENOR-RESPONDENT.

On Petition for Review of Final Agency Action of the
Bureau of Ocean Energy Management

### DECLARATION OF GEORGE W. HICKS, JR.

I, George W. Hicks, Jr., declare and state as follows:

1. I am an attorney with Kirkland & Ellis LLP, counsel to BP Exploration & Production Inc., and am counsel of record to BP Exploration & Production Inc. in this case. I am licensed to practice law in Texas and the District of Columbia and am admitted to the bar of this Court. I am over 21, am competent to make this declaration, and have personal knowledge of all statements made herein.

2. Attached hereto as Exhibit A is a true and correct copy of the Bureau of Ocean Energy Management's (BOEM's) OCS Plans Map for Coastal Zone Management Program, which also provides the names of leasing blocks in the Gulf of America. This map is available at https://www.boem.gov/sites/default/files/environmental-stewardship/Environmental-Assessment/CZMA/OCS-Plans-Map-for-CZM.pdf.

3. Attached hereto as Exhibit B is a true and correct copy of BOEM's Right-of-Way Pipeline Map for CZM Program. This map is available at https://www.boem.gov/sites/default/files/environmental-stewardship/Environmental-Assessment/CZMA/ROW-Pipeline-Map-for-CZM.pdf.

4. Attached hereto as Exhibit C is a true and correct copy of the Mineral Management Service's 2006 "offshore administrative boundaries" map. This map was published at 71 Fed. Reg. 127 (Jan. 3, 2006), and is available at https://www.govinfo.gov/content/pkg/FR-2006-01-03/pdf/05-24659.pdf.

5. Attached hereto as Exhibit D is a true and correct copy of BOEM's 2010 "offshore administrative boundaries" map. This map is available at

https://www.boem.gov/sites/default/files/uploadedFiles/BOEM/ Oil_and_Gas_Energy_Program/Mapping_and_Data/Administrative _Boundaries/Gulf_Plan.pdf.

6. Attached hereto as Exhibit E is a true and correct copy of BOEM's 2017 "Leasing Maps" and "Official Protraction Diagrams" showing leasing blocks in the Gulf of America. This map is available at https://www.boem.gov/sites/default/files/oil-and-gas-energy-program/Mapping-and-Data/Gulf-of-Mexico-OPD-Index-2017.pdf.

I declare under penalty of perjury that the foregoing is to the best of my knowledge true and correct.

_____
George W. Hicks, Jr.

Dated: July 13, 2026

3

# Exhibit A
# to
# Hicks Declaration



# OCS Plans Map for
# Coastal Zone Management Program

Legend:
- Protraction
- Block Number
- Alabama CZM
- Mississippi CZM
- Texas CZM
- Louisiana CZM
- Florida CZM

25  0  25  50 Miles

25  0  25  50 Kilometers

Gulf of Mexico

BOEM
Bureau of Ocean Energy Management

Projection: Albers Equal-Area Conic
Sheroid: Clarke 1866
Central Meridian: -89.1743278503
Reference Latitude: 27.034412384
Standard Parallel 1: 24.8933321991
Standard Parallel 2: 29.1755027771

MG12658

# Exhibit B
# to
# Hicks Declaration



# ROW Pipeline Map for
# Coastal Zone Management Program

**Legend:**
- Protraction
- Block Number
- Alabama CZM
- Mississippi CZM
- Texas CZM (if pipe crosses into TX waters)
- Louisiana CZM
- Florida CZM

*Gulf of Mexico*

25  0  25  50  Miles
25  0  25  50  Kilometers

BOEM
BUREAU OF OCEAN ENERGY MANAGEMENT

Projection: Albers Equal-Area Conic
Sheroid: Clarke 1866
Central Meridian: -89.1743278503
Reference Latitude: 27.034412384
Standard Parallel 1: 24.893321991
Standard Parallel 2: 29.1755027771

# Exhibit C
# to
# Hicks Declaration



# Exhibit D
# to
# Hicks Declaration



GULF OF MEXICO NAD 27 FEDERAL OUTER CONTINENTAL SHELF (OCS) ADMINISTRATIVE BOUNDARIES

LEGEND

—— Planning Area Boundaries

—— Offshore Administrative Boundaries

—— U.S. 200 NM Limit

**BOEM**
BUREAU OF OCEAN ENERGY MANAGEMENT

Projection Geographic
North American Datum 1927

January, 2010

The Maritime boundaries and limits shown above, as well as the division between planning areas, are for initial planning purposes only and do not necessarily reflect the full extent of U.S. sovereign rights under international and domestic law.

Western Gulf of Mexico Planning Area

Central Gulf of Mexico Planning Area

Eastern Gulf of Mexico Planning Area

TX · LA · MS · AL · GA · FL · CUBA · MEXICO

N

# Exhibit E
# to
# Hicks Declaration

# GULF OF MEXICO
# LEASING MAPS

UTM ZONE 14   ZONE 15   Louisiana   Mississippi   Alabama   ZONE 16

Texas

Texas Leasing Map Numbers 1 thru 3A computed on Texas (Lambert) Plane Coordinate System South Zone; 4 thru 8 computed on Texas (Lambert) Plane Coordinate System South Central Zone.

Louisiana Leasing Maps computed on Louisiana (Lambert) Plane Coordinate System South Zone.

OFFICIAL PROTRACTION DIAGRAMS

*GULF OF MEXICO*

UNITED STATES
MEXICO

ZONE 14   ZONE 15   ZONE 16

WGM   CGM

Esri, DeLorme, GEBCO, NOAA NGDC, and other contributors

**Legend:**
— Submerged Lands Act Boundary
Immobilized by Supreme Court Decree
Louisiana: 1981
Mississippi: 1990
Alabama: 1993
Texas: 1998

PLANNING AREA CODES
WGM = Western Gulf of Mexico
CGM = Central Gulf of Mexico

---

DIAGRAM SELECTION. The extent of the published diagram coverage and the latest approval date for each protraction is shown on the index. Each diagram is designated by a number and may also carry the name of a city, town, or prominent natural feature within it. Diagrams are available for download in PDF format from
**https://www.boem.gov/Oil-and-Gas-Energy-Program/Mapping-and-Data/Maps-And-Spatial-Data.aspx**

The Supplemental Official OCS Block Diagrams (SOBDs) depict areal measurements, projected and non-projected boundaries, offshore boundary intersection coordinates, and Federal and State land ownership for individual Outer Continental Shelf cadastre blocks. The Limit of "8(g) Zone" extends three nautical miles seaward of the Submerged Lands Act (SLA) Boundary using the same principles and baselines used to project the SLA boundary.

---

# OFFICIAL PROTRACTION DIAGRAMS

UTM ZONE 14   ZONE 15   ZONE 16   ZONE 17

Mississippi   Alabama   Georgia

*North Atlantic Ocean*

Texas   Louisiana

LEASING MAPS

Florida

*GULF OF MEXICO*

UNITED STATES
MEXICO

MEXICO

UNITED STATES
CUBA

CUBA

WGM   CGM   EGM

ZONE 14   ZONE 15   ZONE 16   ZONE 17

Esri, DeLorme, GEBCO, NOAA NGDC, and other contributors

**BOEM**
Bureau of Ocean Energy Management

UNITED STATES
DEPARTMENT OF THE INTERIOR
**BUREAU OF OCEAN ENERGY MANAGEMENT**
OUTER CONTINENTAL SHELF
OFFICIAL PROTRACTION DIAGRAMS
## GULF COAST
NAD 27 INDEX
2017

**Legend:**
— Submerged Lands Act Boundary
Immobilized by Supreme Court Decree
Louisiana: 1981
Mississippi: 1990
Alabama: 1993
Texas: 1998

PLANNING AREA CODES
WGM = Western Gulf of Mexico
CGM = Central Gulf of Mexico
EGM = Eastern Gulf of Mexico