No. 26-11284

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

HEALTHY GULF, HABITAT RECOVERY PROJECT, CENTER FOR
BIOLOGICAL DIVERSITY, SIERRA CLUB, and TURTLE ISLAND
RESTORATION NETWORK,
*Petitioners,*

*v.*

U.S. DEPARTMENT OF THE INTERIOR; DOUG BURGUM, in his of-
ficial capacity as Secretary of the Interior; BUREAU OF OCEAN EN-
ERGY MANAGEMENT, and MATTHEW GIACONA, in his official ca-
pacity as Director of the Bureau of Ocean Energy Management,
*Respondents.*

**RESPONDENTS' MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TRANSFER VENUE**

|  |  |
| --- | --- |
|  | ADAM R.F. GUSTAFSON |
|  | *Principal Deputy Assistant Attorney General* |
|  | ROBERT N. STANDER |
|  | *Deputy Assistant Attorney General* |
| Of Counsel: | CHRISTOPHER ANDERSON |
|  | ANGELA N. ELLIS |
| MELISSA A. HEARNE | Attorneys |
| SAMUEL D. SCHNARCH | Environment and Natural Resources Division |
|  | U.S. Department of Justice |
| Attorneys | Post Office Box 7415 |
| Division of Mineral Resources | Washington, D.C. 20044 |
| Office of the Solicitor | (202) 598-7942 |
| U.S. Dep't of the Interior | angela.ellis@usdoj.gov |

*Healthy Gulf et al v. U.S. Dep't of the Interior, et al*, No. 26-11284

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

I hereby certify as required by Circuit Rules 26.1-1 through 26.1-3 that, to the best of my knowledge, the following is a complete list of persons and entities that have an interest in the outcome of this case.

- Anderson, Christopher, counsel for Respondents

- BP Exploration & Production, Inc., Proposed Intervenor

- BP p.l.c., Parent of Proposed Intervenor

- Bureau of Ocean Energy Management, Respondent

- Burgum, Douglas, Secretary of Interior, Respondent

- Center for Biological Diversity, Inc., Petitioner

- Ellis, Angela, counsel for Respondents

- Earthjustice, counsel for Petitioners

- Giacona, Matthew, Director of Bureau of Ocean Energy Management, Respondent

- Gustafson, Adam, counsel for Respondents

- Habitat Recovery Project, Petitioner

- Hearne, Melissa A., counsel for Respondents

- Hardy, Brettny, counsel for Petitioners

- Healthy Gulf, Petitioner

- Hicks, Jr., George W., counsel for Proposed Intervenor

- Jakila, A. Katrine, counsel for Proposed Intervenor

- Kirkland & Ellis LLP, counsel for Proposed Intervenor

- Lundman, Robert J., counsel for Respondents

- Nielson, Aaron L., counsel for Proposed Intervenor

- Ritter, Kristopher S., counsel for Proposed Intervenor

- Roy, Rumela, counsel for Petitioners

- Schnarch, Samuel D., counsel for Respondents

- Sierra Club, Petitioner

- Stander, Robert, counsel for Respondents

- Turtle Island Restoration Network, Petitioner

- United States Department of Justice

- United States Department of the Interior, Respondent

*/s/ Angela N. Ellis*
ANGELA N. ELLIS

*Counsel for Respondents*

*Healthy Gulf et al v. U.S. Dep't of the Interior, et al*, No. 26-11284

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................iii

INTRODUCTION ............................................................................ 1

BACKGROUND ............................................................................... 2

    A.    OCSLA's four-stage process for oil and gas development .......................................................................... 2

    B.    BOEM's approval of the Kaskida operations plan ................. 3

    C.    OCSLA's judicial review provision ........................................... 5

    D.    Procedural history .................................................................. 7

ARGUMENT ................................................................................... 7

I.    No affected state is located in the Eleventh Circuit. ....................... 7

    A.    Alabama is not an affected state under subsection 1331(f)(1) because it is not adjacent to the Kaskida project. .................................................................................. 8

    B.    Alabama is not an affected state under subsection 1331(f)(2) because it will not be "directly connected" to the Kaskida project. ........................................ 14

    C.    Alabama is not an affected state under subsection (f)(3) because it will not receive oil directly from the Kaskida project. ............................................................. 15

    D.    Interior has not designated Alabama as an affected state under subsections (f)(4) or (f)(5). ..................... 16

II.    The petition should be dismissed or transferred to the Fifth Circuit. ........................................................................... 21

CONCLUSION ........................................................................... 24

CERTIFICATE OF COMPLIANCE ....................................... 25

***Healthy Gulf et al v. U.S. Dep't of the Interior, et al*, No. 26-11284**

**TABLE OF AUTHORITIES**

**Cases**

*Atlantic Maritime Servs., Inc. v. Ecopetrol America, LLC,*
    2026 WL 322641 (E.D. La. Feb. 6, 2026) .......................................... 13

*Arbaugh v. Y&H Corp.,*
    546 U.S. 500 (2006) ................................................................. 22, 23

*California v. Watt,*
    668 F.2d 1290 (D.C. Cir. 1981) ..................................................... 2

*Danos & Curole Marine Contractors, Inc. v. BP Am. Prod. Co.,*
    61 F.Supp.3d 679 (S.D. Tex. 2014) ............................................ 11, 12

*Gulf Restoration Network v. Salazar,*
    683 F.3d 158 (5th Cir. 2012) ........................................................ 6, 22

*Hamer v. Neighborhood Hous. Servs. of Chicago,*
    583 U.S. 17 (2017) .................................................................. 21, 23

*Panhandle E. Pipe Line Co. v. Fed. Power Comm'n,*
    324 U.S. 635 (1945) ....................................................................... 23

*Parker Drilling Mgmt. Servs., Ltd. v. Newton,*
    587 U.S. 601 (2019) ........................................................................ 9

*Reed Elsevier, Inc. v. Muchnick,*
    559 U.S. 154 (2010) ...................................................................... 23

*Riley v. Bondi,*
    606 U.S. 259 (2025) ................................................................. 22, 23

*Sec'y of the Interior v. California,*
    464 U.S. 312 (1984) ........................................................................ 2

*Snyder Oil Corp. v. Samedan Oil Corp.*,
  208 F.3d 521 (5th Cir. 2000) ........................................................ 9, 10

*Tana Exploration Co. v. Implicit Oil & Gas, L.P.*,
  2015 WL 13697932 (S.D. Tex. Mar. 30, 2015) ............................... 13

*Total E & P USA, Inc. v. Marubeni Oil & Gas (USA) Inc.*,
  389 F.Supp.3d 478 (S.D. Tex. July 12, 2018) .............. 10, 11, 12, 13

**Statutes**

28 U.S.C. 1631 ........................................................................................ 21

43 U.S.C. § 1331 *et seq.* ......................................................................... 2

43 U.S.C. § 1331(a)(1).......................................................................... 14

43 U.S.C. § 1331(f) ............................................................................ 1, 7

43 U.S.C. § 1331(f)(1)......................................................................... 1, 8

43 U.S.C. § 1331(f)(2).......................................................................... 1, 14

43 U.S.C. § 1331(f)(3)............................................................................. 1

43 U.S.C. § 1331(f)(4)............................................................... 1, 16, 17, 18

43 U.S.C. § 1331(f)(5).................................................................. 1, 17, 18

43 U.S.C. § 1332(3) ................................................................................ 2

43 U.S.C. § 1333(a)(2)............................................................................ 9

43 U.S.C. § 1334...................................................................................... 2

43 U.S.C. § 1340(c).................................................................................. 2

43 U.S.C. § 1349(c)(2) ............................................................ 1, 5, 6, 8, 22

43 U.S.C. § 1351............................................................................... 3

Pub. L. No. 83-212, 67 Stat. 462 (1953)..................................... 2

## Regulations

30 C.F.R. § 250.105........................................................................ 20

30 C.F.R. § 550.105........................................................................ 19

30 C.F.R. § 550.267(a)(1) ............................................................. 18

71 Fed. Reg. 127 (Jan. 3, 2006) ............................................. 11, 12

*Healthy Gulf et al v. U.S. Dep't of the Interior, et al*, No. 26-11284

## INTRODUCTION

This case centers on a federal approval for the Kaskida project—an oil and gas development project planned for an area of the Outer Continental Shelf in the Western Gulf of America, nearly 200 miles southwest from the nearest coast of Louisiana. Petitioners bring this challenge under the Outer Continental Shelf Lands Act (OCSLA), which provides for judicial review but "only in a United States court of appeals for a circuit in which an affected State is located." 43 U.S.C. § 1349(c)(2).

No state in the Eleventh Circuit is an "affected state" under OCSLA. *See* 43 U.S.C. § 1331(f). No state in the Eleventh Circuit is adjacent to the Kaskida project, will be connected to the project, or receive oil directly from it. *See id.* §§ 1331(f)(1)-(3). And the U.S. Department of the Interior has not designated any state in the Eleventh Circuit as facing "a substantial probability of significant impact or damage" nor found any "significant risk of serious damage" to any state in the Eleventh Circuit "in the event of any oil spill," *id.* §§ 1331(f)(4) & (f)(5).

Because no affected state is in this Circuit, this Court lacks jurisdiction over the petition. It should be dismissed or transferred to the Fifth Circuit, where the only affected state—Louisiana—is located.

## BACKGROUND

### A.    OCSLA's four-stage process for oil and gas development

Enacted in 1953, OCSLA establishes federal jurisdiction over submerged lands of the Outer Continental Shelf (OCS), generally starting three miles from state coastlines. 43 U.S.C. § 1331 *et seq.*; Pub. L. No. 83-212, 67 Stat. 462 (1953). Congress amended OCSLA in 1978 "to provide a comprehensive framework for 'expeditious and orderly development [of the shelf], subject to environmental safeguards.'" *California v. Watt*, 668 F.2d 1290, 1296 (D.C. Cir. 1981) (quoting 43 U.S.C. § 1332(3)). That comprehensive framework set up a four-stage process: "(1) formulation of a five year leasing plan by the Department of the Interior; (2) lease sales; (3) exploration by the lessees; [and] (4) development and production." *Sec'y of the Interior v. California*, 464 U.S. 312, 337 (1984).

During the first stage, the Secretary prepares a five-year OCS oil and gas lease-sale schedule. 43 U.S.C. § 1334. At the second stage, the Secretary conducts lease sales of tracts on the OCS. After the Secretary issues a lease, a lessee may submit for approval an exploration plan (the third stage). 43 U.S.C. § 1340(c). If exploration is successful, at the fourth

stage, the lessee may submit a development and production plan or (relevant here) an operations plan. 43 U.S.C. § 1351.

Interior's Bureau of Ocean Energy Management (BOEM) typically prepares a programmatic environmental impact statement under the National Environmental Policy Act (NEPA) for the five-year program. It then prepares additional NEPA analyses as appropriate at each OCSLA stage requiring federal action, which may rely on prior NEPA analysis prepared at an earlier stage of the planning process.

This case involves the fourth stage: BOEM's approval of BP's operations plan for the Kaskida project.

**B.    BOEM's approval of the Kaskida operations plan**

Petitioners challenge BOEM's approval of an operations plan (called a Development Operations Coordination Document or DOCD) for the Kaskida project planned by BP Exploration & Production Inc. (BP). The Kaskida project will be in the Keathley Canyon area of the Gulf of America, about 190 miles from the nearest shoreline in Louisiana.



Ex. A, Appx-45 (DOCD Appx I at 2).[1] The project is about 308 miles

from the coastline in Corpus Christi, Texas, and about 386 miles from the

shoreline in Mobile, Alabama. *Id.*

BP's operations plan proposes to drill six wells with four backup

locations that will commercially produce oil and gas. Appx-83 (Site-Spe-

cific Environmental Assessment (SEA) 3). BP will also install a floating

production unit with twelve mooring lines. *Id.* The wells will be drilled

---

[1] Exhibit A contains cited excerpts of the administrative record that
BOEM lodged and produced to the parties on July 1, 2026, as amended
on July 15, 2026.

by a mobile offshore drilling unit. Appx-84 (SEA 4). Installation of the floating production unit and other infrastructure is expected to occur from July 2027 through September 2028. *Id.* Crude oil from the floating production unit will be transported by pipeline to Fourchon, Louisiana. Appx-36 (DOCD Vol. I at 32).

BP submitted the operations plan to BOEM in February 2025. Appx-81 (SEA 1). BP submitted a revised operations plan to BOEM in September 2025, and on March 13, 2026, BOEM approved the revised operations plan. *Id.*; Appx-46 (Mar. 13, 2026 Ltr.).

### C.   OCSLA's judicial review provision

OCSLA provides for direct review of BOEM's Kaskida approval in the appropriate court of appeals: one that encompasses an affected state. OCSLA, 43 U.S.C. § 1349(c)(2), provides:

> Any action of the Secretary to approve, require modification of, or disapprove any exploration plan or any development and production plan under this subchapter shall be subject to judicial review only in a United States court of appeals for a circuit in which an affected State is located.

Under that provision, "[f]ederal courts of appeals have subject-matter jurisdiction to review [Interior's] approval, modification, or disapproval of plans submitted at the exploration or development and

production stage." *Gulf Restoration Network v. Salazar*, 683 F.3d 158, 173 (5th Cir. 2012) (citing 43 U.S.C. § 1349(c)(2)). Such plans include development operations coordination documents, like BP's operations plan here, which is a modified form of development and production plan used for the Western Gulf. *Id.* at 169-70. The jurisdiction in Section 1349(c)(2) is expressly limited, however, to a court of appeals "for a circuit in which an affected State is located." 43 U.S.C. § 1349(c)(2).

OCSLA defines "affected State" as:

Any state—

(1) the laws of which are declared, pursuant to section 1333(a)(2) of this title, to be the law of the United States for the portion of the outer Continental Shelf on which such activity is, or is proposed to be, conducted;

(2) which is, or is proposed to be, directly connected by transportation facilities to any artificial island or structure referred to in section 1333(a)(1) of this title;

(3) which is receiving, or in accordnace (sic) with the proposed activity will receive, oil for processing, refining, or transshipment which was extracted from the outer Continental Shelf and transported directly to such State by means of vessels or by a combination of means including vessels;

(4) which is designated by the Secretary as a State in which there is a substantial probability of significant impact on or damage to the coastal, marine, or human environment, or a State in which there will be significant changes in the social, governmental, or economic infrastructure, resulting

> from the exploration, development, and production of oil and gas anywhere on the outer Continental Shelf; or
>
> (5) in which the Secretary finds that because of such activity there is, or will be, a significant risk of serious damage, due to factors such as prevailing winds and currents, to the marine or coastal environment in the event of any oil spill, blowout, or release of oil or gas from vessels, pipelines, or other transshipment facilities

43 U.S.C. § 1331(f).

## D. Procedural history

Petitioners brought this petition for review on April 20, 2026, asserting that BOEM's approval of the Kaskida operations plan "is arbitrary, capricious, and not in accordance with law." Dkt. No. 1-2. On May 1, 2026, the Court issued a jurisdictional question, Dkt. No. 7, which the parties responded to on May 15, Dkt. Nos. 10-12. BOEM lodged its administrative record on July 1, 2026. Dkt. No. 24.

## ARGUMENT

## I. No affected state is located in the Eleventh Circuit.

The petition should be dismissed or transferred to the Fifth Circuit because petitioners brought this case in the wrong court. Under OCSLA, a challenge to BOEM's approval of the Kaskida operations plan can be heard "*only* in a United States court of appeals for a circuit in which an affected State is located." 43 U.S.C. § 1349(c)(2) (emphasis added).

No state in the Eleventh Circuit satisfies that criteria. All parties appear to agree that neither Georgia nor Florida are affected states under OCSLA Section 1331(f). Petitioners contend, however, that "Alabama is an 'affected state' in the Eleventh Circuit." Dkt. No. 12-1 at 6. That is incorrect. Alabama satisfies none of the five criteria set forth in OCSLA Section 1331(f). Only Louisiana meets that criteria. The petition should be dismissed or transferred to the Fifth Circuit.

### A. Alabama is not an affected state under subsection 1331(f)(1) because it is not adjacent to the Kaskida project.

Alabama is not an affected state under subsection 1331(f)(1). That subsection applies to any state "the laws of which are declared, pursuant to section 1333(a)(2) of this title, to be the law of the United States for the portion of the outer Continental Shelf on which such activity is, or is proposed to be, conducted." 43 U.S.C. § 1331(f)(1).

In turn, section 1333(a)(2) provides that certain "laws of *each adjacent State* . . . are declared to the be the law of the United States for that portion of the … outer Continental Shelf … *which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf*." 43 U.S.C. § 1333(a)(2) (emphasis

added). It further provides that "the President shall determine and publish in the Federal Register such projected lines extending seaward and defining each such area." *Id.*; *see generally Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601, 607 (2019).

No President has published the determination outlined in Section 1333(a)(2) in the Federal Register. *Snyder Oil Corp. v. Samedan Oil Corp.*, 208 F.3d 521, 524 (5th Cir. 2000). As a result, courts tasked with identifying an "adjacent State" under Section 1333(a)(2) consider "four types of evidence": "(1) geographic proximity; (2) which coast federal agencies consider the subject platform to be 'off of'; (3) prior court determinations; and (4) projected boundaries." *Snyder*, 208 F.3d at 524. Under each category of evidence, Louisiana plainly is the adjacent state to the Kaskida project.

*First*, looking to geographic proximity, the record demonstrates that the closest shoreline to the Kaskida project is in Louisiana. Appx-73 (SEA ii) ("The Proposed Action is located southwest of Port Fourchon, Louisiana, approximately *190 miles[] from the nearest shoreline in Terrebonne Parish, Louisiana.*") (emphasis added). By contrast, the project is about 308 miles from the coastline in Corpus Christi, Texas, and about

386 miles from the shoreline in Mobile, Alabama. Appx-45 (DOCD Appx I at 2). Louisiana plainly is the geographically closest state to the project.

*Second*, the record and federal agency maps of the Gulf Outer Continental Shelf region confirm that the government treats the Kaskida project as off the coast of Louisiana. Courts look to federal agency determinations because they "make it more probable that if the President does ever 'project boundaries' those boundaries will be consistent with these other agency determinations." *Snyder*, 208 F.3d at 525; *Total E & P USA, Inc. v. Marubeni Oil & Gas (USA), Inc.*, 389 F.Supp.3d 478, 483 (S.D. Tex. July 12, 2018).

BOEM's site-specific Environmental Assessment describes the Kaskida project as "located southwest of Port Fourchon, Louisiana." Appx-73 (SEA ii). And BOEM's maps projecting state boundaries in the Gulf demonstrate that BOEM considers the Keathley Canyon area to be off the coast of Louisiana.

BOEM publishes a "plans map" of the Outer Continental Shelf for purposes of the Coastal Zone Management Act (CZMA). *See* Ex. B. Courts have looked to this map as highly probative of the adjacent state determination under OCSLA § 1333(a). *See Total*, 389 F.Supp.3d at 483-84;

*see also Danos & Curole Marine Contractors, Inc. v. BP Am. Prod. Co.*, 61 F.Supp.3d 679, 690-91 (S.D. Tex. 2014). As shown below, the Kaskida project falls entirely within Louisiana's CZMA region on BOEM's CZMA plans map. It is not anywhere close to the boundary of Alabama.



The Kaskida project is also within Louisiana's administrative boundaries according to a 2006 map that BOEM's predecessor agency, the Minerals Management Service, published in the Federal Register. 71 Fed. Reg. 127, 127-30 (Jan. 3, 2006). The Service stated that the map would be beneficial for, among other things, "assisting in 'affected State' status under the Coastal Zone Management Act and [OCSLA]." *Id.* Under the map, the Kaskida project also falls squarely within Louisiana's administrative boundaries. *Id.* at 130, Ex. C.



The same is true of other maps published by BOEM for various purposes. *See, e.g.*, BP Mot. to Dismiss, Dkt. No. 26, Hicks Decl. Exs. B, D, E. Unlike in some cases, where different maps could lead to different adjacency determinations, *see e.g.*, *Total*, 389 F. Supp. 3d at 484-87; *Danos*, 61 F. Supp. 3d at 688-91, here there can be no question that BOEM and its predecessor agency consistently view the area of the Kaskida project as within Louisiana's administrative boundaries.

*Third*, looking to prior court determinations, no court has decided the adjacent state for the Keathley Canyon blocks where the Kaskida project will be located. But district courts have recognized areas east of the Kaskida project as nevertheless adjacent to Louisiana. *See, e.g.*,

*Atlantic Maritime Servs., Inc. v. Ecopetrol America, LLC*, 2026 WL 322641, at \*5 (E.D. La. Feb. 6, 2026) (finding Mississippi Canyon Block 948 adjacent to Louisiana); *Tana Exploration Co. v. Implicit Oil & Gas, L.P.*, 2015 WL 13697932, at \*2 (S.D. Tex. Mar. 30, 2015) (holding "Louisiana is the state adjacent to" Main Pass Block 207). Both Mississippi Canyon and Main Pass are significantly northeast of the Kaskida project, thus confirming that Kaskida is adjacent to Louisiana. *See* Ex. B.

*Fourth*, projected boundaries of the Gulf states also confirm that Louisiana is the state adjacent to the Kaskida project. OCSLA Section 1333(a) references "the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf." Other courts considering the adjacent state analysis under Section 1333(a) have "applied a due south or natural southeasterly extension" of Gulf state boundaries. *See, e.g.*, *Total*, 389 F. Supp. 3d at 490. As shown above, the federal maps projecting state administrative boundaries for the outer Continental Shelf in the Gulf uniformly place the Keathley Canyon blocks at issue within Louisiana's administrative boundaries. That includes BOEM's plans map, which extends the border of each Gulf state to the outer Continental Shelf. *See supra* 10-11. No map faithfully extending Alabama's

boundary southward could include the Kaskida project, which is nearly 200 miles southwest of the nearest coast in Louisiana. Louisiana plainly is the adjacent state under OCSLA subsection 1331(f)(1).

### B. Alabama is not an affected state under subsection 1331(f)(2) because it will not be "directly connected" to the Kaskida project.

The second criterion in Section 1331(f) applies to states that will be "directly connected by transportation facilities to any artificial island or structure referred to in section 1333(a)(1)." 43 U.S.C. § 1331(f)(2). Section 1331(a)(1) refers, in turn, to "all artificial islands on the outer Continental Shelf," and "installations and other devices permanently or temporarily attached to the seabed." 43 U.S.C. § 1331(a)(1).

BP's operations plan proposes to "install a semi-submersible floating production unit" located in Keathley Canyon Area Block 293. Appx-35 (DOCD Vol. I at 6); Appx-81 (SEA 1). Crude oil from the floating production unit in Block 293 will be transported by pipeline to Louisiana. Appx-36 (DOCD Vol. I at 32) ("[BP] has contracted Enbridge Offshore Facilities, LLC to build, own and operate the Gas Export Pipeline (GEP) and the Oil Export Pipeline (OEP) from the Kaskida [floating production

unit] in KC 293.") *id.* ("Kaskida FPU production will be transported by two DOT Right-of-Way pipelines to shore" "in Fourchon, LA.").

Thus, Louisiana is the only state that the operations plan proposes to be "directly connected by transportation facilities" to the Kaskida project. *See* BP Mot. to Dismiss, Boyle Decl. ¶ 10 ("Crude oil from the Kaskida project will be transported using a pipeline system directly to Louisiana."); *id* ¶ 12 ("No other state besides Louisiana will be directly connected to any of the structures comprising the Kaskida project."). Alabama is not an affected state under subsection 1331(f)(2).

### C. Alabama is not an affected state under subsection (f)(3) because it will not receive oil directly from the Kaskida project.

A state satisfies the criteria in subsection 1331(f)(3) if it "will receive[] oil for processing, refining, or transshipment which was extracted from the outer Continental Shelf and transported directly to such State by means of vessels or by a combination of means including vessels." As explained above, crude oil produced by the Kaskida project will be delivered by pipeline to Louisiana. *See* Appx-36 (DOCD Vol. I at 32); BP Mot. to Dismiss, Boyle Decl. ¶ 10 ("Crude oil from the Kaskida project will be transported using a pipeline system directly to Louisiana."). Nothing in

BP's operations plan suggests that Alabama (or any state besides Louisiana) will receive oil from the Kaskida project. *See also* BP Mot. to Dismiss, Boyle Decl. ¶ 12 ("No other state besides Louisiana will . . . directly receive oil extracted from the Kaskida project."). Alabama is not an affected state under subsection 1331(f)(3).

**D.    Interior has not designated Alabama as an affected state under subsections (f)(4) or (f)(5).**

The fourth and fifth criteria in Section 1331(f) turn on designations or findings by Interior. Subsection (f)(4) applies to any state the Secretary designates "as a State in which there is a substantial probability of significant impact on or damage to the coastal, marine, or human environment, or a State in which there will be significant changes in the social, governmental, or economic infrastructure, resulting from the exploration, development, and production of oil and gas anywhere on the outer Continental Shelf." 43 U.S.C. § 1331(f)(4). Subsection (f)(5) applies to any state where the Secretary "finds" a "significant risk of serious damage, due to factors such as prevailing winds and currents, to the marine or coastal environment in the event of any oil spill, blowout, or release of oil or gas from vessels, pipelines, or other transshipment facilities." *Id.* § 1331(f)(5).

16

Alabama does not satisfy either criteria. Interior has not designated Alabama as a state facing "a substantial probability of significant impact or damage" nor found any "significant risk of serious damage" to Alabama "in the event of any oil spill," *id*. §§ 1331(f)(4) & (f)(5). Indeed, as the Alabama CZMA Consistency Certification explains, "[n]o significant impacts on the State of Alabama are expected from routine activities as described by bp's DOCD." Appx-39 (DOCD Appx H at2). That makes sense, as "[a]ll land-based support activities, including transport to and from the site, will be from Louisiana"—not Alabama. *Id.* And the DOCD contemplates "[n]o new expansion of facilities or personnel for shorebases" in Alabama. *Id.* BP's operations plan also projects a less than 0.5% "conditional probability" that an oil spill would reach Alabama's Mobile or Baldwin counties within 30 days of a spill. Appx-40 (DOCD Appx H at 3). Alabama concurred in that consistency certification. Appx-85 (SEA 38); Appx-53 (May 9, 2025 Ltr. from AL Dep't Conservation and Nat'l Resources to BOEM) ("[T]he State of Alabama does not object to the activities outlined in [BP's operations plan].").

BOEM made no contrary finding. BOEM's site-specific Environmental Assessment did not identify any significant impacts or damage

likely to occur to Alabama's "coastal, marine, or human environment," 43 U.S.C. § 1331(f)(4), nor any "significant risk of serious damage" due to a hypothetical oil spill, *id.* § 1331(f)(5).

In their response to the Court's jurisdictional question, Petitioners assert that BOEM "has designated Alabama as an affected state because it sought consistency concurrence from Alabama under the [CZMA]." Dkt. No. 12-1 at 6. That is incorrect. As explained below, although BOEM sent BP's operations plan to Alabama (Appx-49), and Alabama concurred in the CZMA consistency certification (Appx-85 (SEA 38)), BOEM did not designate Alabama as an affected state within the meaning of OCSLA § 1331(f)(4) or (f)(5).

On May 1, 2025, BOEM sent BP's initial operations plan to departments and agencies in Alabama, Texas and Louisiana. *See* Appx-48—51. In its letter to Alabama's Department of Conservation and Natural Resources, BOEM cited 30 C.F.R. § 550.267(a)(1), which states that, within 2 working days of receiving an operations plan, BOEM will send a copy of the plan to "the Governor of each affected state." Appx-49. BOEM regulations incorporate OCSLA's definition of "affected state." *See* 30 C.F.R. § 550.105. In practice, however, when deciding which states should

receive copies of an operations plan, BOEM applies a broader under-standing of who is an "affected state" than what is provided in OCSLA Section 1331(f) and incorporated into its regulations at 30 C.F.R. § 550.105. *See* Ex. D, Declaration of Michelle Picou ¶¶ 2-3.

In its guidance to lessees on applicable regulatory requirements and information that must be provided with development production plans and operations plans, BOEM instructs lessees to "[p]rovide a [CZMA] consistency certification . . . for each affected State." Appx-28 (Notice to Lessees 25). The Notice further provides that "[a] State is an affected State" in four circumstances:

> (1) Your activities are adjacent to a State as shown on the maps on the MMS website at http://www.gomr.mms.gov/homepg/offshore/plans_permits/czmmaps.html;
>
> (2) You propose to use a service or supply base within a State's coastal zone;
>
> (3) You propose construction or expansion of an onshore base; or
>
> (4) You propose to store or dispose of solid and liquid wastes with a State's coastal zone.

*Id.* Elsewhere, the Notice also references the OCSLA definition of "affected state." Appx-2 ("See 30 CFR 250.105 for the definition of 'affected State.'").[2]

The Notice thus provides two separate and discrete definitions of "affected state." In determining which states should receive copies of DOCDs, BOEM's practice is to send the DOCD to any state that meets either definition. Picou Decl. ¶¶ 2-3.

Here, BP's DOCD included a consistency certification for Alabama because BP "expects to utilize the port of Mobile, Alabama for subsea logistics support." Appx-39 (DOCD Appx H at 2). That logistics support would be "a service or supply base within [Alabama's] coastal zone." Appx-28 (Notice to Lessees 25). *See also* BP Mot. to Dismiss 24 (explaining that BP included the consistency certification because of the expected use of the port of Mobile). Because it met the definition of "affected state" for purposes of a CZMA consistency certification, BOEM sent the DOCD

---

[2] The regulations at 30 C.F.R. § 250.150 now apply to the Department of the Interior's Bureau of Safety and Environmental Enforcement (BSEE). Like BOEM's regulations at 30 C.F.R. § 550.105, the BSEE regulations at § 250.150 incorporate OCSLA's definition of "affected state," codified at 43 U.S.C. § 1331(f).

to Alabama. Picou Decl. ¶ 4; *see also* Appx-68—70 (Plan Review Checklist indicating states that required CZMA consistency certification). BOEM's decision to send the DOCD to Alabama does not constitute a designation or finding that Alabama fit the criteria in OCSLA subsections 1331(f)(4) or (f)(5). Picou Decl. ¶¶ 4-5.

Alabama's response to the Kaskida operations plan underscores that Alabama will not be affected by the Kaskida project. *See* Appx-52. There, Alabama "note[d] at the outset that the reservoir that is the basis of this plan, and which is associated with these blocks, is located some 395 miles outside Alabama's jurisdictional waters." *Id.* Alabama does not satisfy the criteria of subsections 1331(f)(4) or (f)(5).

*   *   *   *

In sum, the Eleventh Circuit does not encompass any "affected state" within the meaning of OCSLA Section 1331(f). Only Louisiana meets that definition.

## II. The petition should be dismissed or transferred to the Fifth Circuit.

The "affected state" limitation is either jurisdictional or a "mandatory claim-processing rule" that "must be enforced." *Hamer v. Neighborhood Hous. Servs. of Chicago*, 583 U.S. 17, 20 (2017). Because no state in

the Eleventh Circuit is an "affected state" under OCSLA Section 1331, this Court must dismiss or, at a minimum, transfer the petition to the Fifth Circuit. *See* 28 U.S.C. 1631.

Under OCSLA Section 1349(c)(2), "[f]ederal courts of appeals have subject-matter jurisdiction to review [Interior's] approval, modification, or disapproval of plans submitted at the exploration or development and production stage." *Gulf Restoration Network*, 683 F.3d at 173 (citing 43 U.S.C. § 1349(c)(2)). That jurisdiction is expressly limited, however, to a court of appeals "for a circuit in which an affected State is located." 43 U.S.C. § 1349(c)(2).

As explained in our response to the Court's jurisdictional question, Dkt. No. 10, the text and structure of Section 1349(c)(2) suggest that the "affected state" limitation is jurisdictional. For one, unlike nonjurisdictional claims-processing rules that "impose[] requirements on litigants, not the courts," *Riley v. Bondi*, 606 U.S. 259, 277 (2025), Section 1349(c)(2) speaks directly to the availability of judicial review. It also does so in the same provision that grants subject matter jurisdiction, unlike requirements in separate provisions that the Supreme Court has found nonjurisdictional. *See, e.g.*, *Gulf Restoration Network*, 683 F.3d at

173 (contrasting Section 1349(c)(2)'s "jurisdictional grant" with nonjuris-dictional exhaustion provisions of Section 1349(c)(3)); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 (2006) (observing that Title VII's nonjuris-dictional numerosity requirement "appears in a separate provision that 'does not speak in jurisdictional terms.'"); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 164 (2010) (registration requirement "located in provision 'separate' from those granting federal courts subject-matter jurisdiction") (*quoting Arbaugh*, 546 U.S. at 514-15).

Moreover, Section 1349(c)(2)'s use of the exclusive term "only" is a clear statement that subject-matter jurisdiction is limited to courts of appeals in a circuit that encompasses an affected state. *See Riley*, 606 U.S. at 261 ("Congress need not use 'magic words' to indicate that a rule is jurisdictional."). This provision is therefore unlike other provisions affirmatively vesting jurisdiction in "all the courts of appeal," which have been interpreted as "go[ing] to venue not jurisdiction." *Panhandle E. Pipe Line Co. v. Fed. Power Comm'n*, 324 U.S. 635, 638 (1945).

Regardless of whether Section 1349(c)(2) goes to jurisdiction or venue, the statute is "mandatory," Respondents have "properly raised" it, and this petition can be heard only in a circuit that encompasses an

affected state. *Hamer*, 583 U.S. at 19. Because no state in the Eleventh Circuit satisfies that criteria, the Court should at a minimum transfer the petition to the Fifth Circuit.

## CONCLUSION

For the foregoing reasons, the petition should be dismissed or transferred to the Fifth Circuit.

Respectfully submitted,

/s/ *Angela N. Ellis*
ADAM R.F. GUSTAFSON
*Principal Deputy Assistant Attorney General*

Of Counsel:

ROBERT N. STANDER
*Deputy Assistant Attorney General*

MELISSA A. HEARNE
CHRISTOPHER ANDERSON

SAMUEL D. SCHNARCH
ANGELA N. ELLIS
*Attorneys*

Attorneys
Division of Mineral Resources
Office of the Solicitor
U.S. Dep't of the Interior

Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044

July 15, 2026
90-13-8-18130

(202) 598-7942
angela.ellis@usdoj.gov

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(a) because it contains 4,381 words.

2.      This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Angela N. Ellis*
ANGELA N. ELLIS

*Counsel for Respondents*

# EXHIBIT A

# Excerpts of Administrative Record
## Table of Contents

| Doc. No. | Document | AR Bates No. | Appendix Page No. |
|---|---|---|---|
| 1 | Notice to lessees and operators of oil, gas, sulphur leases in the OCS | BOEM000001-34 | Appx-1 |
| 2 | Excerpts of DOCD Vol. I | BOEM001267; BOEM001293 | Appx-35 |
| 3 | Excerpt of DOCD Appx. H | BOEM001839-BOEM1846 | Appx-37 |
| 4 | Excerpt of DOCD Appx. I | BOEM001879 | Appx-45 |
| 5 | DOCD Approval Ltr. | BOEM002013 | Appx-46 |
| 6 | Ltr. from BOEM to AL Dep't Envt'l Mgmt. | BOEM002015 | Appx-48 |
| 7 | Ltr. from BOEM to AL Dep't Conservation & Natural Resources | BOEM002016 | Appx-49 |
| 8 | Ltr. from BOEM to LA Dep't of Natural Resources | BOEM002017 | Appx-50 |
| 9 | Ltr. from BOEM to TX General Land Office | BOEM002018 | Appx-51 |
| 10 | Ltr. from AL Dept. Conservation & Natural Resources to BOEM | BOEM034274 | Appx-52 |
| 11 | Plan Review Checklist | BOEM022458 | Appx-54 |
| 12 | Excerpts of Site-Specific Environmental Assessment | BOEM0022492-022505; BOEM022539 | Appx-71 |

NTL No. 2008-G04

Issue Date:  April 1, 2008
Effective Date:  May 1, 2008
Expiration Date:  March 31, 2013

NOTICE TO LESSEES AND OPERATORS  OF FEDERAL OIL, GAS, AND SULPHUR
LEASES IN THE OUTER CONTINENTAL SHELF, GULF OF MEXICO OCS REGION

## Information Requirements for Exploration Plans and Development Operations Coordination Documents

This Notice to Lessees and Operators (NTL) provides guidance on the information requirements for OCS plans required by 30 CFR 250, subpart B.  This NTL supersedes NTL No. 2006-G14, effective July 12, 2006.  It provides additional guidance on the information requirements regarding compliance with the provisions of the Endangered Species Act (ESA) and the Marine Mammal Protection Act (MMPA), provides guidance on replacing high-resolution survey lines with 3-D survey data and information for shallow hazards analyses, and makes minor technical amendments.

**Authority and Background**

On August 30, 2005, Minerals Management Service (MMS) published final regulations in the Federal Register amending subpart B of 30 CFR part 250 (see 70 FR 51478).  These regulations became effective on January 1, 2006.  On April 13, 2007, MMS published revisions to subpart B (effective May 14, 2007) to require that you provide information to accompany OCS plans to describe how you will conduct your proposed activities in a manner consistent with the ESA and the MMPA, including monitoring and mitigation measures.

In the subpart B regulations, the contents of an Exploration Plan (EP), a Development and Production Plan (DPP), or a Development Operations Coordination Document (DOCD) are given at 30 CFR 250.211 through 250.228 and 30 CFR 250.241 through 250.262.  Under 30 CFR 250.201(c), MMS may limit the amount of information or analysis you must provide in such OCS plans to that which is necessary to ensure compliance with the OCS Lands Act (OCSLA), as amended, other laws, applicable regulations, and lease stipulations or provisions.  Under this authority, and the authority in 30 CFR 250.201(b), the MMS Gulf of Mexico OCS Region (GOMR) has established the contents of EP's and DOCD's for activities in the Gulf of Mexico (GOM) OCS.  These contents, along with clarifying information, are provided in this NTL and its attachments.

BOEM000001

See 30 CFR 250.105 for the definition of "affected State." Item (1) of that definition delineates a geographical area as one component in determining when a State is an affected State. For a map showing these geographic areas, refer to the MMS Internet website at: http://www.gomr.mms.gov/homepg/offshore/plans_permits/czmmaps.html.

**Proprietary Data**

The information collected pursuant to 30 CFR 250, subpart B, is used to inform MMS, affected States, and the public of planned exploration, development, and production operations on the OCS. It also ensures that OCS operations are planned to comply with statutory and regulatory requirements; will be safe and protect the human, marine, and coastal environment; and will result in diligent exploration, development, and production of leases (see 30 CFR 250.199(e)(2)). Data and information that must be made available to the public without the consent of the lessee, and under what circumstances and times, are outlined at 30 CFR 250.196(a) and (b). Pursuant to 43 CFR Part 2, Appendix E, sections (4) and (9), the MMS GOMR has determined that only the following information is exempt from disclosure:

(a) The geologic objectives, BHL, TVD, and MD information on form MMS-137 (OCS Plan Information Form) in Attachment A;
(b) Production rates and life of reservoirs under General Information at 30 CFR 250.243(c)(1);
(c) Proprietary information in your description of any new or unusual technology you will use under General Information at 30 CFR 250.213(d) and 250.243(e);
(d) All items under Geological and Geophysical Information at 30 CFR 250.214 and 250.244, except for the non-proprietary version of your shallow hazards assessment; and
(e) Correlative well information you use to justify your $H_2S$ classification request under Hydrogen Sulfide Information at 30 CFR 250.215(b) and 250.245(b).

**Guidance Document Statement**

The MMS GOMR issues NTL's as guidance documents in accordance with 30 CFR 250.103 to clarify, supplement, and provide more detail about certain MMS regulatory requirements and to outline the information you provide in your various submittals. Under that authority, this NTL sets forth a policy on and an interpretation of a regulatory requirement that provides a clear and consistent approach to complying with that requirement. However, if you wish to use an alternative approach for compliance, you may do so, after you receive approval from the appropriate MMS GOMR office under 30 CFR 250.141.

**Paperwork Reduction Act (PRA) Statement**

The collection of information referred to in this NTL provides clarification, description, or interpretation of requirements in 30 CFR 250, subpart B and Form MMS-137. The Office of Management and Budget (OMB) has approved the information collection requirements for this regulation and form and assigned OMB control number 1010-0151. This NTL does not impose additional information collection requirements subject to the PRA.

**Contact**

If you have any questions regarding this NTL, please contact the MMS GOMR Plans Section at (504) 736-2581.

[original signed]

Lars T. Herbst
Regional Director

NTL with Attachments A and B

**Appx-3**

BOEM000003

## CONTENTS OF EXPLORATION PLANS (EP's) AND
## DEVELOPMENT OPERATIONS COORDINATION DOCUMENTS (DOCD's)

**Definitions**

Terms used in this NTL have the following meaning:

Deepwater means those water depths 400 meters (1,312 feet) or greater.

Flower Garden Banks Protective Zone means that area of the GOM OCS consisting of the following blocks:

| HI A-351 | HI A-364 | HI A-376 | HI A-384 | HI A-395 | HI A-403 | GB 135 | GB 180 |
|----------|----------|----------|----------|----------|----------|--------|--------|
| HI A-352 | HI A-365 | HI A-377 | HI A-385 | HI A-396 | HI A-573 | GB 136 | EB 173 |
| HI A-353 | HI A-366 | HI A-378 | HI A-386 | HI A-397 | HI A-596 | GB 138 | EB 217 |
| HI A-354 | HI A-367 | HI A-379 | HI A-387 | HI A-398 | GB 95 | GB 139 | |
| HI A-355 | HI A-368 | HI A-380 | HI A-388 | HI A-399 | GB 96 | GB 140 | |
| HI A-361 | HI A-373 | HI A-381 | HI A-389 | HI A-400 | GB 97 | GB 177 | |
| HI A-362 | HI A-374 | HI A-382 | HI A-390 | HI A-401 | GB 133 | GB 178 | |
| HI A-363 | HI A-375 | HI A-383 | HI A-394 | HI A-402 | GB 134 | GB 179 | |

HI = High Island; GB = Garden Banks; EB = East Breaks

Stetson Bank Protective Zone means that area of the GOM OCS consisting of the following blocks:

| HI A-486 | HI A-502 | HI A-514 |
|----------|----------|----------|
| HI A-487 | HI A-503 | HI A-527 |
| HI A-488 | HI A-512 | HI A-528 |
| HI A-501 | HI A-513 | HI A-529 |

HI = High Island

**Plan Contents (30 CFR 250.211 and 250.241)**

(a) Plan Information Form.  Use Form MMS-137 (see Attachment A of this NTL) to provide information concerning your proposed activities.

(b) Location.  Provide a map (separate from any other required map), at a scale of 1 inch = 2,000 feet on an 8½-inch by 11-inch sheet of paper, that depicts the surface location and water depth of each proposed well and production facility, and the proposed locations of all associated drilling unit and construction barge anchors, including any that will be used for the installation or construction of production facilities or well protector structures.  If you do not know the proposed anchor locations, you may show the maximum anchor radius instead.

**Appx-4**

BOEM000004

(c) <u>Safety and pollution prevention features</u>.  Provide a brief description of the important safety and pollution prevention features for your drilling unit, production facilities, and lease term pipelines.

(d) <u>Storage tanks and production vessels</u>. Using the format below, provide information on the storage tanks and/or production vessels at the facility you will use to conduct your proposed activities (barges, drilling rigs, platform, etc.) and that will store oil, as defined at 30 CFR 254.6. Include only those tanks with a capacity of 25 barrels or more.

| Type of Storage Tank | Type of Facility | Tank Capacity (Barrels) | Number of Tanks | Total Capacity (Barrels) | Fluid Gravity (API) |
|---|---|---|---|---|---|
| Fuel Oil | Semi-submersible | 250 | 2 | 500 | No. 2 Diesel. |
| Production | Platform A | 40,000 | 2 | 80,000 | 37º |

(e) <u>Pollution prevention measures</u>.  For EP's and DOCD's that propose activities for which the State of Florida is an affected State, provide a discussion of the measures you will use to prevent the discharge of oils and greases from drilling rigs or platforms during rainfall and routine operations.  (The State of Florida has identified this information as necessary data and information under 15 CFR 930.58(a)(2).)

(f) <u>Additional measures</u>.  Provide a discussion of the safety, pollution prevention, and early spill detection measures that you will take beyond those required by 30 CFR part 250 when you propose the following:

(1) Activities for which the State of Florida is an affected State.
(2) Activities within the Protective Zones of the Flower Garden Banks and Stetson Bank.
(3) To install a surface facility located in water depths greater than 400 meters (1,312 feet), or a surface facility in any water depth that supports a subsea development in water depths greater than 400 meters (1,312 feet).
(4) Initial DOCD's and supplemental DOCD's with new multiwell structures for which the State of Louisiana is an affected State (15 CFR 930.58(a)(2)).
(5) Initial EP's and DOCD's and supplemental DOCD's with new multiwell structures for which the State of Texas is an affected State (15 CFR 930.58(a)(2)).

**General Information (30 CFR 250.213 and 250.243)**

(a) <u>Applications and permits</u>.  Using the format below, provide information on the filing or approval status of the Federal, State, and local application approvals or permits you must obtain to conduct your proposed activities.  List all ***individual or site-specific*** application approvals you must obtain, but do not list ***general*** National Pollutant Discharge Elimination System (NPDES) permits or Corps of Engineers (COE) permits.

| Application/Permit | Issuing Agency | Status |
|---|---|---|
| EPA Air Permit | EPA | To be submitted |
| Individual NPDES Permit | EPA | Approved |

**Appx-5**

BOEM000005

(b) <u>Drilling fluids</u>.

(1) Using the format below, provide information on the types (including chemical constituents) and amounts of the drilling fluids you plan to use to drill your proposed wells when you propose the following:

(i)  Activities for which the State of Florida is an affected State.

(ii)  Activities within the Protective Zones of the Flower Garden Banks and Stetson Bank.

(iii) To install a surface facility located in water depths greater than 400 meters (1,312 feet), or a surface facility in any water depth that supports a subsea development in water depths greater than 400 meters (1,312 feet).

(iv) Initial DOCD's and supplemental DOCD's with new multiwell structures for which the State of Louisiana is an affected State (15 CFR 930.58(a)(2)) and that propose the use of oil-based or synthetic-based drilling fluids.

(v)  Initial EP's and DOCD's and supplemental DOCD's with new multiwell structures for which the State of Texas or the State of Mississippi is an affected State (15 CFR 930.58(a)(2)).

| Type of Drilling Fluid | Estimated Volume of Drilling Fluid to be Used per Well |
|---|---|
| Water-based (seawater, freshwater, barite) | 35,000 bbls |
| Oil-based (diesel, mineral oil) | 500 bbls |
| Synthetic-based (internal olefin, ester) | 20,000 bbls |

(2) For each oil-based drilling fluid you list in the table above,

(i)  Use the format below to describe its major components, and

| Product Name | Amount to be Used | Reference Number |
|---|---|---|
| Bentonite | 100 50-lb bags | CAS # 1302-78-9 |
| PureDrill IA-35 | 500 bbls | CAS # 178603-63-9 |

(ii) Provide a Material Safety Data Sheet (MSDS), MSDS No., or Internet address for the MSDS (or equivalent information) for each product.

(c) <u>Production</u>.  For DOCD's only, use the format below to provide information about each type of your anticipated production.

| Type | Average Production Rate | Peak Production Rate | Life of Reservoir |
|---|---|---|---|
| Oil | 5,000 bbls/day | 10,000 bbls/day | 20 years |
| Gas | 500 mmcfd | 900 mmcfd | 15 years |

(d) <u>Oils characteristics</u>.  For DOCD's only, use the format below to provide the chemical and physical characteristics of the oils (see definition under 30 CFR 254.6) that will be produced, handled, transported, or stored at the facilities you will use to conduct your proposed development and production activities.

**Appx-6**

| Characteristic | Analytical Methodologies Should Be Compatible With: |
|---|---|
| (1) Gravity (API) | ASTM D4052 |
| (2) Flash Point (°C) | ASTM D93/IP 34 |
| (3) Pour Point (°C) | ASTM D97 |
| (4) Viscosity (Centipoise at 25 °C) | ASTM D445 |
| (5) Wax Content (wt %) | Precipitate with 2-butanon/dichloromethane (1 to 1 volume) at -10 °C |
| (6) Asphaltene Content (wt %) | IP-Method 143/84 |
| (7) Resin Content (wt %) | Jokuty et al. (1996) |
| (8) Boiling point distribution including, for each fraction, the percent volume or weight and the boiling point range in degrees C | ASTM D2892 (TBP distillation), or ASTM D2887/5307 |
| (9) Sulphur (wt %) | ASTM D4294 |

**Note:** For the distillation information in item no. 8 above, the MMS GOMR may accept the following information in lieu of items nos. 5, 6, 7, and 8: weight percent total of saturates, aromatics, waxes, asphaltenes, and resins; and total BTEX (ppm) using analytical methods compatible with the Hydrocarbon Groups methodology from Jokuty et al. (1996).

Provide information on the oil composition most likely to result in the largest volume spill (e.g., the oil from the expected largest reservoir, stored oil or pipeline oil combined from a number of wells).

Identify the oil you analyze using one of the following formats:

| Oil from one well | Oil from more than one well sampled on a facility | Oil from a pipeline system |
|---|---|---|
| Area/Block. MMS platform ID. API Well No. Completion perforation interval MMS reservoir name. Sample date. Sample No. (if more than one is taken). | Area/Block. MMS platform ID. Field/Unit. Sample date. Sample No. (if more than one is taken). Listing of API Well Nos. Storage tank ID No. (if sampled at a storage tank. | Pipeline segment number. For each pipeline that feeds into the system, the ID codes for the closest upstream LACT units and/or facility measurement points. Storage tank ID No. (if sampled at a storage tank). |

Provide the above two tables only when you propose the following:

(1) Activities for which the State of Florida is an affected State.
(2) Activities within the Protective Zones of the Flower Garden Banks and Stetson Bank.
(3) To install a surface facility located in water depths greater than 400 meters (1,312 feet), or a surface facility in any water depth that supports a subsea development in water depths greater than 400 meters (1,312 feet).

(e) <u>New or unusual technology</u>. If you propose to use new or unusual technology, as defined in 30 CFR 250.200, to carry out your proposed activities, provide a narrative description of the methodology or technique and the rationale for its selection. In the public information copies of your EP or DOCD, you may exclude any proprietary information from this description. In that case, include a brief discussion of the general subject matter of the omitted information. If you

**Appx-7**

will not use any new or unusual technology to carry out your proposed activities, include a statement so indicating.

(f)  Bonding statement.  Provide one of the following statements regarding your bond coverage, as applicable:

> The bond requirements for the activities and facilities proposed in this [*EP*][*DOCD*] are satisfied by a [*lease*] [*area-wide*] bond, furnished and maintained according to 30 CFR part 256, subpart I, and NTL No. 2000-G16, "Guidelines for General Lease Surety Bonds."

> The bond requirements for the activities and facilities proposed in this [*EP*][*DOCD*] are satisfied by a [*lease*] [*area-wide*] bond, furnished and maintained according to 30 CFR part 256, subpart I; NTL No. 2000-G16, "Guidelines for General Lease Surety Bonds;" ***and*** additional security under 30 CFR 256.53(d) and National NTL No. 2008-N07, "Supplemental Bond Procedures."

> The bond requirements for the activities and facilities proposed in this [*EP*][*DOCD*] are satisfied by a [*lease*] [*area-wide*] bond, furnished and maintained according to 30 CFR part 256, subpart I; NTL No. 2000-G16, "Guidelines for General Lease Surety Bonds;" ***and*** a current MMS-approved deferment from providing additional security under 30 CFR 256.53(d) and National NTL No. 2008-N07, "Supplemental Bond Procedures.  If, any point, [*company name*] no longer qualifies for a supplemental bonding deferment, [*company name*] will either provide the required additional security or a third party guarantee within 60 days after such disqualification."

(g) Oil spill financial responsibility (OSFR).  Provide the following statement regarding your OSFR coverage:

> [*Company name with MMS company number*] [*has demonstrated*] [*will demonstrate*] oil spill financial responsibility for the facilities proposed in this [*EP*][*DOCD*] according to 30 CFR part 253, and NTL No. 2008-N05, "Guidelines for Oil Spill Financial Responsibility (OSFR) for Covered Facilities."

(h) Deepwater well control statement.  If you propose to drill a well in deepwater, provide the following deepwater well control statement:

> [*Company name with MMS company number*] [*has*][*will have*] the financial capability to drill a relief well and conduct other emergency well control operations.

**Appx-8**

BOEM000008

(i)  Suspensions of production.  For DOCD's only, provide a brief discussion of any approved or anticipated suspensions of production you have, or will seek, to hold the lease(s) or unit involved with your DOCD in active status.

(j)  Blowout scenario.  Provide a scenario for a potential blowout of the well (proposed in your EP or DOCD) from which you expect to have the highest volume of liquid hydrocarbons. Include the estimated flow rate, total volume, and maximum duration of the potential blowout. Discuss also the potential for the well to bridge over, the likelihood for surface intervention to stop the blowout, the availability of a rig to drill a relief well, and rig package constraints. Estimate the time it would take to drill a relief well.

Provide this blowout scenario only when you propose the following:
(1)  Activities for which the State of Florida is an affected State.
(2)  Activities within the Protective Zones of the Flower Garden Banks and Stetson Bank.
(3)  To install a surface facility located in water depths greater than 400 meters (1,312 feet), or a surface facility in any water depth that supports a subsea development in water depths greater than 400 meters (1,312 feet).
(4)  Initial DOCD's and supplemental DOCD's with new multiwell structures for which the State of Louisiana is an affected State (15 CFR 930.58(a)(2)).
(5)  Initial EP's and DOCD's and supplemental DOCD's with new multiwell structures for which the State of Texas is an affected State (15 CFR 930.58(a)(2)).

(k)  Chemical products.  The information at 30 CFR 250.213(c) and 250.243(d) regarding chemical products is not required to accompany EP's and DOCD's submitted in the MMS GOMR.

**Geological and Geophysical Information (30 CFR 250.214 and 250.244)**

(a)  Geological description.  Provide a discussion of the geological objectives, including a brief description of the hydrocarbon trapping elements.

(b)  Structure contour maps.  Provide current structure contour maps, at a scale of 1 inch = 2,000 feet (depth-based, expressed in feet subsea), drawn on the top of each prospective hydrocarbon sand for EP's, and of each productive hydrocarbon sand for DOCD's, showing the entire lease block, the location of each proposed well, and the locations of geological cross-sections.  You may use another scale or coverage area for these contour maps on a case-by-case basis if your activities cover more than one lease block, and if you obtain prior approval from the Regional Supervisor.  (Examples of acceptable maps can be found on the MMS website at: http://www.gomr.mms.gov/homepg/regulate/regs/ntls/structmap1.pdf and http://www.gomr.mms.gov/homepg/regulate/regs/ntls/structmap2.pdf.)

(c)  Interpreted two-dimensional (2-D) and/or three-dimensional (3-D) seismic lines.  Provide page-size copies of migrated and annotated (shot points, time lines, well paths) 2-D and/or 3-D seismic lines with depth scale within 152 meters (500 feet) of the surface locations of your proposed wells.  Provide this information as an enclosure to one proprietary copy of your EP.

**Appx-9**

BOEM000009

You are not required to provide this information if the MMS GOMR has approved the surface locations of your proposed wells in previously submitted EP's and DOCD's.

(d) Geological structure cross-sections.  Provide interpreted geological structure cross-sections showing the location and depth of each proposed well for EP's, and expected productive formations for DOCD's.  In addition, show at least one key horizon and the objective sands, and label them using standard biostratigraphic terms.  Express all depths in feet.  (An example of an acceptable cross-section may be found on the MMS website at: http://www.gomr.mms.gov/homepg/regulate/regs/ntls/xsection.pdf).

(e) Shallow hazards report.  If your proposed activities are in water depths less than 300 meters (984 feet), provide two copies of a shallow hazard report based on information obtained from a high-resolution geophysical survey, or a reference to such report if you have already submitted it to the Regional Supervisor.  If your proposed activities are in water depths 300 meters (984 feet) or more, provide three copies of the report.  If the report covers multiple leases, provide a listing.  Refer to NTL No. 2008-G05, "Shallow Hazards Program," for guidelines.  (NOTE:  If you combine an archaeological report with your shallow hazards report, then you will need to provide a total of three copies for proposed activities in water depths less than 300 meters (984 feet) and four copies for activities in water depths 300 meters (984 feet) or more.)

(f) Shallow hazards assessment.  Provide, for each well proposed at an unapproved surface location, an assessment of any seafloor and subsurface geological and manmade features and conditions that may adversely affect your drilling operations, prepared using the guidance in NTL No. 2008-G05.  For wells or platforms proposed at approved surface locations, include a statement to this effect in lieu of an assessment.  Include a non-proprietary version of this item for those EP's or DOCD's that require CZMA consistency review.

(g) High-resolution seismic lines.  Provide an annotated (shot points, time lines, well surface locations, and proximity of wells to line) copy of the high-resolution survey line (shallow penetration subbottom profiler; medium penetration seismic profiler; and sidescan sonar in areas of complex seafloor such as fault scarps, mud mounds, and mud lobes) closest to each of the proposed well locations.  Provide this information as an enclosure to one proprietary copy of your EP or DOCD.  You are not required to provide this information if the MMS GOMR has approved the surface locations of your proposed wells in previously submitted EP's and DOCD's.  You do not need to provide sidescan sonar data for areas in water depths greater than 200 meters (656 feet).

For activities proposed in water depths greater than 200 meters (656 feet), you may replace the high-resolution survey lines with 3-D survey data and information if you have previously run a 3-D seismic reflection survey over 100 percent of the area.  If you make this replacement, provide a seafloor "rendering" or shaded relief map for the proposed well or platform site, a power spectrum diagram, the top hole prognosis, the sampling rate, the acquisition parameters (e.g., cable, source depth), the year the survey was run, and the type of processing used.  The MMS GOMR may request that you perform further processing to enhance the resolution if the area is complex (numerous faults, gas vents, slumps, hard bottoms, etc.).  You may replace high-resolution survey lines with 3-D survey data and information only if:

**Appx-10**

BOEM000010

8

(i)  The 3-D data provide a sufficiently resolute image of the shallow section to allow a clear analysis of the shallow conditions;

(ii) The data are loaded to a workstation at no less than 16-bit (preferably 32-bit) data resolution and are unscaled;

(iii)There is no form of trace and/or sample decimation of the original processed volume;

(iv)The original processed sample interval and bin size are maintained throughout the area;

(v)  The dataset possesses a frequency content of 50 Hz or more across the first second of section below the seafloor;

(vi)Seafloor reflection is free of gaps and defined by a wavelet of stable shape and phase to allow auto-tracking of the seafloor event with minimum user intervention and guidance;

(vii)Acquisition artifacts such as cross-line statics and/or amplitude striping, though possibly identifiable in shallow section, do not detract from the overall interpretation of the picked event when mapped in time or amplitude.  Similarly, time slices or windowed attribute extractions are devoid of, or show minimal, acquisition artifacts to the detriment of their interpretation;

(viii) Merge points between datasets of differing origin or vintage that cross the area are marked by minimal, preferably no, time shifts or amplitude changes across the join that might otherwise be to the detriment of the interpretation;

(ix)Processed bin sizes are less than 40 meters (130 feet) in both the inline and crossline dimension;

(x)  The processed output sample interval is 4 milliseconds or less;

(xi)Attention to definition of an accurate velocity model in the shallow section in processing allows optimum structural and stratigraphic resolution to have been achieved in the 3-D migrated volume.  The shallow section shows no indication of under or over migration artifacts;

(xii)  Multiple energy is unidentifiable or at a level that does not interfere with the analysis of the shallow section; and

(xiii) The proposed activities are not in an area of high archaeological potential (see NTL No. 2005-G07).

(h) Stratigraphic column.  For EP's only, provide a generalized biostratigraphic/ lithostratigraphic column from the seafloor to the total depth of each prospect.  Label objective horizons on the column.  (An example of an acceptable stratigraphic column may be found on the MMS website at:  http://www.gomr.mms.gov/homepg/regulate/regs/ntls/stratcolumn.pdf.)

(i) Time vs. depth tables.  For EP's proposing activities in areas where there is no well control, provide seismic travel time versus depth tables showing intervals of not more than 10 milliseconds.

(j) Geochemical information.  The information at 30 CFR 250.214(j) and 250.244(j) regarding geochemical reports is not required to accompany EP's and DOCD's submitted in the MMS GOMR.

**Appx-11**

BOEM000011

(k) <u>Future G&G activities</u>.  The information at 30 CFR 250.214(k) and 250.244(k) regarding future G&G activities is not required to accompany EP's and DOCD's submitted in the MMS GOMR.

**Hydrogen Sulfide (H$_2$S) Information (30 CFR 250.215 and 250.245)**

(a) <u>Concentration</u>.  Provide the estimated concentration of any H$_2$S you might encounter or handle while conducting your proposed activities.

(b) <u>Classification</u>.  Pursuant to 30 CFR 250.490(c), request that the Regional Supervisor classify the area of your proposed activities as either H$_2$S absent, H$_2$S present, or H$_2$S unknown.  Provide sufficient information to justify your request (e.g., concentrations from at least one correlative well).

(c) <u>H$_2$S Contingency Plan</u>.  If you request that the Regional Supervisor classify the area of your proposed activities as either H$_2$S present or H$_2$S unknown, provide one of the following:

(1) An H$_2$S Contingency Plan prepared according to 30 CFR 250.490(f);

(2) A reference to an approved or submitted H$_2$S Contingency Plan that covers the proposed activities; or

(3) The following statement:

> [*Company name*] will submit to the appropriate MMS GOMR
> district office an H$_2$S Contingency Plan prepared according to
> 30 CFR 250.490(f) before conducting the proposed
> [*exploration*][*development and production*] activities.

(d) <u>Modeling report</u>.  If you have determined or estimated that you will encounter or handle H$_2$S at concentrations greater than 500 parts per million (ppm), model a potential worst-case accidental H$_2$S release from the facilities you will use to conduct your proposed activities.  Provide two copies of the modeling report or the modeling results (see 30 CFR 250.490), or a reference to such report or results if they have already been submitted to the Regional Supervisor.  Include the meteorological data you use in the modeling (as an ASCII-formatted model input file).  The analysis in the report should be specific to the particular site of your activity, and should consider any nearby human-occupied OCS facilities, shipping lanes, fishery areas, and other points where humans may be subject to potential exposure from an H$_2$S release from your proposed activities.  If your projected emissions would effect a concentration of H$_2$S of 10 ppm or greater at an onshore area, the modeling analysis should be consistent with the risk management plan (RMP) methodologies of the Environmental Protection Agency (EPA) outlined in 40 CFR part 68.

**Mineral Resource Conservation Information (30 CFR 250.246)**

(a) <u>Technology and reservoir engineering practices and procedures</u>.  For DOCD's only, provide a brief description of the technology and reservoir engineering practices and procedures

**Appx-12**

you will use to increase the ultimate recovery of oil and gas (e.g., secondary, tertiary, or other enhanced recovery practices). If enhanced recovery practices are not going to be used initially, provide an explanation of the methods you considered and the reasons why you are not using them.

(b) Technology and recovery practices and procedures. For DOCD's only, provide a brief description of the technology and recovery practices and procedures you may use to ensure optimum recovery of oil and gas and/or sulphur.

(c) Reservoir development. For DOCD's only, provide a brief discussion of your exploratory well results, other reservoir data, proposed well spacing, completion methods, and other relevant well plan information.

**Biological, Physical, and Socioeconomic Information (30 CFR 250.216 and 250.247)**

(a) High-Density Deepwater Benthic Communities Information. If you propose activities that could disturb seafloor areas in water depths 300 meters (984 feet) or greater, provide the report described in Attachment A of NTL No. 2009-G40, "Deepwater Benthic Communities."

(b) Topographic features map. If you propose bottom-disturbing activities (including rig placement, and rig or construction barge use of anchors, chains, cables, and wire ropes) within 305 meters (1,000 feet) of the "No Activity Zone" of an identified topographic feature, provide the map described in Attachment 2, Section A, Item No. 1 of NTL No. 2009-G39 "Biologically-Sensitive Underwater Features and Areas."

(c) Topographic features statement (shunting). For EP's only, if you propose to drill more than two wells from the same surface location and that surface location is outside the 1-mile Zone but within the Protective Zone of an identified topographic feature, provide a statement described in Attachment 2, Section A, Item No. 2 of NTL No. 2009-G39 "Biologically-Sensitive Underwater Features and Areas."

(d) Live bottoms (Pinnacle Trend) map. If you have the live bottom (Pinnacle Trend) stipulation attached to your lease, and you propose bottom-disturbing activities (including rig placement, and rig or construction barge use of anchors, chains, cables, and wire ropes) within 61 meters (200 feet) of any pinnacles, include the map described in Attachment No. 4, Section A of NTL No. 2009-G39 "Biologically-Sensitive Underwater Features and Areas."

The OCS blocks affected by this stipulation are Main Pass Area, Blocks 190, 194, 198, 219-226, 244-266, 276-290; Viosca Knoll Area, Blocks 473-476, 521, 522, 564-566, 609, 610, 654, 692-698, 734, and 778; and Destin Dome Area Blocks 577, 617, 618, and 661.

(e) Live bottoms (low relief) map. If you have the Live Bottom (low relief) stipulation attached to your lease, provide the map described in Attachment 6, Section A of NTL No. 2009-G39, "Biologically-Sensitive Underwater Features and Areas."

(f) Potentially sensitive biological features map. If you propose bottom-disturbing activities (including rig placement, and rig or construction barge use of anchors, chains, cables, and wire

BOEM000013

ropes) within 61 meters (200 feet) of potentially sensitive biological features, include the map described in Attachment 8, Section A of NTL No. 2009-G39, "Biologically-Sensitive Underwater Features and Areas."

(g) Remotely operated vehicle (ROV) monitoring survey plan.  If you propose activities that could disturb seafloor areas in deepwater, provide an ROV monitoring survey plan prepared using the guidance in NTL No. 2008-G06, "Remotely Operated Vehicle Surveys in Deepwater."

(h) Threatened or endangered species, critical habitat, and marine mammal information.  Provide site-specific information on the presence of federally listed threatened or endangered species and critical habitat designated under the ESA and marine mammals protected under the MMPA in the area of the proposed activities.

(i) Archaeological report.  When you propose bottom-disturbing activities in areas that the MMS GOMR has identified as having a potential for containing historic or prehistoric archaeological resources, provide three copies of an archaeological report or a reference to such a report if it has already been provided to the Regional Supervisor.  Refer to NTL No. 2005-G07, "Archaeological Surveys and Reports," and NTL No. 2006-G07, "Revisions to the List of OCS Lease Blocks Requiring Archaeological Resource Surveys and Reports," for guidelines.  (NOTE: Provide four copies of a combined archaeological/shallow hazards report for activities in water depths greater than 300 meters (984 feet).)

For EP's and DOCD's proposing activities for which the State of Florida is an affected State, provide a discussion of the presence and description of any historic and prehistoric archaeological resources that could be affected by the proposal, and measures to protect these resources.  Describe the surveys you used to locate and identify these resources.  (The State of Florida has identified this information as necessary data and information under 15 CFR 930.58(a)(2).)

(j) Air and water quality information.  For EP's and DOCD's proposing activities for which the State of Florida is an affected State, provide a discussion of air and water quality in and adjacent to the area of the proposed activities.  (The State of Florida has identified this information as necessary data and information under 15 CFR 930.58(a)(2).)

(k) Socioeconomic information.  Provide the following socioeconomic information:  (The State of Florida has identified this information as necessary data and information under 15 CFR 930.58(a)(2).)

(1) The estimated number of persons you expect to employ in support of your offshore, onshore, and transportation activities within the State of Florida and, where possible, the approximate number of new employees and families likely to move into the affected area;

(2) An estimate of the major supplies, services, energy, water, or other resources you expect to purchase within the State of Florida and that are necessary for you to carry out the EP or DOCD; and

BOEM000014

(3) The types of contractors or vendors within the State of Florida you will need to carry out the EP or DOCD.

**Waste and Discharge Information (30 CFR 250.217 and 250.248)**

(a) <u>Projected generated wastes</u>.  Using the format below, provide information on the projected solid and liquid wastes likely to be generated by your proposed activities.  Include both operational wastes permitted by the appropriate NPDES permit and any other identified wastes.

| Type of Waste | Composition | Projected Amount |
|---|---|---|
| Spent drilling fluids | Water-based drilling muds | 8,000 bbls/well |
| Cuttings containing Synthetic-based mud | Cuttings coated with ester-based Synthetic drilling muds | 600 bbls/well |
| Chemical product waste | Ethylene glycol Methanol | 100 bbls/month 25 bbls/month |
| Trash | Refuse generated during painting operations | 50 bbls/month |

Describe also your plans for treating, storing, or downhole disposal of these wastes at your facility locations(s).

Provide this table and description only when you propose the following:

(1) Activities for which the State of Florida is an affected State.
(2) Activities within the Protective Zones of the Flower Garden Banks and Stetson Bank.
(3) To use new or unusual technology that changes the nature or magnitude of the waste stream.
(4) To use a sulphur recovery unit(s).
(5) Deepwater development operations. (You may omit this table if you propose operations in an exempted area.)  Refer to the MMS website at http://www.gomr.mms.gov/homepg/regulate/environ/ea_grid/ea_grid.asp.
(6) Initial EP's, Initial DOCD's, or Supplemental DOCD's with new multiwell structures for which the State of Texas or the State of Mississippi is an affected State (15 CFR 930.58(a)(2)).
(7) Initial or supplemental DOCD's for which the State of Alabama is an affected State (15 CFR 930.58(a)(2)).
(8) Initial DOCD's or Supplemental DOCD's with new multiwell structure that includes disposal in Louisiana State waters or onshore Louisiana (15 CFR 930.58(a)(2)).

(b) <u>Projected ocean discharges</u>.  If any of your solid and liquid wastes are to be discharged overboard, use the format below to provide the following information.

**Appx-15**

BOEM000015

| Type of Waste | Total Amount to be Discharged | Discharge Rate | Discharge Method |
|---|---|---|---|
| Spent drilling fluids and cuttings containing synthetic-based mud | 5,000 bbls | 200 bbls/day | Shunt through downpipe to 40 feet above the mudline. |
| Chemical product wastes | 50 bbls | 2 bbls/day | Add to produced water stream. |

Provide this table only when you propose the following:

(1) Activities for which the State of Florida is an affected State.
(2) Activities within the Protective Zones of the Flower Garden Banks and Stetson Bank.
(3) To use new or unusual technology that changes the nature or size of the waste stream.
(4) Deepwater development operations. (You may omit this table if you propose operations in an exempted area).  Refer to the MMS website at http://www.gomr.mms.gov/homepg/regulate/environ/ea_grid/ea_grid.asp.
(5) Initial EP's, Initial DOCD's, or Supplemental DOCD's with new multiwell structures for which the State of Texas or the State of Mississippi is an affected State (15 CFR 930.58(a)(2)).
(6) Initial or supplemental EP's or DOCD's for which the State of Alabama is an affected State (15 CFR 930.58(a)(2)).

(c) Modeling report.  If you model the trajectory or fate of discharges of the projected solid or liquid wastes generated by your proposed activities, provide two copies of the modeling report or the modeling results, or a reference to such report or results if it has already been submitted to the Regional Supervisor.  Include the oceanographic data you used in the modeling in the report.  If you plan to model, consult with the Regional Supervisor for further guidance on preparing the modeling report.  Provide this report only when you propose activities for which the U.S. Environmental Protection Agency requires an *individual* NPDES permit.

(d) NPDES permits.  The information at 30 CFR 250.217(c) and 250.248(c) regarding NPDES permits is not required to accompany EP's and DOCD's submitted in the MMS GOMR.

(e) Cooling water intakes.  The information at 30 CFR 250.217(e) and 250.248(e) regarding cooling water intakes is not required to accompany EP's and DOCD's submitted in the MMS GOMR.

**Air Emissions Information (30 CFR 250.218 and 250.249)**

(a) Emissions worksheets and screening questions.  If any of the activities proposed in your EP or DOCD take place at the site of an existing facility or well, prepare two different emissions worksheets.  The calculated emissions that are associated with the activities proposed in the current EP or DOCD submission are referred to as Plan Emissions.  Complex Total Emissions are the Plan Emissions plus projected emissions from all existing co-located facilities and activities (i.e., those that are at the same surface location as your proposed activities, including any group of structures interconnected with walkways or bridges).  If there are no existing facilities or activities co-located with your currently proposed activities, then state that the

**Appx-16**

Complex Total Emissions are the same as the Plan Emissions, and prepare only one emissions worksheet.

(1) Emissions worksheets.  Calculate the Plan Emissions and the Complex Total Emissions associated with your proposed activities using the methodology, emission factors, and worksheets in Form MMS-138 for EP's and Form MMS-139 for DOCD's.  These forms are on the MMS website at: http://www.gomr.mms.gov/homepg/forms/frmindx.html.

Depending on your answers to the screening questions in paragraph (2) below, you may need to include the worksheets in your EP or DOCD.

In calculating your Plan Emissions and Complex Total Emissions:

(i)  You may base the emissions on the maximum rated capacity of the equipment associated with your activities, or by using emission reduction measures or modified emission factors.  If you base your emissions calculations on the use of emission reduction measures or modified emission factors, you will need to submit the worksheets and the documentation described in paragraphs (d)(1) and/or (d)(2) below.

(ii) If you have not determined the specific drilling unit you will use, use the maximum emission estimates for the *type* of drilling unit (i.e., jackup, platform rig, barge, submersible, semisubmersible, or drillship) in your calculations.  You can find the maximum emission estimates for each drilling unit type on the MMS website at: http://www.gomr.mms.gov/homepg/regulate/environ/airquality/reporting.html.

(2) Screening questions.  For EP's, use the format below to answer questions regarding your calculated air emission amounts.

| Screening Questions for EP's | Yes | No |
|---|---|---|
| Is any calculated Complex Total (CT) Emission amount (tons) associated with your proposed exploration activities more than 90% of the amounts calculated using the following formulas: $CT = 3400D^{2/3}$ for CO, and $CT = 33.3D$ for the other air pollutants (where D = distance to shore in miles)? | | |
| Do your emission calculations include any emission reduction measures or modified emission factors? | | |
| Are your proposed exploration activities located east of 87.5° W longitude? | | |
| Do you expect to encounter $H_2S$ at concentrations greater than 20 parts per million (ppm)? | | |
| Do you propose to flare or vent natural gas for more than 48 continuous hours from any proposed well? | | |
| Do you propose to burn produced hydrocarbon liquids? | | |

**Appx-17**

BOEM000017

For DOCD's, use the format below to answer questions regarding your calculated air emission amounts.

| Screening Questions for DOCD's | Yes | No |
|---|---|---|
| Is any calculated Complex Total (CT) Emission amount (tons) associated with your proposed development and production activities more than 90% of the amounts calculated using the following formulas: $CT = 3400D^{2/3}$ for CO, and $CT = 33.3D$ for the other air pollutants (where D = distance to shore in miles)? | | |
| Do your emission calculations include any emission reduction measures or modified emission factors? | | |
| Does or will the facility complex associated with your proposed development and production activities process production from eight or more wells? | | |
| Do you expect to encounter $H_2S$ at concentrations greater than 20 parts per million (ppm)? | | |
| Do you propose to flare or vent natural gas in excess of the criteria set forth under 30 CFR 250.1105(a)(2) and (3)? | | |
| Do you propose to burn produced hydrocarbon liquids? | | |
| Are your proposed development and production activities located within 25 miles (40 kilometers) from shore? | | |
| Are your proposed development and production activities located within 124 miles (200 kilometers) of the Breton Wilderness Area? | | |

In calculating CT for addressing the first question, express the distance to shore (D) in tenths of a statute mile for distances up to 20 miles, and in whole statute miles for distances 20 miles and beyond. Use the nearest point of any land, which is the distance from the facility complex to the mean high water mark of any State, including barrier islands and shoals, to determine the distance to shore.

 (b) If you answer *no* to **all** of the above screening questions from the appropriate table, provide

(1) Summary information regarding the peak year emissions that will be generated by and associated with your Plan Emissions and Complex Total Emissions. This information is compiled on the summary form of the two sets of worksheets, and you can submit either these summary forms or the format below. You do not need to include the entire set of worksheets.

| Air Pollutant | Plan Emission Amounts[1] (tons) | | Calculated Exemption Amounts[2] (tons) | | Calculated Complex Total Emission Amounts[3] (tons) |
|---|---|---|---|---|---|
| Carbon monoxide (CO). | | | | | |
| Particulate matter (PM). | | | | | |
| Sulphur dioxide ($SO_2$). | | | | | |
| Nitrogen oxides ($NO_x$). | | | | | |
| Volatile organic compounds (VOC). | | | | | |

Footnotes:
[1] For activities proposed in your EP or DOCD, list the projected emissions calculated from the worksheets.
[2] List the exemption amounts for your proposed activities calculated by using the formulas in 30 CFR 250.303(d).
[3] List the complex total emissions associated with your proposed activities calculated from the worksheets.

**Appx-18**

BOEM000018

(2) The name, telephone number, and e-mail address of a contact who can answer questions regarding calculations of the projected Plan Emissions, Complex Total Emissions, and exemption amounts.

(3) Following your submittal of the summary information, the MMS GOMR may need you to submit the entire set of worksheets regardless of your response to the above screening questions. The MMS GOMR will make this determination on a case-by-case basis.

(c) If you answer *yes* to **_any_** of the above screening questions from the appropriate table, provide

(1) Worksheets. A set of worksheets showing the emission calculations for your Plan Emissions and, if different, a set of worksheets showing the emission calculations for the Complex Total Emissions.

(2) Contact(s). The name, telephone number, and e-mail address of the person(s) who calculated the projected Plan Emission, Complex Total Emission, and exemption amounts.

(d) In addition, if the screening results indicate that you are to submit worksheets, you may need to submit one or more of the following:

(1) Emission reduction measures. If your calculation of the projected Plan Emission or Complex Total Emission amounts includes emissions reduction measures, submit your worksheets and also use the format below to describe the emission reduction measures. You may use actual fuel usage information (e.g., run times, fuel consumption). If you do, provide 6 to 12 months of data for determining the average fuel usage. The actual fuel usage you use in the emissions calculations cannot be less than the average fuel usage.

| Emission Source | Reduction Control Method | Amount of Reduction | Monitoring System |
|---|---|---|---|
| Compressor | Clean burn technology | 100 tons $NO_x$/year | Periodic stack test |
| Prime mover | Low sulphur fuel | 10 tons $SO_2$/year | Visual check of fuel color and fuel receipts |
| Prime mover | Actual fuel consumption | 300 tons $NO_x$/year | Fuel log |
| Generator | Actual run time | 100 tons $NO_x$/year | Run time log |

(2) Verification of nondefault emission factors. If you use any air emission factors less than the default values in your calculation of the projected Plan Emission or Complex Total Emission amounts, provide documentation supporting the use of the smaller emission factors. However, if the actual emission factor is known to be greater than the default emission factor, use the actual emission factor.

(3) Non-exempt activities. If the calculated Complex Total Emission amount for any pollutant (CO, PM, $SO_2$, $NO_x$, or VOC) is greater than the respective emission exemption amount (E) calculated using the following formulas: $E = 3400D^{2/3}$ for CO, and $E = 33.3D$ for the

**Appx-19**

BOEM000019

other air pollutants (i.e., the formulas in 30 CFR 250.303(d)), provide a description of how you will comply with 30 CFR 250.303(e) through (i), as appropriate.

(4) Modeling report. If you are required by 30 CFR 250.303 to use an MMS-approved air quality model to model projected air emissions, adhere to the guidelines in Appendix W of 40 CFR part 51 in conducting the modeling and preparing the report. Provide two copies of the modeling report and the modeling results, along with a digital copy (in ASCII format) of the input and output files (including the meteorological data you used in the modeling), or a reference to the report, files, and results if they have already been submitted to the MMS GOMR.

**Oil Spills Information (30 CFR 250.219 and 250.250)**

Provide the following information regarding potential spills of oil (see definition under 30 CFR 254.6):

(a) Oil spill response planning. The oil spill response plan (OSRP) required by either paragraph (1) or (2) below:

(1) If you propose activities for which the State of Florida is an affected State, a *site-specific* OSRP prepared according to the requirements of 30 CFR 254.21-29 and that specifically addresses the activities proposed in your EP or DOCD, or a subregional OSRP prepared according to the guidance of NTL No. 2006-G21, "Regional and Subregional Oil Spill Response Plans." If your lease is subject to the special oil spill response lease stipulation, incorporate in your site-specific or subregional OSRP a detailed description of the equipment you will procure to satisfy the requirements of the stipulation and a timetable for its onsite deployment or availability.

(2) If you propose activities in the Central or Western Planning Areas of the GOM, a reference to your approved regional OSRP (see 30 CFR 254.3), or activities for which the State of Florida is an affected State, a reference to your approved subregional OSRP, to include the following:

(i) Regional or subregional OSRP information. The following statement regarding your OSRP:

> All the proposed activities and facilities in this *[EP or DOCD]* will be covered by the Oil Spill Response Plan filed by *[Company name with MMS company number]* in accordance with 30 CFR 254 and approved on *[Date]*.

(ii) Spill response sites. Using the format below, information on the location of your primary spill response equipment and the location of your planned staging area(s) that would be used should you have an oil spill resulting from the activities proposed in your EP or DOCD;

| Primary Response Equipment Location | Preplanned Staging Location(s) |
|---|---|
| Houma, LA | Fourchon, LA; Grand Isle, LA |

**Appx-20**

(iii)<u>OSRO information</u>.  The name(s) of your oil spill removal organization(s) for both equipment and personnel.

(iv)<u>Worst-case scenario determination</u>.  If you have an approved regional OSRP, provide a comparison of the appropriate worst-case scenario from your approved regional OSRP with the worst-case scenario from the proposed activities in your EP or DOCD.  Refer to the sample chart below.  Use this comparison to aid you in determining whether the worst-case scenario from your approved regional OSRP is superseded by the worst-case scenario from the proposed activities in your EP or DOCD.  For EP's, because estimated blowout flow rates are speculative, you should not ordinarily determine that the worst-case scenario from the proposed activities in your EP supersedes the appropriate worst-case scenario from your approved regional OSRP unless its volume is substantially larger.  (Reminder:  In making this determination, also consider proximity to beaches, waterfowl, other marine and shoreline resources, and areas of special economic or environmental importance.)

| Category | Regional OSRP | EP or DOCD |
|---|---|---|
| Type of Activity[1] | Production – Subsea completion | Development – Platform drilling rig |
| Facility Location (area/block) | EI 250 | MC 900 |
| Facility Designation[2] | Well No. 2 | Rio Loco Project |
| Distance to Nearest Shoreline (miles) | 45 miles | 160 miles |
| Volume[3] Storage tanks (total) Flowlines (on facility) Lease term pipelines Uncontrolled blowout (volume per day) Total Volume | 0 bbls 40 bbls 1,600 bbls 2,700 bbls 4,665 bbls | 200 bbls 15 bbls 400 bbls 600 bbls 1,215 bbls |
| Type of Oil(s) - (crude oil, condensate, diesel) | Crude oil. | Crude oil. |
| API Gravity(s)[4] | 37º | 37º |

Footnotes:
1. Types of activities include pipeline, platform, caisson, subsea completion or manifold, and mobile drilling rig.
2. E.g., Well No. 2, Platform JA, Pipeline Segment No. 6373.
3. Take your regional OSRP worst-case scenario volume from the appropriate section of your regional OSRP.  For EP's, the worst-case scenario volume is the daily volume possible from an uncontrolled blowout. Determine this volume using the provisions of 30 CFR 30 CFR 254.47(b).  For DOCD's, determine the volume of your worst-case scenario using the provisions of 30 CFR 30 CFR 254.47(a) or (b), as appropriate.
4. Provide API gravity of all oils given under "Type of Oil(s)" above.  Estimate for EP's.

(A) If your proposed activities are within ten miles seaward of the coastline, reference the "near-shore" worst-case scenario provided in your approved regional OSRP.  If your proposed activities are ten miles or more seaward from the coastline, reference the "far-shore" worst-case scenario provided in your approved regional OSRP.  Where applicable, reference the worst case scenario for your leases and facilities located in the Flower Garden Banks Oil Spill Planning Area (see Appendix H of NTL No. 2006-G21, "Regional and Subregional Oil Spill Response Plans").  Where applicable, reference the worst-case scenario for your mobile rig exploration drilling operations.  For each worst-case scenario, identify clearly the specific scenario in the reference.

(B) If you determine that the worst-case scenario from the activities proposed in your EP or DOCD supersedes the worst-case scenario from your approved regional OSRP,

**Appx-21**

BOEM000021

modify your approved regional OSRP to incorporate this new worst-case scenario and provide the following statement:

> [*Name of company*] submitted the new worst-case scenario to the MMS GOMR on [*date*] for inclusion in our regional or subregional OSRP.

The EP or DOCD will not be approved until the Regional Supervisor has received and approved your regional or subregional OSRP worst-case scenario modification.

       (C) If you determine that the worst-case scenario from the activities proposed in your EP or DOCD does not supersede the worst-case scenario in your approved regional or subregional OSRP, provide the following statement:

> Since [*name of company*] has the capability to respond to the appropriate worst-case spill scenario included in its regional OSRP approved on [*date*], and since the worst-case scenario determined for our [*EP*] [*DOCD*] does not replace the appropriate worst-case scenario in our regional or subregional OSRP, I hereby certify that [*name of company*] has the capability to respond, to the maximum extent practicable, to a worst-case discharge, or a substantial threat of such a discharge, resulting from the activities proposed in our [*EP*] [*DOCD*].

   (b) <u>Oil spill response discussion</u>.  Discuss your response to an oil spill resulting from the activities proposed in your EP or DOCD.  Include all the information described in 30 CFR 254.26(b), (c), (d), and (e) that is applicable.  As the source of the spill, use whichever of the following gives the greater volume of oil:

     (1) The blow-out scenario you describe in paragraph (j) under General Information (30 CFR 250.213 and 250.243) above; or

     (2) The volume of the largest oil/fuel storage tank on the drilling rig or facility.

Provide this oil spill response discussion only when you propose the following:

    (i)  Activities for which the State of Florida is an affected State.
    (ii) Activities within the Protective Zones of the Flower Garden Banks and Stetson Bank.
    (iii) To install a surface facility located in water depths greater than 400 meters (1,312 feet), or a surface facility in any water depth that supports a subsea development in water depths greater than 400 meters (1,312 feet).
    (iv) Initial DOCD's and supplemental DOCD's with new multiwell structures for which the State of Louisiana is an affected State (15 CFR 930.58(a)(2)).
    (v) Initial EP's and DOCD's and supplemental DOCD's with new multiwell structures for which the State of Texas is an affected State (15 CFR 930.58(a)(2)).

**Appx-22**

BOEM000022

(c) <u>Modeling report</u>. If you model a potential oil or hazardous substance spill, provide two copies of the modeling, or a reference to such a report if it has already been provided to the Regional Supervisor. Include the oceanographic data used in the modeling in the report. If you plan to model, contact the Regional Supervisor for guidance on preparing the report.

Provide this modeling report only when you propose the following:

(1) Activities for which the State of Florida is an affected State.
(2) To install a surface facility located in water depths greater than 400 meters (1,312 feet), or a surface facility in any water depth that supports a subsea development in water depths greater than 400 meters (1,312 feet).

**Environmental Monitoring Information (30 CFR 250.221 and 250.252)**

(a) <u>Monitoring systems</u>. Provide a description of any existing and planned monitoring systems that are measuring, or will measure, environmental conditions and/or will provide project-specific data or information on the impacts of your proposed activities.

(b) <u>Incidental takes</u>. If there is reason to believe that protected species may be incidentally taken by your proposed activities, describe how you will monitor for incidental take of:
(1) Threatened and endangered species listed under the ESA; and
(2) Marine mammals, as appropriate, if you have not already received authorization for incidental take as may be necessary under the MMPA.

(c) <u>Flower Garden Banks National Marine Sanctuary</u>. If you propose to conduct activities within the Protective Zones of the Flower Garden Banks and Stetson Bank, discuss your provisions for monitoring the impacts of an oil spill on the environmentally sensitive resources of the Flower Garden Banks National Marine Sanctuary.

**Lease Stipulations Information (30 CFR 250.222 and 250.253)**

Provide a brief description of the measures you took, or will take, to satisfy the conditions of any lease stipulations related to your proposed activities**.**

**Environmental Mitigation Measures Information (30 CFR 250.223 and 250.254)**

(a) For EP's and DOCD's that propose activities for which the State of Florida is an affected State, provide a description of the measures you will take to avoid, minimize, and mitigate impacts to marine and coastal environments and habitats, biota, and threatened and endangered species. (The State of Florida has identified this information as necessary data and information under 15 CFR 930.58(a)(2).)

(b) <u>Incidental takes</u>. If there is reason to believe that protected species may be incidentally taken by your proposed activities, include mitigation measures designed to avoid or minimize the incidental take of:

BOEM000023

(1) Threatened and endangered species listed under the ESA; and

(2) Marine mammals, as appropriate, if you have not already received authorization for incidental take as may be necessary under the MMPA.

**Decommissioning Information (30 CFR 250.255)**

The information at 30 CFR 250.255 regarding decommissioning is not required to accompany EP's and DOCD's submitted in the MMS GOMR.

**Related Facilities and Operations Information (30 CFR 250.256)**

(a) Related OCS facilities and operations. For DOCD's only, provide a description and location of any proposed or existing drilling units, production platforms, pipeline accessory platforms, host facilities, pipelines and associated umbilicals (including those that transport chemical products and produced water), or other facilities and operations located on the OCS (regardless of ownership) that directly relate to your proposed development or production activities. This description should include the size, length, proposed routes, product(s) being transported, maximum flow rates, and the shut-in time of any proposed pipelines.

Provide this related facilities and operations information only for the following:

(1) All initial and supplemental DOCD's.

(2) All revised DOCD's, but only for those facilities and operations that will change as the result of the activities proposed in the revised DOCD.

(b) Transportation system. For DOCD's only, provide a discussion of the transportation system that will be used to transport your production to shore (including the routes of any new pipelines) and a description and location of the primary onshore terminal (including any refineries, gas plants, and compressor stations that will be built or undergo major expansion as the result of the activities proposed in your DOCD).

(c) Produced liquid hydrocarbons transportation vessels. If produced liquid hydrocarbons, including well test fluids, will be transported by means other than a pipeline, use the format below to provide information on the alternative method.

| Transport Method | Vessel Capacity | Average Volume to be Loaded (per transfer) | No. of Transfers (Yearly Average) |
|---|---|---|---|
| Shuttle tanker | 50,000 bbls | 40,000 bbls | 52 |

In addition, provide a description of the method you will use to transfer the liquid hydrocarbons to the transporting vessel.

**Appx-24**

BOEM000024

**Support Vessels and Aircraft Information (30 CFR 250.224 and 250.257)**

(a) <u>General</u>.  Using the format below, provide information regarding the vessels (e.g., tug boats, anchor-handling vessels, construction barges, lay barges, supply boats, crew boats) and aircraft you will use to support your proposed activities.  If specific vessels have not yet been determined, use the maximum capacities, numbers, and trip frequencies for the types of vessels you will use.

| Type | Maximum Fuel Tank Storage Capacity | Maximum No. in Area at Any Time | Trip Frequency or Duration |
|---|---|---|---|
| Tug boats | 3000 bbls | 2 | Every two weeks |
| Supply boats | 500 bbls | 2 | Three times weekly |
| Service boats | 500 bbls | 1 | Daily |
| Crew boats | 500 bbls | 1 | Weekly |

(b) <u>Diesel oil supply vessels</u>.  Using the format below, provide additional information on the vessels you will use to supply diesel oil.  Make sure you include any vessels that will transfer diesel oil you will use for purposes other than fuel (e.g., base for corrosion control fluids).  If the specific fuel supply vessel has not yet been determined, use the maximum size, fuel capacity, and trip frequency for the type of vessel you will use.

| Size of Fuel Supply Vessel | Capacity of Fuel Supply Vessel | Frequency of Fuel Transfers | Route Fuel Supply Vessel Will Take |
|---|---|---|---|
| 180 feet | 1,500 bbls | Weekly | From the shorebase in Fourchon, LA, to XYZ Field, then to WC Block 134. |

Provide this table only when you propose the following:

(1) Activities for which the State of Florida is an affected State.
(2) Activities within the Protective Zones of the Flower Garden Banks and Stetson Bank.
(3) To install a surface facility located in water depths greater than 400 meters (1,312 feet), or a surface facility in any water depth that supports a subsea development in water depths greater than 400 meters (1,312 feet).
(4) Initial and supplemental DOCD's for which the State of Alabama is an affected State (15 CFR 930.58(a)(2)).
(5) Initial DOCD's and supplemental DOCD's with new multiwell structures for which the State of Louisiana is an affected State (15 CFR 930.58(a)(2)).

(c) <u>Drilling fluids transportation</u>.  If you propose activities for which the State of Florida is an affected State, use the format below to provide information on the projected drilling fluids you will transport from the onshore support facilities you will use to your drilling unit or facilities.

BOEM000025

| Type of Material | Quantity Being Transported | Transportation Method |
|---|---|---|
| Barite | 10-50 lb bags | On flats on supply boat |
| Synthetic-base drilling fluid component | 55 gallons | Drums on St. Mary Mud Company's supply boat |

(d) <u>Solid and liquid wastes transportation</u>.  If you plan to transport any of your solid and liquid wastes from the site of your proposed activities to other offshore structures or to temporary or permanent onshore facilities for storage or disposal, use the format below to provide the following information:

| Type of Waste Approx. Composition | Total Amount | Name/Location | Rate | Transport Method |
|---|---|---|---|---|
| Spent oil-based drilling fluids | 1,000 bbls | XYZ Company, St. Mary, LA | 200 bbls/day | Cuttings boxes on barges |
| Chemical product wastes | 100 bbls | Mars Facility, Morgan City, LA | 2 bbls/day 4 bbls/day | Drums on crew boat Drums on crew boat |
| Trash and debris | 1,000 ft$^3$ | Morgan City municipal landfill. | N/A | Storage bins on crew boat |

Provide this table only when you propose the following:

(1) Activities for which the State of Florida is an affected State.
(2) Activities within the Protective Zones of the Flower Garden Banks and Stetson Bank.
(3) To use new or unusual technology that changes the nature or magnitude of the waste stream on the facility.
(4) Deepwater development operations. (You may omit the table if you propose operations in an exempted area.)  Refer to the MMS website at http://www.gomr.mms.gov/homepg/regulate/environ/ea_grid/ea_grid.asp
(5) To use a sulphur recovery unit on the facility.
(6) Initial and supplemental DOCD's for which the State of Alabama is an affected State (15 CFR 930.58(a)(2)).
(7) Initial DOCD's or supplemental DOCD's with new multiwell structures that include disposal in Louisiana coastal waters or onshore Louisiana (15 CFR 930.58(a)(2)).
(8) Initial EP's and DOCD's and supplemental DOCD's with new multiwell structures for which the State of Texas is an affected State (15 CFR 930.58(a)(2)).

(e) <u>Vicinity map</u>.  Provide a map at an appropriate scale showing the location of your proposed activities relative to the shoreline, the distance of your proposed activities from the shoreline, and the primary route(s) of the support vessels and aircraft you will use when traveling between the onshore support facilities you will use and your drilling unit or proposed facilities.

**Onshore Support Facilities Information (30 CFR 250.225 and 250.258)**

(a) <u>General</u>.  Using the format below, provide a listing of the onshore facilities you will use to provide supply and service support for your proposed activities:

**Appx-26**

BOEM000026

| Name | Location | Existing/New/Modified |
|---|---|---|
| XYZ Mud Company | Port Fourchon, LA | Existing |
| Fourchon Service Base | Port Fourchon, LA | Expansion |

(b) <u>Support base construction or expansion</u>.  If you plan to construct a new onshore support base, or expand an existing one to accommodate the activities proposed in your EP or DOCD, provide a description of the necessary work.  For EP's and DOCD's for which the State of Florida is an affected State, provide a complete description of any dredging or filling activities associated with any construction or expansion of facilities in the State of Florida.  (The State of Florida has identified this information as necessary data and information under 15 CFR 930.58(a)(2).)

(c) <u>Support base construction or expansion timetable</u>.  If you plan to acquire land to construct or expand the onshore support base you will use, provide a timetable for land acquisition (including rights-of-way and easements) and construction or expansion.

Provide this information only when you propose the following:

(1) Activities for which the State of Florida is an affected State.
(2) To install a surface facility located in water depths greater than 400 meters (1,312 feet), or a surface facility in any water depth that supports a subsea development in water depths greater than 400 meters (1,312 feet).

(d) <u>Waste disposal</u>.  Using the format below, provide information on the onshore facilities you will use to store and dispose of any solid and liquid wastes generated by your proposed activities.

| Name/Location of Facility | Type of Waste | Amount | Rate | Disposal Method |
|---|---|---|---|---|
| PPM Theodore, AL | Hazardous solid: Oil-contaminated produced sand | 50 lbs | 0.6 lbs/day | Land farming |
| Smiths Incinerator Tampa, FL | Hazardous liquid: Waste oil | 50 bbls | 0.5 bbls/day | Incinerator |
| U.S. Liquids Bourg, LA | Non-hazardous solid: Oil-based drilling muds. | 1,000 bbls | 200 bbls/day | Stationary treatment |
| New Park Transfer Station, Venice, LA | Non-hazardous liquid: Workover fluids. | 150 bbls | 2 bbls/day | Temporary storage |

(e) <u>Air emissions</u>.  The information at 30 CFR 250.225(b) and 250.258(b) regarding air emissions generated by onshore support facilities is not required to accompany EP's and DOCD's submitted in the MMS GOMR.

(f) <u>Unusual solid and liquid wastes</u>.  The information at 30 CFR 250.225(c) and 250.258(c) regarding unusual solid and liquid wastes generated by onshore support facilities is not required to accompany EP's and DOCD's submitted in the MMS GOMR.

**Appx-27**

BOEM000027

**Sulphur Operations Information (30 CFR 250.259)**

If you are proposing to conduct sulphur operations, provide the following:

(a) Bleedwater.  For DOCD's only, a brief discussion of the bleedwater that will be generated by your proposed sulphur operations, including the measures you will take to mitigate the potential toxic or thermal impacts on the environment caused by the discharge of bleedwater.

(b) Subsidence.  For DOCD's only, an estimate of the degree of subsidence you expect at various stages of development and production, and a brief description of the measures you will take to mitigate the effects of subsidence on existing or potential oil and gas production, production platforms, and production facilities and to protect the environment.

**Coastal Zone Management Act (CZMA) Information (30 CFR 250.226 and 250.260)**

(a) Consistency certification.  Provide a Coastal Zone Management Act consistency certification according to 15 CFR 930.76(c) and (d) for each affected State by using the format in Attachment B of this NTL.  A State is an affected State when

(1) Your activities are adjacent to a State as shown on the maps on the MMS website at:
http://www.gomr.mms.gov/homepg/offshore/plans_permits/czmmaps.html;
(2) You propose to use a service or supply base within a State's coastal zone;
(3) You propose construction or expansion of an onshore base; or
(4) You propose to store or dispose of solid and liquid wastes within a State's coastal zone.

(b) Other information.  Provide information required by 15 CFR 930.76(b).  This includes

(1) Information sufficient to support your consistency certification;

(2) Information specifically identified in the State's management program (as originally approved or amended) as necessary data and information, if not provided elsewhere in your EP or DOCD;

(3) For EP's and DOCD's proposing activities for which the State of Florida is an affected State, a cross reference to information specifically identified in Florida's management program and that is provided elsewhere in your EP or DOCD; and

(4) An evaluation that includes a set of findings relating the coastal effects of your proposed activities and their associated facilities to each of the relevant enforceable policies of the State's management program.  (See the MMS website at http://www.gomr.mms.gov/homepg/regulate/regs/ntls/enforpols.pdf for information each GOM State provided MMS regarding its enforceable policies.)  The NOAA-approved enforceable policies are identified in each State's CZMP.  Identify the impacts as specifically as possible.

**Appx-28**

BOEM000028

For the States of Texas, Mississippi, Alabama, and Florida, state if there are no effects on a particular policy. For Louisiana, state that you have considered all of Louisiana's enforceable policies in making your certification of consistency. When it appears that your proposed activities may not be fully consistent with one or more of Louisiana's enforceable policies, provide a brief statement that identifies the enforceable policy, explains the apparent inconsistency, and describes the measures you will take to ensure that your proposed activities will in fact be consistent. You do not need to make findings with respect to coastal effects for which the management program does not contain enforceable policies. Include discussions of the measures that you will take to avoid or mitigate the probable impacts. Include also an assurance of compliance with existing Federal and State laws, regulations, and resultant enforceable program policies in each affected State's CZMP.

Provide the information in paragraphs (a) and (b) above for all of the following:

(1) Initial EP's and DOCD's.
(2) Supplemental EP's and DOCD's for which Florida and Alabama are affected States.
(3) Supplemental DOCD's proposing new multi-well structures for which Louisiana, Mississippi, and Texas are affected States.
(4) Revised EP's and DOCD's for which the MMS GOMR determines that the revisions could result in a significant change in the impacts previously identified and evaluated (refer to 30 CFR 250.285).

**Environmental Impact Analysis (EIA) (30 CFR 250.227 and 250.261)**

Provide a ***project-specific*** environmental impact analysis (EIA) that assesses the potential direct and indirect environmental impacts to offshore and onshore resources that could be affected by your proposed activities. In the EIA, focus on the impacts of your specific project to the extent feasible, rather than providing broad programmatic descriptions of the existing environment and generic impacts such as those provided in MMS's lease sale environmental impact statements.

The MMS GOMR will use the information and analyses provided in your EIA in conducting our environmental review of the proposed activities and will supplement it, as needed, to fulfill the requirements of the National Environmental Policy Act.

Provide an EIA for all Initial and Supplemental EP's and DOCD's. For Revised EP's or DOCD's, you only need address those impact-producing factors (IPF's) and affected resources, and analyze those impacts that are different from those in the original EIA. If the original EP or DOCD did not include an EIA, you do not have to prepare one for a Revised EP or DOCD.

Provide the following information in your EIA.

(a) <u>IPF's from the proposed activities</u>. Determine all IPF's related to your proposed activities that have the potential to impact the environment. Examples of IPF's are
(1) air emissions;
(2) seafloor disturbance from anchoring and structure emplacement;

**Appx-29**

(3) discharges of drilling muds, cuttings, and produced water;

(4) emissions of light and noise;

(5) water intakes and discharges;

(6) use of service vessels and helicopters;

(7) construction or expansion of onshore support facilities;

(8) onshore waste disposal;

(9) marine trash and debris: and

(10) accidental events including oil spills, chemical spills, blowouts, vessel collisions, hydrogen sulfide releases, or large-volume flaring or venting events (for such accidents, describe in terms of volume, duration, etc.).

(b) Affected environment. Identify the environmental or socioeconomic resources that could be affected by the IPF's related to your proposed activities. These may include offshore or onshore resources that are located some distance away from the actual site of the proposed activities, yet could be impacted by an IPF such as air emissions, vessel traffic, or an accidental spill. Typical environmental or socioeconomic resources of concern are

(1) air quality;

(2) water quality;

(3) coastal resources, including wetlands, barrier beaches, and seagrasses;

(4) seafloor biological communities, including topographic features, pinnacle-trend features, low-relief live bottoms, and chemosynthetic communities;

(5) threatened, endangered, and protected species, including marine mammals, sea turtles, coastal and marine birds, Gulf sturgeon, and beach mice (including critical habitat for endangered species, if designated);

(6) fisheries resources, including essential fish habitat;

(7) seafloor archaeological resources, including prehistoric sites and historic shipwrecks;

(8) State and Federally managed or protected areas, including parks and aquatic preserves, wildlife management areas, wildlife refuges, estuarine sanctuaries, and national seashores; and

(9) recreational beaches.

(c) Impact analysis. Analyze the direct and indirect impacts of the IPF's you identified in paragraph (a) above on the environmental or socioeconomic resources you identified in paragraph (b) above. Describe the nature, severity, and duration of these impacts. When discussing the impacts of particular IPF's on certain resources, it may not be feasible to provide project-specific impact discussions that are different than those contained in previous impact analyses in environmental impact statements and environmental assessments that have been prepared by the MMS. In such cases, you may briefly summarize these impact discussions and incorporate them by reference. However, whenever possible, focus the discussion on your project. If you determine that a particular resource would not be impacted by the proposed activity, you do not need to provide an analysis for that resource. To assist you in your impact analysis, you may use the worksheet on the MMS website at http://www.gomr.mms.gov/homepg/regulate/regs/ntls/EIAWorksheet.pdf.

(d) Environmental hazards. If your proposed activities may be adversely impacted by strong environmental phenomena such as hurricanes or strong sea currents, identify the thresholds (e.g.,

**Appx-30**

BOEM000030

wind speeds, current speeds) at which such impacts may occur, and briefly describe the consequences of such impacts, and measures you have included in your EP or DOCD to mitigate these impacts.

(e) Alternatives. For DOCD's only, discuss any alternatives that you considered to reduce the environmental impacts of your proposed activities. Describe how each alternative would result in a change in the environmental impact of your proposed activities.

(f) Mitigation measures. Describe any mitigation measures you propose using to avoid or reduce impacts and explain the effectiveness of this mitigation in terms of duration and recovery that might be expected relative to the resource.

(g) Consultation. Provide a list of agencies and persons you consulted regarding potential impacts associated with your proposed activities.

(h) Preparers. List the individuals who prepared the EIA, including their name, title, and relationship to you (employee, consultant, etc.)

(i) References. Include a list of the references that you cite in the environmental impact analysis. Summarize all information you incorporate by reference.

**Administrative Information (30 CFR 250.228 and 250.262)**

(a) Exempted information description (public information copies only). Provide a description of the general subject matter of the proprietary information that is included in the proprietary copies of your EP or DOCD or its accompanying information.

(b) Bibliography. If you reference a previously submitted EP, DPP, or DOCD; study report; survey report; or other material in your EP or DOCD or its accompanying information, provide a list (with the MMS GOMR control number, if known) of each referenced document.

BOEM000031

**U.S. Department of the Interior**
Minerals Management Service

OMB Control Number: 1010-0151
OMB Approval Expires:  July 31, 2008

## OCS PLAN INFORMATION FORM

| General Information | |
|---|---|
| Type of OCS Plan: | ☐ Exploration Plan (EP) ☐ Development Operations Coordination Document (DOCD) |

| | |
|---|---|
| Company Name: | MMS Operator Number: |
| Address: | Contact Person: |
| | Phone Number: |
| | E-Mail Address: |

| Lease(s): | Area: | Block(s): | Project Name (If Applicable): |
|---|---|---|---|

| Objective(s): | ☐ Oil | ☐ Gas | ☐ Sulphur | ☐ Salt | Onshore Base: | Distance to Closest Land (Miles): |
|---|---|---|---|---|---|---|

### Description of Proposed Activities (Mark all that apply)

| | |
|---|---|
| ☐ Exploration drilling | ☐ Development drilling |
| ☐ Well completion | ☐ Installation of production platform |
| ☐ Well test flaring (for more than 48 hours) | ☐ Installation of production facilities |
| ☐ Installation of caisson or platform as well protection structure | ☐ Installation of satellite structure |
| ☐ Installation of subsea wellheads and/or manifolds | ☐ Commence production |
| ☐ Installation of lease term pipelines | ☐ Other (Specify and describe) |

| | | |
|---|---|---|
| Have you submitted or do you plan to submit a Conservation Information Document to accompany this plan? | ☐ Yes | ☐ No |
| Do you propose to use new or unusual technology to conduct your activities? | ☐ Yes | ☐ No |
| Do you propose any facility that will serve as a host facility for deepwater subsea development? | ☐ Yes | ☐ No |
| Do you propose any activities that may disturb an MMS-designated high-probability archaeological area? | ☐ Yes | ☐ No |
| Have all of the surface locations of your proposed activities been previously reviewed and approved by MMS? | ☐ Yes | ☐ No |

### Tentative Schedule of Proposed Activities

| Proposed Activity | Start Date | End Date | No. of Days |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Description of Drilling Rig | | Description of Production Platform | |
|---|---|---|---|
| ☐ Jackup | ☐ Drillship | ☐ Caisson | ☐ Tension leg platform |
| ☐ Gorilla Jackup | ☐ Platform rig | ☐ Well protector | ☐ Compliant tower |
| ☐ Semisubmersible | ☐ Submersible | ☐ Fixed platform | ☐ Guyed tower |
| ☐ DP Semisubmersible | ☐ Other (Attach Description) | ☐ Subsea manifold | ☐ Floating production system |
| Drilling Rig Name (If Known): | | ☐ Spar | ☐ Other (Attach Description) |

### Description of Lease Term Pipelines

| From (Facility/Area/Block) | To (Facility/Area/Block) | Diameter (Inches) | Length (Feet) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**MMS** FORM **MMS-137** (July 2005 - Supersedes all previous editions of form MMS-137 which may not be used.)     Page 1 of 2

## Appx-32

| **Proposed Well/Structure Location** |
|---|

| Well or Structure Name/Number (If renaming well or structure, reference previous name): | Subsea Completion | |
|---|---|---|
| Anchor Radius (if applicable) in feet: | Yes | No |

| | **Surface Location** | **Bottom-Hole Location (For Wells)** |
|---|---|---|
| **Lease No.** | OCS | OCS |
| **Area Name** | | |
| **Block No.** | | |
| **Blockline Departures (in feet)** | N/S Departure:       F____ L | N/S Departure:       F____ L |
| | E/W Departure:       F____ L | E/W Departure:       F____ L |
| **Lambert X-Y coordinates** | X: | X: |
| | Y: | Y: |
| **Latitude/ Longitude** | Latitude | Latitude |
| | Longitude | Longitude |
| | TVD (Feet): | MD (Feet):     Water Depth (Feet): |

| **Anchor Locations for Drilling Rig or Construction Barge** (If anchor radius supplied above, not necessary) | | | | | |
|---|---|---|---|---|---|
| **Anchor Name or No.** | **Area** | **Block** | **X Coordinate** | **Y Coordinate** | **Length of Anchor Chain on Seafloor** |
| | | | X = | Y = | |
| | | | X = | Y = | |
| | | | X = | Y = | |
| | | | X = | Y = | |
| | | | X = | Y = | |
| | | | X = | Y = | |
| | | | X = | Y = | |
| | | | X = | Y = | |

**Paperwork Reduction Act of 1995 Statement:** The Paperwork Reduction Act of 1995 (44 U.S.C. Chapter 35) requires us to inform you that MMS collects this information as part of an applicant's Exploration Plan or Development Operations Coordination Document submitted for MMS approval. We use the information to facilitate our review and data entry for OCS plans. We will protect proprietary data according to the Freedom of Information Act and 30 CFR 250.196. An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid Office of Management and Budget Control Number. The use of this form is voluntary. The public reporting burden for this form is included in the burden for preparing Exploration Plans and Development Operations Coordination Documents. We estimate that burden to average 600 hours per response, or 640 with an accompanying EP, or 690 with an accompanying DPP or DOCD, including the time for reviewing instructions, gathering and maintaining data, and completing and reviewing the forms associated with subpart B. Direct comments regarding the burden estimate or any other aspect of this form to the Information Collection Clearance Officer, Mail Stop 4230, Minerals Management Service, 1849 C Street, NW., Washington, DC 20240.

**MMS** FORM MMS-137 (July 2005 - Supersedes all previous editions of form MMS-137 which may not be used.)     Page 2 of 2

**Appx-33**

BOEM000033

**COASTAL ZONE MANAGEMENT CONSISTENCY CERTIFICATION FORMAT**

Consistency certification format for all EP's and DOCD's that affect the States of Louisiana, Texas, Mississippi, Alabama, and Florida.

---

**COASTAL ZONE MANAGEMENT
CONSISTENCY CERTIFICATION**


_____
Type of OCS Plan


_____
Area and Block


_____
Lease Number


The proposed activities described in detail in this OCS Plan comply with
[*Name of State(s)*] approved Coastal Management Program(s) and
will be conducted in a manner consistent with such Program(s).


_____
Lessee or Operator

_____
Certifying Official


_____
Date

---

**Appx-34**

# Plan Contents

## 1.1 Description of Activities

BP Exploration & Production Inc. (bp) is submitting an Initial Development Operations Coordination Document (DOCD) for Keathley Canyon (KC) Blocks 292 (KC 292) and 293 (KC 293), Gulf of America (GoA, formerly known as the Gulf of Mexico), Outer Continental Shelf (OCS) G25792 (KC 292). The lease for KC 293 has expired and a Right of Use and Easement will be submitted under separate cover for activities proposed on Lease OCS G26739, KC 293. Under this DOCD, bp proposes to drill six development wells with four back-up wells at two different well centers (DC1 and DC2), install a semi-submersible floating production unit (FPU) with 12 mooring lines, and associated subsea infrastructure. The FPU is planned for production handling for up to 110 MBOPD from subsea tieback wells, and accommodations for 50 POB with 12 chain-polyester-chain mooring lines (no drilling rig). The FPU is located in the Keathley Canyon Area Block 293 in approximately 5,561' water depth, 220 miles southwest of Fourchon and 190 miles to the nearest shore point.

This DOCD is being submitted to drill, complete and produce six (6) development wells with four (4) re-spud wells in KC 292 at DC1 and DC2. A dynamically positioned (DP) drillship is anticipated to be on site for approximately 125 days per well for well drilling and 75 days for completion activities. Installation of the FPU and subsea infrastructure will be accomplished with a DP installation vessel. The installation of the proposed FPU and subsea equipment is estimated to be conducted between 2027 and 2028 with production commencing as early as 4Q 2028 and continuing until approximately 2053. There are 12 mooring anchors associated with this plan.

The information in this DOCD includes:

- o At DC1, this DOCD is to include:
  - Three (3) development wells (DC1 – A, DC1 – B, DC1 - C)
  - Two (2) re-spud wells (DC1 – D, DC1 – E)
  - Four (4) well/manifold jumpers
  - One (1) subsea pump system
  - Four (4) flowline jumpers
  - Four (4) PLETS and holdback system
- o At DC2, this DOCD is to include:
  - Three (3) development wells (DC2 – A, DC2 – B, DC2 - C)
  - Two (2) re-spud wells (DC2 – D, DC2 – E)
  - Four (4) well/manifold jumpers
  - One (1) flowline jumpers

## 1.2 History of Unit Leases

Keathley Canyon Area Block 292 Unit, Agreement 754307002, first became effective May 1, 2006, consisting of all of KC 335 OCS-G 17603, KC 290 OCS-G 19544, KC 291 OCS-G 19545, KC 336 OCS-G 19555, KC 246 OCS-G 25789, KC 247 OCS-G 25790, and KC 292 OCS-G 25792.

© BP p.l.c.
Rev: B02
Project Internal

**Uncontrolled when printed or stored locally**

**Appx-35**

BOEM001267

# Related Facilities and Operations Information

## 12.1  Related OCS Facilities and Operations

bp chose to conform to the requirements of the American Bureau of Shipping (ABS) Class Floating Offshore Installation (FOI) for the Kaskida project Kaskida Floating Production Unit (FPU). The decision to "Class" the facility ensures conformance with statutory requirements and due diligence will be exercised during the service life of the facility. bp executed a contract with ABS which provided the required services through its design, fabrication, and installation activities for assurance that the facility complied with world-recognized and respected Standards. All marine systems are classified by ABS as required for FOI Class. Marine systems are those which are required to conduct marine operations and include ballast, vents, sounds, a center well and all equipment required to operate and support these systems in or on the hull. This is a manned platform which will process produced hydrocarbons from six (6) currently planned wet tree producers from two (2) drill centers.

The subject wells will be equipped with subsea trees and will flow through subsea manifolds, connected via proposed flowlines with associated umbilicals and jumpers to bp's Kaskida semi-submersible floating platform in Keathley Canyon 293.

bp will apply for a Right-of-Use and Easement application for the expired lease on Keathley Canyon Block 293 for the installed Kaskida semi-submersible FPU and for portions of the platform anchorage system.

bp has contracted Enbridge Offshore Facilities, LLC to build, own and operate the Gas Export Pipeline (GEP) and the Oil Export Pipeline (OEP) from the Kaskida FPU in KC 293.  The GEP will tie into existing Magnolia Gas Gathering system.  The OEP will tie into a new Oil system from Shell's Boxer platform in GC 19 facility to onshore, called the Rome pipeline.

The proposed operations are not located within the Protective Zones of the State of Florida, Flower Garden Banks National Marine Sanctuary boundaries.

## 12.2  Transportation Systems

Kaskida FPU production will be transported by two DOT Right-of-Way pipelines to shore.  The 24/26-in bi-directional ROW Oil Export pipeline will transport to a new riser on Shell Boxer fixed platform, GC 19, in Green Canyon, OCS-G 37258, and continue through a new pipeline, Rome, to shore in Fourchon, LA.  The 12-in bi-directional ROW Gas Export pipeline will transport to a new PLET in Garden Banks 695 and then continue through the existing Magnolia Gas pipeline and then into Garden Backs Pipeline system, ROW G25309, Segment No. 14351.

## 12.3  Produced Liquid Hydrocarbons Transportation Vessels

| Transport Method | Vessel Capacity | Average Volume to be Loaded (per transfer) | No. of Transfers (Yearly Average) |
|---|---|---|---|
| Shuttle Tanker | 50,000-bbls | 40,000-bbls | 52 |

© BP p.l.c.

Rev: B02

Project Internal

**Appx-36**

BOEM001293

Appendix H:      Coastal Zone Management Act (CZMA)
Consistency Certification

BOEM001839

# Coastal Zone Management Consistency Certification
# State of Alabama

<u>Initial Development Operations Coordination Document (DOCD)</u>
Type of OCS Plan


<u>Keathley Canyon Blocks 292 and 293</u>
Area and Block

<u>OCS-G 25792 and Expired</u>
Lease Numbers


The proposed activities described in detail in this OCS Plan comply with Alabama's approved Coastal Area Management Program and will be conducted in a manner consistent with such Program.


<u>BP Exploration & Production Inc.</u>
Lessee or Operator

_____
Certifying Official


_____
02/05/2025
Date


**Appx-38**

BOEM001840

# Evaluation of Consistency with the Enforceable Policies of the Alabama Coastal Area Management Program

## 1 Background

BP Exploration & Production Inc. (bp) is submitting an Initial Development Operations Coordination Document (DOCD) for Keathley Canyon (KC) Blocks 292 (KC 292) and 293 (KC 293), Gulf of Mexico, Outer Continental Shelf (OCS)-G-25792 (for KC 292). The lease for KC 293 is expired. Under this DOCD, bp proposes to drill six wells at two drill centers (DC1 and DC2), install a semi-submersible floating production unit (FPU) with 12 mooring lines, and associated subsea infrastructure.

This document evaluates bp's DOCD for any reasonably foreseeable coastal effects on the land, water uses, or natural resources of the coastal zone of Alabama, and evaluates the consistency of bp's DOCD with the enforceable policies of the Alabama Coastal Area Management Program (ACAMP). The analysis, compliant with the Coastal Zone Management Act, is submitted pursuant to 15 Code of Federal Regulations (CFR) 930.76 and is supported by documentation provided in the accompanying Environmental Impact Analysis (EIA). The EIA provides an environmental impacts analysis for the drilling, FPU installation, and subsea installation activities based on the proposed project in KC 292 and KC 293 and is included in DOCD Appendix I. The EIA was prepared in accordance with applicable regulations, including 30 CFR 550.242 and 550.261 as well as Notice to Lessees and Operators (NTL) 2008-G04, extended by NTL BOEM-2015-N02, and BOEM-2015-N01.

The proposed activities will be conducted in accordance with Bureau of Ocean Energy Management (BOEM), Bureau of Safety and Environmental Enforcement (BSEE), and U.S. Environmental Protection Agency (EPA) regulations, applicable NTLs, conditions in the approved permits, and lease stipulations.

KC 292 and KC 293 are located within the Western Gulf of Mexico Outer Continental Shelf (OCS) Planning Area, approximately 350 statute miles (563 km) from the nearest Alabama shoreline. bp expects to utilize the port of Mobile, Alabama for subsea logistics support, located approximately 386 statute miles (621 km) from the project area. A dynamic positioning (DP) drillship is anticipated to be on site for approximately 125 days per well for well drilling and 75 days for completion activities. Installation of the FPU and subsea infrastructure will be accomplished with a DP installation vessel. The installation of the proposed FPU and subsea equipment is estimated to be conducted between 2026 and 2027 with production commencing in 2028 and continuing until approximately 2053. There are 12 mooring anchors associated with this plan.

All land-based support activities, including transport to and from the site, will be from Louisiana. No new expansion of facilities or personnel for shorebases is anticipated to result from this exploration project. No significant impacts on the State of Alabama are expected from routine activities as described in bp's DOCD.

Spill response-related activities for the proposed activities under bp's DOCD are governed by the bp Regional Oil Spill Response Plan (ROSRP) filed on behalf of several affiliated companies, including BP Exploration & Production Inc. (Operator No. 02481). The ROSRP was confirmed in compliance and approved by BSEE on 6 November 2023. bp (Operator No. 02481) has demonstrated oil spill financial responsibility for the facilities proposed in the DOCD, according to 30 CFR Part 553 and NTL No. 2008-N05, "Guidelines for Oil Spill Financial Responsibility for Covered Facilities."

*Keathley Canyon Blocks 292 and 293*                                                                     *2*
*Coastal Zone Management Consistency Certification, State of Alabama*
*CSA-bp-FL-24-4083-03-REP-01-002*

**Appx-39**

BOEM001841

As discussed in Section A.9.2 of the EIA (Large Oil Spill [Worst Case Discharge]), the trajectory of a hypothetical spill in KC 292 or KC 293, projected using information in the 30-day Oil Spill Risk Analysis model for the Gulf of Mexico (see Ji et al., 2004), indicates there is a <0.5% conditional probability of a spill contacting Mobile or Baldwin counties, Alabama within 30 days of a spill. Using Launch Point W026 (as indicated in Ji et al., 2004), the model predicts potential shoreline contact within 30 days of a spill ranging from Cameron County, Texas to Terrebonne Parish, Louisiana.

## 2   Alabama Coastal Area Management Program Guidelines

**Table 1** evaluates the proposed activities with respect to the enforceable policies of the ACAMP according to 15 CFR 930, Subpart E. The ACAMP was approved and has been in effect since 1979 (National Oceanic and Atmospheric Administration and Alabama Coastal Area Board, 1979), and was most recently updated in 2017 (Alabama Department of Conservation & Natural Resources, 2017). Its purpose is to promote, improve, and safeguard the lands and waters located in Alabama's coastal area through a comprehensive and cooperative program designed to preserve, enhance, and develop these valuable resources for present and future generations. The enforceable policies of the program regulate various activities on coastal lands and waters in Baldwin and Mobile Counties of Alabama.

## 3   Consistency Certification

The analysis indicates that bp's DOCD for KC 292 and KC 293 is consistent with the relevant guidelines and coastal planning policies provided by the ACAMP. Routine operations will have limited environmental impacts in the project area. All land-based support activities, including transport to and from the project area, are expected to be from Louisiana.

The DOCD describes the project and related activities, and the EIA analyzes potential environmental impacts from an unplanned release. The intent and requirements of all enforceable Alabama policies have been considered and discussed as well as other information requirements of Alabama. A Coastal Zone Management Act consistency certification according to 16 U.S. Code 1456(c)(3)(B) and 15 CFR 930.76(c) for Alabama is provided on the cover page.

Table 1.   Evaluation of the Initial Development Operations Coordination Document (DOCD) relative to the relevant coastal planning policies of the Alabama Coastal Area Management Program (ACAMP).

| Policy | Cross Reference to the DOCD | Comments | Consistent with ACAMP Policies? (Yes/No) |
|---|---|---|---|
| | | Coastal Resource Use Policies | |
| Coastal Development | DOCD Section 1 – Plan Contents | Routine activities are not anticipated to affect Alabama's coastal development. The proposed activities will occur in Federal Outer Continental Shelf (OCS) waters approximately 350 statute miles (563 km) from the nearest Alabama shoreline., bp will use existing onshore support facilities in Louisiana and Mobile, Alabama. No impacts on coastal development in Alabama are expected. | Yes |

*Keathley Canyon Blocks 292 and 293*                                                              *3*
*Coastal Zone Management Consistency Certification, State of Alabama*
*CSA-bp-FL-24-4083-03-REP-01-002*

**Appx-40**

BOEM001842

Table 1. (Continued).

| Policy | Cross Reference to the DOCD | Comments | Consistent with ACAMP Policies? (Yes/No) |
|---|---|---|---|
| Mineral Resource Exploration and Extraction | DOCD Section 1 – Plan Contents | Routine activities are not anticipated to affect mineral resource exploration and extraction in Alabama's coastal zone. The proposed activities will occur in Federal OCS waters approximately 350 statute miles (563 km) from the nearest Alabama shoreline and do not include any extraction of minerals from the Alabama coastal zone. | Yes |
| Commercial Fishing | DOCD Section 9 – Oil Spill Information<br>DOCD Appendix I – Environmental Impact Analysis (C.8.1 – Recreational and Commercial Fishing) | Routine activities are not anticipated to affect commercial fishing in Alabama's coastal zone. Routine activities may have limited environmental impacts in Federal OCS waters, approximately 350 statute miles (563 km) from the nearest Alabama shoreline.<br><br>Pelagic longlining activities in the lease area and other commercial fishing activities in the northern Gulf of Mexico, including Alabama's coastal zone, could be interrupted in the event of a large oil spill. A spill may or may not result in fishery closures depending on the duration of the spill, the oceanographic and meteorological conditions at the time, and the effectiveness of spill response measures. The potential impacts of an oil spill on Alabama's coastal zone are analyzed in the EIA.<br><br>In the event of a spill, bp will implement the plans and procedures of its Regional Oil Spill Response Plan (ROSRP). The precautions addressed in bp's standard safety and environmental operating procedures and ROSRP are consistent with the protection of Alabama's fishery resources and commercial fishing industry. | Yes |
| Hazard Management | DOCD Section 3 – Geological and Geophysical Information<br>DOCD Section 9 – Oil Spill Information<br>DOCD Appendix I – Environmental Impact Analysis (D. Environmental Hazards) | Site clearance surveys indicated seafloor conditions are suitable for proposed activities in the project area.<br><br>Routine activities are not anticipated to increase the susceptibility of Alabama's coastal zone to natural hazards due to the location of the proposed activities in Federal OCS waters, approximately 350 statute miles (563 km) from the nearest Alabama shoreline. bp expects to use existing port facilities in Mobile, Alabama for subsea logistics support, but no new development in coastal areas, construction, dredging, or filling on Alabama's lands or waters are anticipated.<br><br>In the event of a spill, bp will implement the plans and procedures of its ROSRP. Any cleanup or recovery activities in Alabama would be conducted using applicable best management practices to minimize shoreline impacts. | Yes |
| Shoreline Erosion | DOCD Appendix I – Environmental Impact Analysis (C.7 Coastal Habitats and Protected Areas) | Routine activities are not anticipated to affect Alabama's shoreline due to the location of the proposed activities in Federal OCS waters, approximately 350 statute miles (563 km) from the nearest Alabama shoreline. No new development in coastal areas, construction, dredging, or filling on Alabama's lands or waters are anticipated that could cause shoreline erosion.<br><br>In the event of a spill, any cleanup or recovery activities in Alabama would be conducted using applicable best management practices to minimize shoreline erosion, as addressed in bp's ROSRP. | Yes |

*Keathley Canyon Blocks 292 and 293*
*Coastal Zone Management Consistency Certification, State of Alabama*
*CSA-bp-FL-24-4083-03-REP-01-002*

*4*

**Appx-41**

BOEM001843

Table 1. (Continued).

| Policy | Cross Reference to the DOCD | Comments | Consistent with ACAMP Policies? (Yes/No) |
|---|---|---|---|
| Recreation | DOCD Section 9 – Oil Spill Information<br>DOCD Appendix I– Environmental Impact Analysis (C.8.4 Recreation and Tourism) | There will be no routine activities in the Alabama coastal zone that could interfere with or diminish public access to coastal lands and waters for recreation. Recreational resources and tourism in coastal areas should not be affected by any routine activities due to the distance from shore. There are no known recreational uses of the lease area. Compliance with NTL 2015-G03 will minimize the chance of trash or debris being lost overboard and subsequently washing up on beaches.<br>In the event of a spill, bp will implement the plans and procedures of its ROSRP. The precautions addressed in bp's standard safety and environmental operating procedures and its ROSRP are consistent with the ACAMP policy of safeguarding public access to coastal lands and waters for recreation. | Yes |
| Transportation | DOCD Section 11 – Lease Stipulations<br>DOCD Appendix I – Environmental Impact Analysis (C.8.6 Other Marine Uses) | Routine activities are not anticipated to affect transportation. The lease area is not located within any United States Coast Guard-designated fairway or shipping lane, or within any Military Warning Area. bp will comply with the Bureau of Ocean Energy Management requirements and lease stipulations to avoid impacts on uses of the area by military vessels and aircrafts. Existing onshore support facilities located in Mobile, Alabama may be utilized; however, no impacts on Alabama transportation routes or infrastructure are expected to occur. | Yes |
| Natural and Cultural Resource Protection Policies | | | |
| Biological Productivity | DOCD Section 7 – Waste and Discharge Information<br>DOCD Section 9 – Oil Spill Information<br>DOCD Appendix I – Environmental Impact Analysis (C.7 Coastal Habitats and Protected Areas) | Routine activities are not anticipated to affect biologically productive coastal habitats, including estuaries. The proposed activities will be conducted in Federal OCS waters approximately 350 statute miles (563 km) from the nearest Alabama shoreline.<br>In the event of a spill, bp will implement the plans and procedures of its ROSRP. The precautions addressed in bp's standard safety and environmental operating procedures and its ROSRP are consistent with the ACAMP policy of protecting and preserving biologically productive coastal habitats. | Yes |
| Water Quality and Water Resources | DOCD Section 9 – Oil Spill Information<br>DOCD Appendix I – Environmental Impact Analysis (C.1.2 Water Quality) | Routine activities are not anticipated to affect Alabama's coastal water quality or water resources. The proposed activities will be conducted in Federal OCS waters, approximately 350 statute miles (563 km) from the nearest Alabama shoreline. All discharges for the proposed activity will be governed by a National Pollutant Discharge Elimination System General Permit or by U.S. EPA Vessel General Permits and MARPOL. The authorized overboard discharges during the proposed activities will be localized in offshore waters and are not expected to affect Alabama's water quality or water resources. bp will be using onshore support facilities in Louisiana.<br>In the event of a spill, bp will implement the plans and procedures of its ROSRP. The precautions addressed in bp's standard safety and environmental operating procedures and its ROSRP are consistent with the core policies of conserving surface and ground waters for full beneficial use. | Yes |

*Keathley Canyon Blocks 292 and 293*     *5*
*Coastal Zone Management Consistency Certification, State of Alabama*
*CSA-bp-FL-24-4083-03-REP-01-002*

**Appx-42**

BOEM001844

Table 1.    (Continued).

| Policy | Cross Reference to the DOCD | Comments | Consistent with ACAMP Policies? (Yes/No) |
|---|---|---|---|
| Air Quality | DOCD Section 8 – Air Emissions Information DOCD Appendix I – Environmental Impact Analysis (C.1.1 Air Quality) | Routine activities are not anticipated to affect Alabama's coastal air quality. The proposed activities will be conducted in Federal OCS waters, approximately 350 statute miles (563 km) from the nearest Alabama shoreline. bp expects to utilize the port of Mobile, Alabama for subsea logistics support, but no substantial degradation of coastal air quality from project emissions is expected. In the event of a spill, bp will implement the plans and procedures of its ROSRP. The precautions addressed in bp's standard safety and environmental operating procedures and its ROSRP are consistent with the protection of coastal air quality. | Yes |
| Wetlands and Submerged Grassbeds | DOCD Section 6 – Biological and Physical Information DOCD Section 9 – Oil Spill Information DOCD Appendix I – Environmental Impact Analysis (C.7 Coastal Habitats and Protected Areas) | Routine activities are not anticipated to affect Alabama's wetlands and endemic submerged aquatic vegetation. The proposed activities will be conducted in Federal OCS waters approximately 350 statute miles (563 km) from the nearest Alabama shoreline. There will be no new construction, dredging, or filling on Alabama's lands or waters that could affect wetlands or submerged seagrass beds. In the event of a spill, bp will implement the plans and procedures of its ROSRP. Any cleanup or recovery activities in Alabama would be conducted using applicable best management practices to minimize impacts on wetlands, grass beds, and other coastal habitats. | Yes |
| Beach and Dune Protection | DOCD Section 6 – Biological and Physical Information DOCD Section 9 – Oil Spill Information DOCD Appendix I – Environmental Impact Analysis (C.7 Coastal Habitats and Protected Areas) | Routine activities are not anticipated to affect Alabama's beaches and dunes. The proposed activities will be conducted in Federal OCS waters approximately 350 statute miles (563 km) from the nearest Alabama shoreline. There will be no new construction, dredging, or filling on Alabama's lands or waters that could weaken, damage, or destroy the integrity of the coastal areas or cause erosion of beaches or dunes. In the event of a spill, bp will implement the plans and procedures of its ROSRP. Any cleanup or recovery activities in Alabama would be conducted using applicable best management practices to minimize shoreline erosion and impacts on beach and dune systems. | Yes |
| Wildlife Habitat Protection | DOCD Section 6 – Biological and Physical Information DOCD Section 9 – Oil Spill Information DOCD Appendix I – Environmental Impact Analysis (C.3 Threatened, Endangered, and Protected Species and Critical Habitat and C.7 Coastal Habitats and Protected Areas) | Routine activities are not anticipated to affect Alabama's wildlife habitat. The proposed activities will be conducted in Federal OCS waters approximately 350 statute miles (563 km) from the nearest Alabama shoreline. There will be no new construction, dredging, or filling on Alabama's lands or waters that could affect coastal wildlife habitats, including critical habitats for endangered or threatened species. In the event of a spill, bp will implement the plans and procedures of its ROSRP. Any cleanup or recovery activities in Alabama would be conducted using applicable best management practices to minimize impacts on wildlife habitats. | Yes |

*Keathley Canyon Blocks 292 and 293*                                                                                              *6*
*Coastal Zone Management Consistency Certification, State of Alabama*
*CSA-bp-FL-24-4083-03-REP-01-002*

**Appx-43**

BOEM001845

Table 1. (Continued).

| Policy | Cross Reference to the DOCD | Comments | Consistent with ACAMP Policies? (Yes/No) |
|---|---|---|---|
| Endangered Species | DOCD Section 6 – Biological and Physical Information<br><br>DOCD Section 10 – Environmental Monitoring and Mitigation Measures<br><br>DOCD Section 9 – Oil Spill Information<br><br>DOCD Appendix I – Environmental Impact Analysis (C.3 Threatened, Endangered, and Protected Species and Critical Habitat) | Routine activities are not anticipated to affect Alabama's endangered species. The proposed activities will be conducted in Federal OCS waters approximately 350 statute miles (563 km) from the nearest Alabama shoreline. There will be no new construction, dredging, or filling on Alabama's lands or waters that could affect endangered or threatened species or their coastal wildlife habitats.<br><br>In the event of a spill, bp will implement the plans and procedures of its ROSRP. Any cleanup or recovery activities in Alabama would be conducted using applicable best management practices to minimize impacts on endangered and threatened species and their habitats. | Yes |
| Cultural Resources Protection | DOCD Section 6 – Biological and Physical Information<br><br>DOCD Section 9 – Oil Spill Information<br><br>DOCD Appendix I – Environmental Impact Analysis (C.6 Archaeological Resources) | Routine activities are not anticipated to affect Alabama's cultural resources located within the coastal zone. The proposed activities will be conducted in Federal OCS waters approximately 350 statute miles (563 km) from the nearest Alabama shoreline. bp does not anticipate the proposed activities will affect any sunken or abandoned ships or objects of historical or archaeological value located on Alabama lands or waters.<br><br>In the event of a spill, bp will implement the plans and procedures of its ROSRP. Any cleanup or recovery activities in Alabama would be conducted using applicable best management practices to minimize impacts to sensitive resources. | Yes |

DOCD= Development Operations Coordination Document; EIA = Environmental Impact Analysis.

## 4 References Cited

Alabama Department of Conservation & Natural Resources. 2017. Alabama Coastal Area Management Program IV. Effective January 25, 2017.

Ji, Z.-G., W.R. Johnson, C.F. Marshall, and E.M. Lear. 2004. Oil-Spill Risk Analysis: Contingency Planning Statistics for Gulf of Mexico OCS Activities. U.S. Department of the Interior, Minerals Management Service, Gulf of Mexico OCS Region. New Orleans, LA. OCS Report MMS 2004-026. 62 pp.

National Oceanic and Atmospheric Administration and Alabama Coastal Area Board. 1979. The Alabama Coastal Area Management Program and Final Environmental Impact Statement.

*Keathley Canyon Blocks 292 and 293*                                    7
*Coastal Zone Management Consistency Certification, State of Alabama*
*CSA-bp-FL-24-4083-03-REP-01-002*

**Appx-44**

BOEM001846



Figure 1.    Location of Keathley Canyon Blocks 292 and 293 relative to the northern Gulf of America shoreline and offshore bathymetric contours.

*Keathley Canyon Blocks 292 and 293*
*Environmental Impact Analysis*
*CSA-bp-FL-25-82552-4083-01-REP-01-007*

*2025*
*2*

**Appx-45**

BOEM001879



# United States Department of the Interior

BUREAU OF OCEAN ENERGY MANAGEMENT

Gulf of America OCS Region
1201 Elmwood Park Boulevard
New Orleans, LA 70123-2394

In Reply Refer To: GM 235D

March 13, 2026

Ms. Betsy Cleland
BP Exploration & Production Inc.
200 Westlake Park Blvd.
Houston, Texas 77079

Dear Ms. Cleland,

Reference is made to the following plan:

| | |
|---|---|
| Control No. | N-10256 |
| Type | Initial Development Operations Coordination Document |
| Received | February 18, 2025, amended March 27 and 31, 2025, and modified September 12, 2025 |
| Lease(s) | OCS-G 25792, Block 292, Keathley Canyon Area (KC) |
| | OCS-G 19555, Block 336, Keathley Canyon Area (KC) |
| | OCS-G 37608, Block 337, Keathley Canyon Area (KC) |
| RUE(s) | OCS-G 30441, Block 293, Keathley Canyon Area (KC) |

The Minerals Management Service, Keathley Canyon Block 292 Unit Agreement Number is 754307002.

You are hereby notified that the approval of the subject plan has been granted as of March 13, 2026, in accordance with 30 CFR 550.270(b)(1).

This approval includes the activities proposed for Subsea Wells DC1 A, DC1 B, DC1 C, DC1 D, DC1 E, DC2 A, DC2 B, DC2 C, DC2 D, DC2 E in KC Block 292, Well Centers DC1 and DC2 in KC Block 292, and Platform Kaskida FPU (Complex ID not yet assigned) in KC Block 293 with 12 mooring lines located in KC Blocks 292, 293, 336, and 337.

In accordance with 30 CFR 556.901(d), additional security may be required for your proposed activities. Prior to conducting activities in which you need to obtain approvals and/or permits described in 30 CFR 550.281(a) from the appropriate District Manager or BSEE Regional Supervisor, you must contact BOEM Risk Management Operations Section by email at boemrmos@boem.gov to determine if additional security is required and comply with any demand for this security.

In response to the request accompanying your plan for a hydrogen sulfide ($H_2S$) classification, the area in which the proposed drilling operations are to be conducted is hereby classified, in accordance with 30 CFR 250.490(c), as "$H_2S$ absent."

**Appx-46**

Exercise caution while drilling due to indications of shallow gas, faulting, and possible water flow.

The Endangered Species Act (ESA, 16 U.S.C. §§ 1531 et seq.) is designed to protect threatened and endangered species and applies to activities authorized under the Outer Continental Shelf Lands Act (43 U.S.C. §§ 1331 et seq.). BOEM, the Bureau of Safety and Environmental Enforcement (BSEE), and the National Marine Fisheries Service (NMFS) consulted on oil and gas program activities in the Gulf of America and NMFS issued a 2025 Biological Opinion and associated Attachments and Appendices that include required mitigations. Conditions of Approval (COA) derived from this consultation ensure ESA compliance.

ESA consultation documents and required mitigations covering oil and gas activities in the Gulf of America, can be found here: https://www.boem.gov/regions/gulf-america-ocs-region/oil-and-gas-esa-consultations-and-protocols. You must comply with the protective measures for all activities conducted pursuant to the plan. Activities conducted in association with the subject approval must adhere to these COAs, including all reporting requirements therein.

The following species protective measures found in the link (https://www.boem.gov/oil-gas-energy/2025-nmfs-biop-protocolspdf) are applicable for your proposed activities. The numbering below corresponds to the numbering found in the linked document entitled *Endangered Species Act Protocols per the 2025 Biological and Conference Opinion on the Federally Regulated Oil and Gas Program in the Gulf of America*:

- A.0  Compliance with Biological Opinion Terms and Conditions and Reasonable and Prudent Measures
- A.2  Marine Debris Protocol
- A.3  Vessel Strike Avoidance and Injured and/or Dead Aquatic Protected Species Reporting Protocols
- A.4  In-water Line Precaution Protocol
- A.5  Moon Pool Monitoring Protocol
- A.6  Vessel Transit within the Rice's Whale Area as identified in the 2020 Biological Opinion's Reasonable and Prudent Alternative (2020 RWA)
- A.7  Sea Turtle Resuscitation Guidelines Protocol

These measures are designed to promote environmental protection, consistent environmental policy, compliance with environmental laws, and safety.

If you have any questions or comments concerning this approval, please contact Leslie Wilson at leslie.wilson@boem.gov  or  (504) 736-2588.

Sincerely,

MICHELLE PICOU

Digitally signed by MICHELLE PICOU
Date: 2026.03.13 16:21:45 -05'00'

for      Bernadette Thomas
Regional Supervisor
Office of Leasing and Plans

**Appx-47**

BOEM002014



# United States Department of the Interior

## BUREAU OF OCEAN ENERGY MANAGEMENT
Gulf of Mexico OCS Region
120 I Elmwood Park Boulevard
New Orleans, LA 70123 2394

In Reply Refer To:  GM 235D                                    May 1, 2025


Alabama Department of Environmental Management
Attn: Ms. Sarila Mickle
Coastal Section
3664 Dauphin Street, Suite B
Mobile, Alabama 36608-1211

Dear Ms. Mickle,

In accordance with 30 CFR 550.232(a)(2), enclosed for your review and coastal zone consistency determination is the following plan and its accompanying documents:

```
Control #    -    N-10256
Type         -    Initial Development Operations Coordination Document
Lease(s)     -    OCS-G 25792, Block 292, Keathley Canyon Area (KC)
Operator     -    BP Exploration & Production Inc.
Description  -    Subsea Wells DC1, DC1 A, DC1 B, DC1 C, DC1 D, DC1 E,
                  DC2, DC2 A, DC2 B, DC2 C, DC2 D, and DC2 E
```

Please refer to the above control number in all communication and correspondence concerning the subject plan.

Your review and comments are requested by June 13, 2025.

                                         Sincerely,

                                         LESLIE WILSON    Digitally signed by LESLIE
                                                          WILSON
                                                          Date: 2025.05.01 11:12:56 -05'00'

                                         Leslie Wilson
                                         Plan Coordinator
                                         Office of Leasing and Plans,
                                         Plans Section


Enclosure

**Appx-48**

BOEM002015



# United States Department of the Interior

BUREAU OF OCEAN ENERGY MANAGEMENT
Gulf of Mexico OCS Region
1201 Elmwood Park Boulevard
New Orleans, LA 70123 2394

In Reply Refer To:  GM 235D                              May 1, 2025


Department of Conservation and Natural Resources
Director, State Lands Division
Attn: Ms. Patricia McCurdy
64 North Union Street, Rm. 464
Montgomery, Alabama 36130

Dear Ms. McCurdy,

In accordance with 30 CFR 550.267(a)(1), and the letter of November 1, 1993,
enclosed for your review and comment is the following plan and its
accompanying documents:

    Control #     -     N-10256
    Type          -     Initial Development Operations Coordination Document
    Lease(s)      -     OCS-G 25792, Block 292, Keathley Canyon Area (KC)
    Operator      -     BP Exploration & Production Inc.
    Description -       Subsea Wells DC1, DC1 A, DC1 B, DC1 C, DC1 D, DC1 E,
                        DC2, DC2 A, DC2 B, DC2 C, DC2 D, and DC2 E

During the evaluation, we shall consider all comments received from your
office within 60 days of the receipt of this plan.

Please refer to the above control number in all communication and
correspondence concerning the subject plan.

If you have any questions or comments please contact Leslie Wilson at
leslie.wilson@boem.gov or (504)736-2588.

                                    Sincerely,

                                    LESLIE
                                    WILSON

                                    Digitally signed by LESLIE
                                    WILSON
                                    Date: 2025.05.01 11:32:33
                                    -05'00'

                                    Leslie Wilson
                                    Plan Coordinator
                                    Office of Leasing and Plans,
                                    Plans Section


Enclosure

**Appx-49**

BOEM002016



# United States Department of the Interior

BUREAU OF OCEAN ENERGY MANAGEMENT
Gulf of Mexico OCS Region
1201 Elmwood Park Boulevard
New Orleans, LA 70123 2394

In Reply Refer To:  GM 235D                                    May 1, 2025

Department of Natural Resources
Louisiana Coastal Zone Management Section
617 N. 3rd Street, Suite 1067
Baton Rouge, LA 70802

Dear Sir or Madam,

In accordance with 30 CFR 550.267(a)(3), enclosed for your review and coastal zone consistency determination is the following plan and its accompanying documents:

        Control #    -    N-10256
        Type         -    Initial Development Operations Coordination Document
        Lease(s)     -    OCS-G 25792, Block 292, Keathley Canyon Area (KC)
        Operator     -    BP Exploration & Production Inc.
        Description  -    Subsea Wells DC1, DC1 A, DC1 B, DC1 C, DC1 D, DC1 E,
                          DC2, DC2 A, DC2 B, DC2 C, DC2 D, and DC2 E

Please refer to the above control number in all communication and correspondence concerning the subject plan.

Your review and comments are requested by June 13, 2025.

                                            Sincerely,

                                            LESLIE WILSON   Digitally signed by LESLIE
                                                            WILSON
                                                            Date: 2025.05.01 11:10:33
                                                            -05'00'

                                            Leslie Wilson
                                            Plan Coordinator
                                            Office of Leasing and Plans,
                                            Plans Section

Enclosure

**Appx-50**

BOEM002017



# United States Department of the Interior

## BUREAU OF OCEAN ENERGY MANAGEMENT
Gulf of Mexico OCS Region
1201 Elmwood Park Boulevard
New Orleans, LA 70123 2394

In Reply Refer To:  GM 235D                          May 1, 2025


Texas General Land Office
Environmental Specialist
1001 Texas Clipper Road
Building 3026, Room 912
Galveston, Texas 77554

Dear Sir or Madam,

In accordance with 30 CFR 550.267(a)(3), enclosed for your review and coastal zone consistency determination is the following plan and its accompanying documents:

    Control #    -    N-10256
    Type         -    Initial Development Operations Coordination Document
    Lease(s)     -    OCS-G 25792, Block 292, Keathley Canyon Area (KC)
    Operator     -    BP Exploration & Production Inc.
    Description  -    Subsea Wells DC1, DC1 A, DC1 B, DC1 C, DC1 D, DC1 E,
                      DC2, DC2 A, DC2 B, DC2 C, DC2 D, and DC2 E

Please refer to the above control number in all communication and correspondence concerning the subject plan.

Your review and comments are requested by June 13, 2025.

                              Sincerely,

                              LESLIE WILSON   Digitally signed by LESLIE
                                              WILSON
                                              Date: 2025.05.01 10:54:47 -05'00'

                              Leslie Wilson
                              Plan Coordinator
                              Office of Leasing and Plans,
                              Plans Section


Enclosure

**Appx-51**

BOEM002018



CHRISTOPHER M. BLANKENSHIP
COMMISSIONER

KAY IVEY
GOVERNOR

EDWARD F. POOLOS
DEPUTY COMMISSIONER

May 9, 2025

U.S. Department of the Interior
Bureau of Ocean Energy Management
Attn: Leslie Wilson
1201 Elmwood Park Boulevard
New Orleans, Louisiana 70123-2394

Re:    GM 235D
        Control #N-10256
        Initial Development Operations Coordinations Document
        BP Exploration & Production Inc. (BP)
        Lease: OCS-G 25792 Block – 292 Keathley Canyon Area
                  OCS-G 26739 Block – 293 Keathley Canyon Area

Dear Ms. Wilson:

This is in response to your May 1, 2025, letter regarding the above-referenced Initial Development Operations Coordinations Document (DOCD), as updated.

Our staff has reviewed the materials provided, including the location of the proposed operations. We note at the outset that the reservoir that is the basis of this plan, and which is associated with these blocks, is located some 395 miles outside Alabama's jurisdictional waters.

From our evaluation, we understand that BP is submitting an initial DOCD for the Kaskida project in Keathley Canyon (KC) Area Blocks 292 and 293. BP proposes to drill and complete six (6) development wells (DC1-A, DC1-B, DC1-C, DC2-A, DC2-B, DC2-C) with four (4) re-spud wells (DC1-D, DC1-E, DC2-D, DC2-E) in KC 292 using a dynamically positioned drillship. BP also proposes to install a semi-submersible floating production unit (FPU) with twelve (12) mooring lines, and associated subsea infrastructure. The FPU will be located in KC Block 293.

BP has reported that safety prevention features will include the use of appropriately designed casing and cement programs; appropriate subsea blowout preventers, diverters, and other associated well equipment, appropriate mud monitoring equipment and sufficient mud volumes for well control; and property trained personnel as described in Title 30 CFR Part 250, Subparts C, D, E, F, and O, 30 CFR Part 550 Subparts B and C, and as further described by Notices to Lessees (NTLs).

The material provided also reflects that BP has demonstrated oil spill financial responsibility for the proposed facilities according to 30 CFR Part 553, and NTL No. 2008-N05, "Guidelines for Oil Spill Financial Responsibility for Covered Facilities." Additionally, BP represents that it has the financial capability to drill a relief well and conduct other emergency well

The Department of Conservation and Natural Resources does not discriminate on the basis of race, color, religion, age, sex, national origin, disability, pregnancy, genetic information or veteran status in its hiring or employment practices nor in admission to, access to, or operations of its programs, services, or activities.

control operations. BP has further represented that it has provided Blowout Scenario and Worst-Case Discharge (WCD) calculations that include arrangements for drilling a relief well.

Accordingly, based on the information provided in the Initial Development Operations Coordinations Document and the safety assurances contained therein, the State of Alabama does not object to the activities outlined in this document. Should the Document again be revised, we respectfully request a copy of the revised submission.

Should you have any questions, please contact Galen Grider in the State Lands Division at 334-353-7007 or via email at Galen.Grider@dcnr.alabama.gov.

Sincerely,

Christopher M. Blankenship
Commissioner

CMB/dnb

The Department of Conservation and Natural Resources does not discriminate on the basis of race, color, religion, age, sex, national origin, disability, pregnancy, genetic information or veteran status in its hiring or employment practices nor in admittance to, access to, or operations of its programs, services, or activities.

Appx-53

# Plan Review Checklist

| Type of OCS Plan: | Exploration Plan (EP) | | Development Operations Coordination Document (DOCD) | X | Control No. | N-10256 |
|---|---|---|---|---|---|---|
| Operator Name | BP Exploration & Production | | | Qualified Company No. | | 02481 |
| Do they have a survey submitted for current Lease(s) in plan | | | Date Survey Received: | | | |

| | Surface Location | Bottom Location |
|---|---|---|
| Lease(s) | G25792 | G25792 |
| Area(s) | KC | KC |
| Block(s) | 292 | 292 |

**Narrative Description of Proposed Activities:**
Kaskida project, drilling six development wells with four back-up wells at two different well centers (DC1 and DC2), install a semi-submersible floating production unit (FPU) with 12 mooring lines, and associated subsea infrastructure in KC 292 and KC 293.

**Project Name:** Kaskida

**Commencement Date:**
7/01/2026

| | Description of Proposed Activities (Mark all that apply) | | | | |
|---|---|---|---|---|
| | Exploration drilling (EP only) | | | Development drilling (DOCD only) |
| | Well completion (EP or DOCD) | X | | Installation of production platform (DOCD only) |
| | Well test flaring (EP or DOCD) | | | Installation of production facilities (DOCD only) |
| | Installation of caisson or platform as well protection structure (EP or DOCD – For EP enter as Well Protector WP) | | | Installation of satellite structure (DOCD only) |
| X | Installation of subsea wellheads and/or manifolds (**not at well locations**) (EP or DOCD) – in EP enter MANIFOLD as Structure but ensure in Remarks stated just for clearance of area, due to MANIFOLD for Mutil-Wells and will be permitted in BSEE) | X | | Commence production (DOCD only) |
| | Installation of lease term pipelines (DOCD only) | | | Other (Attach description) (i.e. installation of permanent Anchors associated with Platform) |

| Description of Drilling Rig(s) | | | | Description of Production Platform | | | |
|---|---|---|---|---|---|---|---|
| | Jackup | X | Drillship | | Caisson | | Tension leg platform |
| | Gorilla Jackup | | Platform rig | | Well Protector | | Compliant tower |
| | Semisubmersible (usually includes ANCHORS) | | Submersible | | Fixed platform | | Guyed tower |
| | DP Semisubmersible (at this time 2 ENSCO rigs can utilize Anchors) | | Other (Attach Description | | Subsea manifold | X | Floating production system |
| **Drilling Rig Name (if known):** | | | | | Spar | | Other (Attach Description) |

| | Y | N | | Y | N |
|---|---|---|---|---|---|
| **Expedited Review Requested --** (if req. date is earlier than Final Due Date & usually can only be granted if after Deem Submitted)<br>▪ In Plan Info Form & usually cover letter<br>▪ (See Expedited Review SOP) | | X | **Designated Operator of all leases involved --**<br>▪ Check TIMS, Lease Administration, Forms, Lease Block View (must be Des. Oper. of portion of BHL lease & if Not Des. Oper. of Surface then RUE required/discuss with Lead/Supv.) – NOTE: use Designated Portion Sheet if multiple portions "DesignatedPortionSheet " | | X |
| **Right-of-Use and Easement required –**(Can never be for Bottom Hole of Well if is Discuss w/Section Chief)<br>▪ RUE application is required if:<br>   o Plan submitter is not the designated operator OF SURFACE LEASE | X | | **Surface location(s) previously cleared --**<br>▪ Check TIMS, Plans, Forms, Query Plan Sites by surface lease (SL has to be same Lease # and if not then is SL from well prev. drilled & not PA'd or from Platform not removed) | X | |

**Appx-54**

BOEM022458

| | | | |
|---|---|---|---|
| o If well(s) being drilled from SL lease to BHL Lease and traverses thru another lease block – Plan Coord. should ensure that area/block/lease is the operator submitted plan, if area/block/lease traversing thru is another operator than a RUE is required (NOTE: if area/block/lease traversing thru is Unleased/Not active then no RUE required) <br><br> o (DOCD only) Platform to be installed with PERMANENT Anchors/Mooring/Suction Piles either on UNLEASED area/Block or Other Operator Lease/area/block (inform Supervisor & Lead because this will affect the Notice of Sale) | | **Well(s) to be drilled from an existing facility --** <br> ▪ If surface from prev. installed Platform <br> ▪ IF additional wells (more than available slots per Approved Platform view in TIMS) then on Approval inform BSEE, OSTS <br> ▪ (Complex Total spreadsheets required) | |

**Appx-55**

BOEM022459

# Internal Review Determination

Use this checklist to determine which reviews and actions must be completed before deeming the plan submitted:

| | Y | N | | Y | N |
|---|---|---|---|---|---|
| **FO-LE NEPA Coordination Review –(notification to OE for review)**<br>• **Required for all PLANS**<br>• **will not be completed/it is notification for OE to create their reviews (i.e. AQR, ARCH, BIO/CHEMO, Water Quality)** | X | | **Geological and Geophysical Review**<br>• **Required for All Initial & Supplemental EPs**<br>• **Required for DOCDs (Initial/Supplemental) if there is Drilling activities** | X | |
| **Development Conservation Review**<br>• **Required for All Initial & Supplemental EPs and DOCDs**<br>• **Barging Activities** | X | | **Unitization Conservation Review**<br>• **Required for All Initial & Supplemental EPs and DOCDs that includes Wells and Lease Status is "UNIT" for any Leases (SL & BHL) (check during validation of Lease/area/block)** | X | |
| **OPA WCD Verification Review 2**<br>• **Required for All Initial EPs**<br>• **Required for Initial DOCDs if Drilling**<br>• **For Supplemental EPs & DOCDs w/Drilling an Operator can Reference a Previous Plan that Had WCD verification; however all Leases (SL/BHL) in submitted Supplemental Plan had to be in previous Referenced Plan**<br>• **If not sure about Supplemental, discuss with Lead and/or Supv.** | X | | **NTL 2010 N06 Pending Plan Review**<br>• **Required for All Initial & Supplemental EPs**<br>• **Required for Initial or Supplemental DOCDs w/Drilling** | X | |
| **NMFS ESA 3 Review**<br>• **OE/Biological Sciences Section BSU will determine if plan requires 2020 NMFS Biological Opinion Step Down review** | X | | **GOMESA/Gulf of Mexico Energy Security Act –**<br>• **See GOMESA Map AreaBlocks in the Plans Section Folder/GOMESA Info folder GOMESA Map**<br>• **If lease(s) in plan are in GOMESA area, inform Supv. To see next steps** | | X |
| **Subsea Wells (not from a platform) DRILLING -- [FOR DEEPWATER >500']**<br>▪ **(ensure that the plan is reviewed as an EA) – if a DOCD not for Drilling then Plan would be a CERA unless DOCD includes Installation of NEW Platform** | X | | **Artificial Reef --**<br>▪ Ensure OE has placed a mitigation if in Permitted Portion & NEW activity - no mitigation required if in reef area and not permitted portion<br>▪ See Artificial Reef Area Map | | X |
| **Water depth at any proposed well or anchor location greater than 300 meters (984 feet) –**<br>▪ Chemosynthetic Communities (some type of Biological Review) Review required<br>▪ See NTL No. 2009-G40<br>▪ **Known High-Density Deepwater Benthic Communities in Gulf** | | X | **Significant OCS Sediment resources --**<br>▪ Marine Minerals Program review required<br>▪ See NTL No. 2009-G04<br>▪ **Managing Multiple Uses in the Gulf of Mexico** | | X |
| **Live Bottom/Pinnacle Trend --**<br>▪ Live Bottom and/or Pinnacle Features Reviews Required (Check to see if Lease Stipulation on area/block/Lease https://www.data.bsee.gov/Other/FileRequestSystem/ScanPlans.aspx<br>▪ See NTL No. 2009-G39 &<br>▪ **Biologically Sensitive Areas (<300m)** | | X | **Fairway, Anchorage, or Ordinance Disposal Area –** ensure operator submits info to avoid (plan coordinator review – in Plans General Review)<br>▪ See FAIRWAY Anchorage INFORMATION<br>▪ **Fairway Anchorage Ordinance Map** | | X |
| **Topographic Feature --**<br>▪ Topographic Feature Biological Review required<br>▪ See NTL No. 2009-G39<br>▪ List of Blocks Affected by the Topographic Features Stipulations (Check to see if Lease Stipulation on area/block/Lease) https://www.data.bsee.gov/Other/FileRequestSystem/ScanActiveLeases.aspx<br>▪ **Biologically Sensitive Areas (<300m)** | | X | **Plan Blocks adjacent to MC 252 (Macando)** - MC 206, 207, 208, 251, 253, 295, 296, 297 (Particularly when anchors may be involved that could go into MC 252 & No surface location in MC252 Exclusion Zone Area)<br>▪ see MC 252 Exclusion Zone Map And BP letter<br>▪ Check if Mitigation Required – see Example MC 252 Mitigation | | X |
| **(DOCD only) Conservation Information Document Notification required --** | X | | **Mexico Transboundary lists area/blocks leased –** ensure check Lease Stipulation for area/block/lease on BOEM website | | X |

BOEM022460

| | Y | N | | Y | N |
|---|---|---|---|---|---|
| • If Plan is an Init or Supp DOCD with subsea wells OR in greater than 400 meters (1312 feet) the operator must submit a copy of the plan to the Rate Control Section or if Revised DOCD includes Drilling Well & well not Drilled (moving location)<br>• Create a "Rate Control Section Info Copy – DOCDs" review and notify Holly Karrigan/review will not be completed | | | https://www.data.bsee.gov/Other/FileRequestSystem/ScanActiveLeases.aspx . Check this link Shows Mexico Transboundary line & Transboundary Three Statute Mile Line https://www.boem.gov/renewable-energy/mapping-and-data/official-protraction-diagrams-opds-and-leasing-maps-lms & see this document for info InfoAndLink OfficialProtractionDiagramsShowTransboundaryLine.docx<br>Some ex. of area/blocks on this checklist they are active at this time<br>AC blocks 890, 891, 900, 901, 902, 903, 904, 934, 935, 947<br>• On Receipt Notify Supervisor to ensure notification to Regional Director office for future submittal to Mexico government – prev. plans sent and the specific documents needed are Saved in G:\LE\Leasing and Plans\Plans Section\Mexico Transboundary Agreement Info | | |

## External Review Determination

Use this checklist to determine which external reviewers must receive a copy of the plan upon deemed submit:

| | Y | N | | Y | N |
|---|---|---|---|---|---|
| **State CZM – NOTE: all INITIAL PLANS Require CZM that Lease/area/block is within/the operator may submit additional CZM certs if Onshore base/Wastes in different state/Significant Sediment Resource Area (SSRAs)- Required to send to LA CZM and/or TX CZM**<br>• See CZM GOV Review Periods -- to determine if plan Type (Initial/Supp/Revised) needs to go to CZM<br>• See also Map for CZM Program<br>• See SSRA Blocks | | | **8 (g) area --**<br>• LA GOV review required<br>• See List of 8(g) Blocks | | X |
| **New multi-well platform(s) proposed (DOCD)– Note: Place X in TIMS on RECORD PLAN SUBMITTAL SCREEN for Multi-Well Platform? Marking that box ensures CZM is generated as a review**<br>• CZM is required for New Multi-Well Platforms<br>• Determine which state - Map for CZM Program<br>• Installing a platform with more than 1 well<br>• If the plan proposes making a Single Well Caisson a multi-well by adding well, confirm with operator that this is a multi-well. | X | | **Within 100- 200 km of Breton NWR --**<br>• FWS (Fish & Wildlife) Denver review potentially required<br>• 100KM and 200KM Breton Sound Map<br>• Blks 100KM and 200KM Breton Sound<br>• The Air Quality reviewer will determine whether FWS review is required and if it is req. after AQR review completed, ensure a Fish & Wildlife Class 1 AQ Review is generated by NEPA coordinator<br>• See Folder in PLANS SECTION folder called FWS for info/language when required to send to FWS (Denver)<br>• **If activities in 100-200 KM ALWAYS CHECK AQR review Question 9 to See if FWS is Required and Check if Large Source Determination Review was generated to see if FWS required at time of Deeming Plan Submitted** | | X |
| **Military Warning Area (MWA)-- Stip. #5- Protected Species**<br>**Check lease stips -** https://www.data.bsee.gov/Other/FileRequestSystem/ScanActiveLeases.aspx **& Operator must state compliance in Plan Leases in MWA**<br>• Notification is required for Leases in Eastern Planning Area /see CZM map (i.e. EWTA-1) (Eglin AFB) -<br>• If NAVY MWA review pops up in TIMS for MWA, can delete that review, ensuring operator addressed compliance with MWA<br>• See NTL No. 2014-G04 | | | **U.S. Air Force Communication Towers – NTL is no longer active (no notification required) –(Towers located on MO 990, MO 819, VK 116, CA 39) -plan coordinator ensures that operator activities are not within 500 ft. Tower Locations**<br>• See NTL No. 2009-G26<br>• Air Force Communication Towers Affected Blocks Document | | X |

**Appx-57**

BOEM022461

| | | | | | |
|---|---|---|---|---|---|
| • Military Warning Areas [APRIL 2014] or Military Warning Areas [APRIL 2014]<br>• Military Warning Area Map<br>• **If req. to be sent to EGLIN for Notification or Review see States And Eglin Emailing instructions** | | | | | |
| **Flower Garden Banks -** Flower Garden Blocks List<br>• **If New Activities then plan to be sent to Flower garden Banks for review G.P. Schmal**<br>• **NOTE: there are talks/Public Comment on increasing Flower Garden Blocks, check with Supv. if receive plan within 4 miles of Flower Garden Blocks** | X | | | | |
| **BOEM Public Website**<br>▪ All Initial and Supplemental plans<br>▪ Revised plans that are reviewed as an EA (not Ancillary Plans) | X | | **Regulations.gov**<br>▪ All plans that are reviewed as an EA<br>▪ See FDMS SOP | | X | |

## Plan Contents (30 CFR 550.211 & 241)

| Item<br>▪ While reading/reviewing the Submitted Plan, check and ensure info below is submitted.<br>▪ Place X in appropriate box.<br>▪ When referencing the NTL need to ensure submitting sufficient info for each item listed | Information acceptable? | | |
|---|---|---|---|
| | Yes | No | N/A |
| **All EPs and DOCDs** | | | |
| (a) **Plan Information Form (BOEM-0137)**<br>▪ Plan &<br>▪ Reference NTL 2008-G04 page 1<br>*NOTE: All plans that will utilize anchors/radius that will extend into MC 252 (Macando) notify & discuss with the Plans Supervisor.* | X | | |
| **For Supplemental and Revised EPs and DOCDs:** | | | |
| List and description of status of previously approved activities (e.g., Well A drilled 2009 and placed on production, Well B planned to drill in 2011, Well C cancelled, etc.)<br><br>*Note: If previous activities are not from the current operator they do not have to comment on them.* | X | | |
| Proposed schedule to conduct those activities approved but not yet accomplished | X | | |
| **All EPs and DOCDs** | | | |
| (b) Bathymetry map (at a scale of 1"=2000') showing surface location(s) for each proposed well and, for DOCDs, proposed or existing structure locations with anchors or anchor radius including anchors for drilling rigs, platforms and any associated construction barges.<br>▪ Plan &<br>▪ Reference NTL 2008-G04 page 1 | X | | |
| (d) Table of tanks/production vessels more than 25 barrels capacity<br>▪ Plan &<br>▪ Reference NTL 2008-G04 page 2 | X | | |
| (e) Service Fees- $4,348/Surface Location for EPs, $5,017 (Surface of Wells & if wells Surface are within 500 ft. Of each other than pay for only 1 /Per well for DOCDs) (Service Fees were increased effective 11/01/2023)<br>▪ Plan &<br>▪ Reference 30 CFR 550.125<br>▪ Reference **Fees for Services** for correct $ & no. of wells<br>▪ **ALSO CHECK Paygov Transactions [Record Plan Submittal – navigate Paygov Transactions – Enter numbers after 2 on receipt to see if settled/success** | X | | |
| (c) Description of the important safety and pollution prevention features for drilling unit | X | | |
| **BOP Info**<br>▪ Reference NTL2015-N01 &<br>▪ December 13, 2010 Guidance | | | |
| Subsea BOP<br>▪ If well in more than 500 ft and not from a Surface location prev. cleared for future Platform then assume it will be a Subsea BOP | X | | |
| Surface BOP on floating facility | X | | |
| **For DOCDs** | | | |
| (c) Description of production equipment and lease –term pipelines to be installed including safety and pollution-prevention features<br>▪ Plan &<br>▪ Reference NTL 2008-G04 page 2 | X | | |
| Description of Platform/Caisson/Subsea wellhead/manifold including whether it's new or existing, diagram of structure should be included | X | | |

### Appx-58

BOEM022462

| | Yes | No | N/A |
|---|---|---|---|
| ▪ Plan & <br> ▪ Reference NTL 2008-G04 <br><br> *Note: Check slot count in TIMS platforms approved by former structures and send email to company if slot count not adequate to resolve issue with OSTS.  This is not an RFI.* | | | |
| Description of installation method for platform/caisson/subsea wellhead/manifold with Anchor radius, for any construction or derrick barges to use for installation <br> ▪ Plan & <br> ▪ Reference NTL 2008-G04 | X | | |
| **For EPs and DOCDs requiring FL CZM** | | | |
| (e) Measures to prevent discharge of oils and greases during rainfall and routine operations <br> ▪ Plan & <br> ▪ Reference NTL 2008-G04 page 2 | | | X |
| **ALL PLANS Drilling Installing Subsea BOP (NTL2015-N01 & December 13, 2010 Guidance)** <br> **For EPs or DOCDs that propose to conduct an activity that requires an Application for Permit to Drill (APD) and involves use of a subsea blowout preventer (BOP) or a surface BOP on a floating facility** <br> **For EPs and DOCDs requiring CZM** <br> **For EPs and DOCDs including activities in the Protective Zone(s) of the Flower Garden Banks and Stetson Bank  see:** <br> ▪ Flower Garden Blocks List <br> **For plans (installing new facility in 1,312 ft. water depth or installing new facility in shallow water depth that supports subsea wells in 1,312 ft.).** | | | |
| (f) Additional safety, pollution prevention, and early spill detection measures beyond those required by 30 CFR 250 <br> ▪ Plan & <br> ▪ Reference NTL 2008-G04 page 2 | X | | |

## General Information (30 CFR 550.213 & 243)

| Item <br> ▪ While reading/reviewing the Submitted Plan, check and ensure info below is submitted. <br> ▪ Place X in appropriate box. <br> ▪ When referencing the NTL need to ensure submitting sufficient info for each item listed | Information acceptable? | | |
|---|---|---|---|
| | Yes | No | N/A |
| **All EPs and DOCDs** | | | |
| (a) Table of individual or site-specific applications and permits  from other Federal agencies, state and local agencies <br> ▪ Plan & <br> ▪ Reference NTL 2008-G04 page 2 | X | | |
| (e) Discussion/Statement regarding any New or Unusual Technology <br> ▪ Plan & <br> ▪ Reference NTL 2008-G04 page 4 <br><br> *Note: If "yes" (for all CZMs) a non-proprietary version required in Public plan.  Also ensure when email OE of plan inform there is new technology* ==(CZM IN PUBLIC PLAN)== | X | | |
| (f) Bonding statement  **- NOTE: if Operator/Designated Operator submitting plan does not have AREAWIDE AEXP/EP or ADEV/DOCD or $200,000 for EP or $500,000 then check the Lessee/Owner to ensure they do; if No Lessee/Owner, then Check to see if operator/designated operator has LEXP/LDEV/SUPP Lease Specific** <br> ▪ Plan & <br> ▪ Reference NTL 2008-G04 page 5 | X | | |
| (g) OSFR statement <br> ▪ Plan & <br> ▪ Reference NTL 2008-G04 page 5 | X | | |
| (h) Deepwater well control statement <br> ▪ Plan & <br> ▪ Reference NTL 2008-G04 page 5 | X | | |
| (i) Suspensions of production **(For DOCDs Only)** <br> ▪ Plan & <br> ▪ Reference NTL 2008-G04 page 6 | X | | |
| **For EPs and DOCDs requiring CZM** <br> **For EPs and DOCDs including activities in the Protective Zone(s) of the Flower Garden Banks and Stetson Bank see:** <br> ▪ Flower Garden Blocks List <br> **For plans (installing new facility in 1,312 ft. water depth or installing new facility in shallow waterdepth that supports subsea wells in 1,312 ft.)** <br> **For EPs or DOCDs that propose to conduct an activity that requires an Application for Permit to Drill (APD) and involves use of a subsea blowout preventer (BOP) or a surface BOP on a floating facility** <br> NTL2015-N01 & December 13, 2010 Guidance | | | |

**Appx-59**

BOEM022463

| | | | |
|---|---|---|---|
| **NOTE: Operator can Submit Wastes/Discharge Tables water-quality-spreadsheets** | | | |
| (b) Drilling Fluids<br>■ Plan &<br>■ Reference NTL 2008-G04 page 3 | | | |
|     Type of fluid | X | | |
|     Estimated volume to be used per well | X | | |
| **For oil-based fluids**<br>■ *Plan &*<br>■ *Reference NTL 2008-G04* | | | |
|     Product name | | | X |
|     Amount to be used | | | X |
|     Reference Number | | | X |
|     MSDS or equivalent info | | | X |
| **For DOCDs Only -** | | | |
| (c) Average and peak production rates and life of reserves **(PROPRIETARY)**<br>■ Plan &<br>■ Reference NTL 2008-G04 page 3<br><br>*Note: For each well, peak production should not be > WCD uncontrolled blowout; For multiple wells, peak production/number of wells should not be > WCD uncontrolled blowout.* | X | | |
| **For EPs and DOCDs requiring FL CZM**<br>**For EPs and DOCDs including activities in the Protective Zone(s) of the Flower Garden Banks and Stetson Bank see:**<br>■ Flower Garden Blocks List<br>**For DOCDs installing a surface facility located in water depths greater than 400 meters (1,312 feet), or a surface facility in any water depth that supports a subsea development in water depths greater than 400 meters (1,312 feet).** | | | |
| (d) Oils Characteristics **(For DOCDs Only)** | | | |
|     Characteristic | X | | |
|     Analytical methodologies | X | | |
|     Oil identification | X | | |
| **For EPs and DOCDs requiring CZM**<br>**For EPs and DOCDs including activities in the Protective Zone(s) of the Flower Garden Banks and Stetson Bank see:**<br>■ Flower Garden Blocks List<br>**For DOCDs (installing new facility in 1,312 ft. water depth or installing new facility in shallow waterdepth that supports subsea wells in 1,312 ft.)**<br>**For EPs or DOCDs that propose to conduct an activity that requires an Application for Permit to Drill (APD) and involves use of a subsea blowout preventer (BOP) or a surface BOP on a floating facility** | | | |
| (j) Blowout Scenario<br>■ PART of NTL2015-N01 &<br>■ December 13, 2010 Guidance<br>■ Reference NTL 2008-G04  - FOR DOCDs just Production Operator does need to submit discussion of production Blowout if CZM is required for Plan | | | |
|     Estimated flow rate (barrels per day) | X | | |
|     Maximum duration of blowout  (days) | X | | |
|     Total Volume  (barrels)(flow rate X duration) | X | | |
|     Discussion of potential for well to bridge over | X | | |
|     Discussion of likelihood for surface intervention to stop blowout | X | | |
| **Relief Well**<br>**Need below items for all Initial/Supplemental Drilling even if WCD verified. Also for Revised plans that requires WCD (if crossing lease line see NTL 2015-N01 Facts)**<br>Note: This should be for entire J section  --  including above Blowout Scenario --  if WCD prev. verified then the Blowout info will be the WCD well from prev. verified plan | | | |
|     Identified rig type capable of drilling relief well in the water depth at SL and to the TD of the original well (Should specify at least one rig by name and location if APD is submitted) | X | | |
|     Rig package constraints (if none, a statement to that effect) | X | | |
|     Estimated time to drill relief well, including: | | | |
|         Time to acquire a rig  (days) | X | | |
|         Time to move rig onsite (days) | X | | |
|         Drilling time (days) | X | | |
|     Statement whether the possibility of using a nearby platform was considered, if feasible | X | | |
| **Other** | | | |
|     Measures to enhance ability to prevent a blowout | X | | |
|     Measures to reduce the likelihood of a blowout | X | | |
|     Measures to enhance ability to conduct effective and early intervention in the event of a blowout | X | | |

**Appx-60**

BOEM022464

| | | | |
|---|---|---|---|
| Arrangements for drilling relief wells | X | | |
| Any other measures | X | | |

In addition to the additional measures listed above, bp has adopted the following performance standards:

1. bp will use and will require its contractors involved in drilling operations to use, subsea blowout preventers (BOPs) equipped with no fewer than two blind shear rams and a casing shear ram on all drilling rigs under contract to BP for deepwater service operating in dynamic position mode.

With respect to moored drilling rigs under contract to bp for deepwater drilling service using subsea BOPs, the subsea BOP will be equipped with two shear rams, which will include at least one blind shear ram and either an additional blind shear ram or a casing shear ram. The 20K BOP MODU used for completion operations has 2 blind shear rams.

2. Each time a subsea BOP from a moored or dynamically positioned drilling rig is brought to the surface and testing and maintenance on the BOP are conducted, bp will require that a third party verify that the testing and maintenance of the BOP were performed in accordance with manufacturer recommendations and API Std 53.

### Geological and Geophysical Information (30 CFR 550.214 & 244)

| Item<br>▪ While reading/reviewing the Submitted Plan, check and ensure info below is submitted.<br>▪ Place X in appropriate box.<br>▪ When referencing the NTL need to ensure submitting sufficient info for each item listed | Information Acceptable? | | |
|---|---|---|---|
| | Yes | No | N/A |
| (a) Discussion of geological objective(s) including a brief description of the hydrocarbon trapping elements (Not required if well(s) already drilled)**(PROPRIETARY)** | X | | |
| (b) Structure Map(s) Showing SL and BHL of Each Well and location of cross-sections (1"=2000')<br>▪ Reference Structural Map and Upper Miocene Structural Map<br>▪ When the New NTL gets approved: PAGES NOT FOUND<br>http://www.boem.gov/Regulations/Notices-To-Lessees/2013/Structure-Map-1.pdf and<br>http://www.boem.gov/Regulations/Notices-To-Lessees/2013/Structure-Map-2.pdf | X | | |
| (c) Seismic lines (2-D or 3-D)<br><br>*Note: Not required if MMS/BOEM prev. app. Surface location* | X | | |
| (d) Cross Section(s) with well location(s) and depth(s)<br>▪ Reference Structural Cross Section<br>▪ After new NTL http://www.boem.gov/Regulations/Notices-To-Lessees/2013/Cross-section.pdf PAGE NOT FOUND | X | | |
| (e) Shallow Hazards Report<br>▪ Survey info from top of Checklist<br>▪ Reference NTL 2008-G05 | X | | |
| (f) Site-Specific Shallow Hazards Assessment<br>▪ Reference NTL 2008-G05<br><br>*Note: If CZM consistency is required, a non-proprietary version is needed for Public Plan* | X | | |
| (g) High-Resolution Seismic lines submitted **(200 meter or >656 feet)**<br><br>*Note: If submit this then do not need below info* | X | | |
| If 3-D is substituted for High-Res, then need following: | | | |
| Seafloor rendering or shaded relief map for the proposed well or platform site | X | | |
| Power spectrum diagram | X | | |
| Top hole prognosis | X | | |
| Sampling rate | X | | |
| Acquisition parameters (e.g, cable, source depth) | X | | |
| Year the survey was run | X | | |
| Type of processing used | X | | |
| (h) Stratigraphic column **(For *EPs* Only)**<br>▪ Reference Sample | | | X |
| (i) Time vs. Depth tables for areas with no well control | X | | |

### H₂S Information (30 CFR 550.215 & 245) (REQUIRED IF DRILLING)

# Appx-61

BOEM022465

| Item<br>• While reading/reviewing the Submitted Plan, check and ensure info below is submitted.<br>• Place X in appropriate box.<br>• When referencing the NTL need to ensure submitting sufficient info for each item listed<br>• Plan &<br>• NTL 2008-G04 page 9 &<br>• possibly additional info from NTL 2009-G31 | Information acceptable? | | |
|---|---|---|---|
| | Yes | No | N/A |
| (a) Estimated concentration | X | | |
| (b) H₂S classification request | | | |
| Correlative Wells List of wells which correlate to proposed well(s) | X | | |
| (c) Statement regarding submittal of H₂S Contingency Plan, if needed<br>• If req. H2S present or unknown | X | | |
| (d) Modeling report (for concentration >500 ppm) | X | | |

| H₂S classification | Absent | | Unknown | | Known | X |
|---|---|---|---|---|---|---|

## Mineral and Resource Conservation Information (DOCDs Only)(30 CFR 550.246)

| Item<br>• While reading/reviewing the Submitted Plan, check and ensure info below is submitted.<br>• Place X in appropriate box.<br>• When referencing the NTL need to ensure submitting sufficient info for each item listed<br>• Plan &<br>• Reference NTL 2008-G04 pages 9 & 10 | Information acceptable? | | |
|---|---|---|---|
| | Yes | No | N/A |
| (a) Technology and reservoir engineering practices and procedures | | | |
| Brief description of those used | X | | |
| Explanation of why enhance recovery practices not used | X | | |
| (b) Technology and recovery practices and procedures | X | | |
| (c) Reservoir Development | | | |
| Discussion of how reservoir will be developed and information plan is based on | X | | |

## Biological, Physical, and Socioeconomic Information (30 CFR 550.216 & 247)

| Item<br>• While reading/reviewing the Submitted Plan, check and ensure info below is submitted.<br>• Place X in appropriate box.<br>• When referencing the NTL need to ensure submitting sufficient info for each item listed<br>• All below info considered public – so info should be in both Prop & PUBLIC | Information acceptable? | | |
|---|---|---|---|
| | Yes | No | N/A |
| (a) Chemosynthetic Communities Review (Water Depth >400 meters or 1312 ft.)<br>• Plan &<br>• Reference NTL 2008-G04 page 10<br>• Reference NTL 2009-G40<br>MAPS AND ATTACHMENTS ARE IN ATTACHMENT H<br>*Note: The below chemo items must also be in Public Plan* | | | |
| Map(s) at 1"=1,000', over the entire area that could be disturbed by the proposed activities, within and outside the lease, oriented to true north, and depicting:<br>(1) Bathymetry,<br>(2) Seafloor and shallow geological features,<br>(3) Surface location of each proposed well and platform,<br>(4) Positions of anchors and chains or the maximum area that the anchors and chains may disturb, and<br>(5) Circle with a radius of 2,000 feet around each surface location | X | | |
| Analysis including Identification and discussion of seafloor and shallow geologic features that could be disturbed<br><br>*Note: This is usually assessment information and must be in the Public plan* | X | | |
| Summary statement for each Well/Platform location and associated anchor pattern<br>• Reference NTL 2009-G40 Attachment A | X | | |
| (b) Topographic Features Map<br>• Plan &<br>• Reference NTL 2008-G04 page 10 &<br>• Reference NTL 2009-G39<br>• List of Blocks Affected by the Topographic Features / Live Bottom (Pinnacle Trend) / Live Bottom (Low Relief) Stipulations<br>If any well\platform or associated anchors will fall within 1000' of the No-Activity Zone of a Topo Feature, a bathymetry map at 1"=1000' depicting the No-Activity Zone of the feature; the surface location of each well or platform; the position of any anchors and chains relative to each proposed S/L (maps of topo features to verify no-activity zone, etc.) | X | | |
| (c) *For EPs* | X | | |

BOEM022466

| | | | |
|---|---|---|---|
| if three or more wells are proposed to be drilled from the same surface location within the 3-mile Zone of a Topographic Feature, a statement that discharges will be shunted to within 10 meters of the seafloor | | | |
| (d) Live bottoms (Pinnacle Trend) Map<br>■ Plan &<br>■ Reference NTL 2008-G04 page 10 &<br>■ Reference NTL 2009-G39 &<br>■ List of Blocks Affected by the Topographic Features / Live Bottom (Pinnacle Trend) / Live Bottom (Low Relief) Stipulations<br>Features Information If any well\platform or associated anchors will fall within 200' of a Pinnacle Trend Feature with a vertical relief of more than 8 feet, a bathymetry map at 1"=1000' with 2-foot contours depicting the outline of the feature; the height of individual pinnacles; the surface location of each well or platform; the position of any anchors and chains relative to each proposed S/L | X | | |
| (e) Live Bottom (Low Relief) Map<br>■ Plan &<br>■ Reference NTL 2008-G04 page 10 &<br>■ Reference NTL 2009-G39 &<br>■ **Biologically Sensitive Areas (<300m) [DECEMBER 2012]** | X | | |
| (f) Potentially Sensitive Biological Features Map **(within 100 feet)**<br>■ Plan &<br>■ Reference NTL 2008-G04 page 10 &<br>■ Reference NTL 2009-G39 & | X | | |
| (h) Threatened and Endangered Species Information **(All N/S Plans)** – list from NMFS 2020 Biological Opinion - https://www.fisheries.noaa.gov/resource/document/biological-opinion-federally-regulated-oil-and-gas-program-activities-gulf-mexico<br>■ Plan &<br>■ Reference NTL 2008-G04 page 11 &<br>■ Reference NTL 2015-G03 | | | |
| Statement regarding the presence of threatened or endangered species in area | X | | |
| (i) Archaeological Report<br>■ Verify if Arch Block &<br>■ ensure Survey Report at top of Checklist has Arch Info &<br>■ Reference **Archaeological Resources Surveys and Reports** | X | | |
| **For EPs and DOCDs requiring FL CZM**<br>■ Plan &<br>■ Reference NTL 2008-G04 pages 11 & 12 | | | |
| (j) Air and water quality information | | | X |
| (k) Socioeconomic information | | | X |

## Waste and Discharge Information (30 CFR 550.217 & 248)

| Item<br>■ While reading/reviewing the Submitted Plan, check and ensure info below is submitted.<br>■ Place X in appropriate box.<br>■ If Wastes to be disposed Onshore, plan coordinator ensures CZM certs. Included or previously cleared CZM consistency in previous plans (use TIMS, QUERY PLAN SITES) for the Leases in submitted plan<br>■ When referencing the NTL need to ensure submitting sufficient info for each item listed<br>■ Reference NTL 2008-G04 pages 12 & 13<br>■ Reference **Waste Estimated to be Generated, Treated and/or Downhole Disposed or Discharged to the GOM**<br>■ Reference **Waste and Surplus Estimated to be Transported and/or Disposed of Onshore** | Information acceptable? | | |
|---|---|---|---|
| | Yes | No | N/A |
| **For EPs and DOCDs requiring CZM**<br>**For EPs and DOCDs including activities in the Protective Zone(s) of the Flower Garden Banks and Stetson Bank see:**<br>■ Flower Garden Blocks List<br>**For EPs and DOCDs proposing the use of a sulfur recovery unit**<br>**For DOCDs (installing new facility in 1,312 ft. water depth or installing new facility in shallow waterdepth that supports subsea wells in 1,312 ft.)**<br>**For EPs or DOCDs that propose to conduct an activity that requires an Application for Permit to Drill (APD) and involves use of a subsea blowout preventer (BOP) or a surface BOP on a floating facility** | | | |
| (a) List of solid and liquid wastes generated, including | | | |
| Type of Waste | X | | |
| Composition of waste | X | | |
| Projected Amount | X | | |
| Plans for Treating, storing, or downhole disposal of wastes | X | | |
| (b) For any wastes to be discharged overboard, list | | | |

# Appx-63

BOEM022467

| | | X | | |
|---|---|---|---|---|
| Type of Waste | | X | | |
| Total Amount to be Discharged | | X | | |
| Discharge rate | | X | | |
| Discharge method | | X | | |

## Air Emissions Information (30 CFR 550.218 & 249)

*Note:*
1. *To see distance to shore reference* *Platforms Nearest Distance to Shore*
2. *For air quality spreadsheets reference* *Air Quality Emissions Reporting Spreadsheets for EPs and DOCDs*
   *https://www.boem.gov/BOEM-0138/*
   *https://www.boem.gov/boem-0139*
3. *For Max rig emissions reference* *Maximum Emissions Estimates for Rig and Drillship Types*
4. *Large Source Determination statement in AQR review – OE will generate an Large Source Determination Review*

| Item<br>• While reading/reviewing the Submitted Plan, check and ensure info below is submitted.<br>• Place X in appropriate box.<br>• When referencing the NTL need to ensure submitting sufficient info for each item listed<br>• Reference NTL 2008-G04 pages 13 – 16<br><br>*BELOW Screening Questions are no longer required – since all plans must have AQR spreadsheets* | Information acceptable? | | |
|---|---|---|---|
| | Yes | No | N/A |
| (a) Screening Checklists | | | |
| **(EPs)** - Are the answers to the questions in the AQ Screening Checklist consistent with the information contained elsewhere in the plan?<br>a. Complex Total>=90%Exemption Level<br>b. Emissions reduction measures or modified emissions factors<br>c. Eastern Planning Area<br>d. H2S present<br>e. Flaring more than 48 hrs<br>f. Burning of liquid hydrocarbons | | | X |
| **(DOCDs)** - Are the answers to the questions in the AQ Screening Checklist consistent with the information contained elsewhere in the plan ?<br>a. Complex Total>=90%Exemption Level<br>b. Emissions reduction measures or modified emissions factors<br>c. Production from 8 or more wells processed on facility<br>d. H2S present<br>e. Flaring more than 48 hrs<br>f. Burning of liquid hydrocarbons<br>g. Distance to shore<25 miles<br>h. Within 200 km of Breton WA | X | | |
| (b) If worksheets not required, a summary table of emissions | X | | |
| (c) Spreadsheets (if required) and contact info | X | | |
| **For EPs spreadsheets**<br>• Reference **Emissions Calculations (FORM BOEM-0138)**<br>• **NEW Spreadsheets https://www.boem.gov/BOEM-0138/** | | | |
| Is the information contained in the spreadsheets (if required) correct and complete? | | | X |
| Drilling days & completion days in agreement with schedule in plan (if applicable) | | | X |
| Max HP for rig type used if specific rig not identified Click Here | | | X |
| If drilling lasts more than 1 year, yearly spreadsheets for each year | | | X |
| Number, type, and trips per week of support vessels (Must agree with schedule in plan) | | | X |
| **For DOCDs spreadsheets**<br>• Reference **Air Emissions Calculations (FORM BOEM-0139)**<br>• **NEW Spreadsheets https://www.boem.gov/boem-0139** | | | |
| Is the information contained in the spreadsheets (if required) correct and complete? | X | | |
| Drilling days & completion days in agreement with schedule in plan (if applicable) | X | | |
| Max HP for rig type used if specific rig not identified Click Here | X | | |
| Facility and/or pipeline installation days, if applicable (Must agree with schedule in plan) | X | | |
| Yearly spreadsheets for life of project (Check life of reserves in plan) | X | | |
| Number, type, and trips per week of support vessels (Must agree with schedule in plan) | X | | |
| **For EPs and DOCDs (FOR EVERY PLAN)** | | | |
| Contact Info, including name, phone number, and email address for person who prepared AQR | X | | |
| **As required** | | | |
| (d) Emissions reduction measures | X | | |
| Verification of non-default emission factors | X | | |
| Non-exempt activities | X | | |

**Appx-64**

BOEM022468

| | | | | |
|---|---|---|---|---|
| Modeling report | | X | | |

**Oil Spills Information (30 CFR 550.219 & 250)** - Operator submitting plan can either be company that has Regional OSRP or is an AFFILIATED company to another Operator that has OSRP (i.e. Chevron U.S.A. Inc. #00078 is covered/Affiliated company to Chevron Corporation #02335), they must state in their Oil Spill Section of EP/DOCD/DPP

*Note:*

1. *Plan cannot be deemed submitted unless there is an approved Reg. OSRP.  If wcd volume (Drilling or production) in plan higher than app. OSRP then Coordinator checks SOP in Plans Section/Plans SOPs/ WCDvolumeHigherThanOSRP to determine if an OSPD consultation is required; if it is then email Inform Plan Supv./Lead and they will complete OSRP Consultation (see Draft OSRD Consultation SOP – Attachment 1)*
2. *To ensure company has Approved Regional Oil Spill Response Plan (OSRP) and worst case scenarios (WCS), then check in TIMSWEB   https://timsweb.bsee.gov/*

| Item<br>▪ While reading/reviewing the Submitted Plan, check and ensure info below is submitted.<br>▪ Place X in appropriate box.<br>▪ When referencing the NTL need to ensure submitting sufficient info for each item listed<br>▪ Use Above OSRP INFO from TIMS<br>▪ Reference NTL 2008-G04<br>▪ Every N and S plan and for R Plans company should be covered by an approved OSRP<br>▪ TO FIND OSRP info must go to TIMSWEB  https://timsweb.bsee.gov/ | Information acceptable? | | |
|---|---|---|---|
| | Yes | No | N/A |
| (a) Oil spill response planning<br>▪ Need to have or be included in an Approved OSRP (Regional usually unless completing an Eastern GOM EP/DOCD)<br>▪ If in Eastern GOM then ensure that either a Sub-Regional OSRP or Reg. OSRP has a scenario to cover (FLORIDA) | | | |
| Statement that the activities proposed in EP or DOCD will be covered by regional or subregional OSRP including the approval date<br>▪ Reference NTL 2008-G04<br>▪ Should include Approval date or if NEW OSRP Operator then can have certification accepted date<br>▪ Should include the Company name and number of OSRP covering plan | X | | |
| Spill response sites | X | | |
| Name(s) of oil spill removal organization(s) for both equipment and personnel<br>**TO FIND OSRP info must go to TIMSWEB  https://timsweb.bsee.gov/** | X | | |
| Worst Case Discharge comparison table    - **TO FIND OSRP info must go to TIMSWEB https://timsweb.bsee.gov/**<br>-- Table should have appropriate Worst Case Category as EP/DOCD needs and then you ensure that the Spill Volume bbls/Distance to shore is more than what is the EP/DOCD specific info.  If it is not then *Coordinator checks SOP in Plans Section/Plans SOPs/ WCDvolumeHigherThanOSRP*<br>Ensure if WCD verification needs to be completed by RE first or in previous plan before emailing OSRD section/OSRP coordinator | X | | |
| Calculations and assumptions used to calculate WCD volume from a blowout, if applicable (drilling in Plan)<br>▪ Reference NTL2015-N01<br><br>*Note: If Plan WCD well prev. verified  - can reference that Plan* | | | |
| For plan | X | | |
| For OSRP<br><br>*Note: If Reg OSRP WCD previously verified you/coordinator can reference that Plan.  Operator not required to state which plan OSRP wcd verified in. Can be either verified or submitted (not a requirement that OSRP has to be verified).  Plans just had to have the calc/assump submitted prev. so that if RE or OSRD section wants to get verified* | X | | |
| Statement certifying ability to respond to WCD<br>▪ Reference NTL 2008-G04 | X | | |
| **For all N plans, S plans and R plans that are an EA** | | | |
| (b) Spill response discussion<br>▪ Reference NTL 2008-G04 | | | |
| Estimated time of spill response (from spill detection to equipment deployment on site) | X | | |
| Per 30 CFR 254.26 (d)(1), estimated time to contain, to the maximum extent practicable, a worst-case discharge | X | | |

## Appx-65

| For EPs and DOCDs requiring FL CZM<br>For EPs or DOCDs that propose to conduct an activity that requires an Application for Permit to Drill (APD) and involves use of a subsea blowout preventer (BOP) or a surface BOP on a floating facility<br>For DOCDs requiring a Grid EA | | | |
|---|---|---|---|
| (c) Modeling report, if available<br>▪ Reference NTL 2008-G04 | | | X |

### Environmental Monitoring Information (30 CFR 550.221 & 252) - MUST INCLUDE info from NMFS 2020 Biological Opinion
https://www.fisheries.noaa.gov/resource/document/biological-opinion-federally-regulated-oil-and-gas-program-activities-gulf-mexico
https://www.fisheries.noaa.gov/resource/document/appendices-biological-opinion-federally-regulated-oil-and-gas-program-gulf-mexico

*Note: All N & S Plans must respond to this item & R if SEA*

| Item<br>▪ While reading/reviewing the Submitted Plan, check and ensure info below is submitted.<br>▪ Place X in appropriate box.<br>▪ When referencing the NTL need to ensure submitting sufficient info for each item listed<br>▪ In this section can reference/discuss NTL 2012-Joint-G01, 2012-Joint-G02, 2012-BSEE-G01 | Information acceptable? | | |
|---|---|---|---|
| | Yes | No | N/A |
| (a) Description of any existing or planned environmental monitoring systems | X | | |
| (b) Statement regarding incidental takes of protected or endangered species or marine mammals | X | | |
| For EPs and DOCDs including activities in the Protective Zone(s) of the Flower Garden Banks and Stetson Bank see:<br>▪ Flower Garden Blocks List | | | |
| Discussion of provisions for monitoring impacts of an oil spill | X | | |
| Lease Stipulations Information (30 CFR 250.222 & 253)<br>▪ All N & S Plans & R if SEA | | | |
| **Verify that company has stated compliance with lease stipulations**<br><br>**perform the following to verify**<br><br>**Click on Link (Public Information Query for Active-Inactive Leases scanned)   - BOEM website/Statistics And Facts/Gulf of Mexico Data Center/Leasing/Scanned Documents Active-Inactive-Leases..:**<br>**https://www.data.bsee.gov/Other/FileRequestSystem/ScanActiveLeases.aspx**<br>Then check Lease No. box and Type in Lease No.<br>Find the DOC Type   -- is LEASE<br>Click on Download links for that item<br>It give you lease info and while scrolling through it you will see<br>Which stipulations are applicable to that lease no. **(i.e. #8 PROTECTED SPECIES APPLICABLE, Military Warning Area, Topo, Mexico Transboundary…)**<br><br>For Stipulation # 9 for central – Do a pipeline review when the plan is received, as well as when drafting an approval, is probably not a bad idea to ensure no activities are proposed within the area of the anchors, except as noted in the stipulation. | X | | |
| Discussion of Compliance with Any Operational Lease | X | | |

### Environmental Mitigation Measures Information (30 CFR 550.213 & 243) – MUST Include info addressing NMFS 2020 Biological Opinion
https://www.fisheries.noaa.gov/resource/document/biological-opinion-federally-regulated-oil-and-gas-program-activities-gulf-mexico
https://www.fisheries.noaa.gov/resource/document/appendices-biological-opinion-federally-regulated-oil-and-gas-program-gulf-mexico

| Item<br>▪ While reading/reviewing the Submitted Plan, check and ensure info below is submitted.<br>▪ Place X in appropriate box.<br>▪ When referencing the NTL need to ensure submitting sufficient info for each item listed | Information acceptable? | | |
|---|---|---|---|
| | Yes | No | N/A |

## Appx-66

BOEM022470

| (a) Description of measures to avoid, minimize, and mitigate environmental impacts (For EPs and DOCDs requiring FL CZM only) | X | | |
|---|---|---|---|
| (b) Description of measures to avoid or minimize incidental takes of t &e species/marine mammals<br>▪ All N and S plans must respond to this item & R if SEA<br>▪ In this section can reference/discuss NTL 2012-Joint-G01, 2012-Joint-G02, 2012-BSEE-G01 | X | | |

## Related Facilities and Operations Information (DOCDs Only) (30 CFR 550.256)

| Item<br>▪ While reading/reviewing the Submitted Plan, check and ensure info below is submitted.<br>▪ Place X in appropriate box.<br>▪ When referencing the NTL need to ensure submitting sufficient info for each item listed<br>▪ Reference NTL 2008-G04 | Information acceptable? | | |
|---|---|---|---|
| | Yes | No | N/A |
| (a) Related OCS facilities and operations<br>▪ All N or S **DOCD** plans w/Structures & pipelines must respond to this item<br><br>*Note: If it is not a New structure  Not required -- but Plan coordinator should ensure that the plan activity is/is not adding a well to an Existing structure - because if the company is, then need to have Existing Platform OSTS notification (notification to BSEE OSTS on Approval)* | | | |
| Proposed or existing facilities identified – Platforms, pipelines, etc., identified by name or number, location | X | | |
| Proposed (new) pipelines – Size, length, route, product, max flow rate, and shut-in time | X | | |
| (b) Transportation system<br>▪ All N or S **DOCD** plans w/Structures & pipelines must respond to this item and if R plan is EA or revision for mode of transportation change | | | |
| Discussion of how production will be transported to shore | X | | |
| Description and location of Primary onshore terminal | X | | |
| (c) Produced liquid hydrocarbons transportation vessels (Anything other than a pipeline) | X | | |
| Type | X | | |
| Maximum fuel tank storage capacity | X | | |
| Avg. vol. to be loaded per transfer | X | | |
| Trip frequency or duration | X | | |

## Support Vessels and Aircraft Information (30 CFR 550.224 & 257)

| Item<br>▪ While reading/reviewing the Submitted Plan, check and ensure info below is submitted.<br>▪ Place X in appropriate box.<br>▪ When referencing the NTL need to ensure submitting sufficient info for each item listed<br>▪ Reference NTL 2008-G04<br>▪ All N & S & R w/SEA - plans must respond to these items<br><br>*Note: Items b, c and d below –can use the links below:*<br>▪ *Waste Estimated to be Generated Treated and or Downhole Disposed or Discharged to the GOM* &<br>▪ *Waste and Surplus Estimated to be Transported and or Disposed of Onshore* | Information acceptable? | | |
|---|---|---|---|
| | Yes | No | N/A |
| (a) General | | | |
| Type of Vessel | X | | |
| Maximum Fuel Tank Storage Capacity | X | | |
| Maximum Number of Vessels in Area at Any Time | X | | |
| Trip Frequency or duration | X | | |
| (e) Vicinity Map with Transportation Routes Shown and Distance to shore in miles  - **Must address if within or will travel thru Bryde's Whale Area -**<br>▪ **should be consistent also on plan info form &**<br>▪ **aqr sheets**<br>▪ **Reference Platforms Nearest Distance To Shore** | X | | |
| **For EPs and DOCDs requiring CZM**<br>**For EPs and DOCDs including activities in the Protective Zone(s) of the Flower Garden Banks and Stetson Bank see:**<br>▪ Flower Garden Blocks List<br>**For DOCDs requiring(installing new facility in 1,312 ft. water depth or installing new facility in shallow waterdepth that supports subsea wells in 1,312 ft.)**<br>**For EPs or DOCDs that propose to conduct an activity that requires an Application for Permit to Drill (APD) and involves use of a subsea blowout preventer (BOP) or a surface BOP on a floating facility** | | | |
| (b) Diesel oil supply vessels | | | |
| Size | X | | |
| Capacity | X | | |
| Frequency of transfers | X | | |
| Route | X | | |
| **For EPs and DOCDs requiring FL CZM** | | | |

## Appx-67

BOEM022471

| (c) Drilling fluids transportation | | | |
|---|---|---|---|
|     Type of material | | | **X** |
|     Quantity being transported | | | **X** |
|     Transportation method | | | **X** |
| **For EPs and DOCDs requiring CZM**<br>**For EPs and DOCDs including activities in the Protective Zone(s) of the Flower Garden Banks and Stetson Bank see:**<br>▪ Flower Garden Blocks List<br>**For EPs and DOCDs proposing new or unusual technology that changes the nature or magnitude of the waste stream on the facility**<br>**For EPs or DOCDs that propose to conduct an activity that requires an Application for Permit to Drill (APD) and involves use of a subsea blowout preventer (BOP) or a surface BOP on a floating facility**<br>**For EPs or DOCDs including the use of a sulphur recovery unit** | | | |
| (d) Solid and liquid wastes transportation | | | |
|     Type of waste/approx. composition | X | | |
|     Total amount | X | | |
|     Name/location of disposal facility | X | | |
|     Rate of disposal | X | | |
|     Transport method | X | | |

## Onshore Support Facilities Information (30 CFR 550.225 & 258)

| Item<br>▪ While reading/reviewing the Submitted Plan, check and ensure info below is submitted.<br>▪ Place X in appropriate box.<br>▪ When referencing the NTL need to ensure submitting sufficient info for each item listed<br>▪ Reference NTL 2008-G04<br>▪ All N or S plans must respond to this item &<br>▪ Revised plans if changing base from one state to another<br>▪ Reference NTL-2009-G27 | Information acceptable? | | |
|---|---|---|---|
| | Yes | No | N/A |
| (a) General | | | |
|     Name of facility | X | | |
|     Location | X | | |
|     Whether the facility is new, existing, or will be modified | X | | |
| (b) If new or modified, a description of the work to be done | X | | |
| (d) Waste Disposal facilities<br>▪ All N or S & R (SEA) plans<br>**Also see links in Support Vessels for wastes discharged & transported -- *can use the links below:***<br>▪ *Waste Estimated to be Generated Treated and or Downhole Disposed or Discharged to the GOM* &<br>▪ *Waste and Surplus Estimated to be Transported and or Disposed of Onshore* | | | |
|     Name/location of facility<br><br>*Note: If not in same State as ONSHORE Base then will need CZM Certification to the State (but check if a previous plan with same Lease#s may have covered the different state)* | X | | |
|     Type of waste | X | | |
|     Amount | X | | |
|     Rate | X | | |
|     Disposal method<br><br>*Note:  Disposal IS NOT A METHOD but operators frequently enter "Disposal" as a method* | X | | |
| **For EPs or DOCDs requiring FL CZM, a description of any dredging or filling in Florida** | | | |
| **For EPs and DOCDs requiring FL CZM**<br>**For DOCDs(installing new facility in 1,312 ft. waterdepth or installing new facility in shallow waterdepth that supports subsea wells in 1,312 ft.)**<br>**For EPs or DOCDs that propose to conduct an activity that requires an Application for Permit to Drill (APD) and involves use of a subsea blowout preventer (BOP) or a surface BOP on a floating facility** | | | |
| (c) Support base construction or expansion timetable | | | X |

## CZM Information(30 CFR 550.213 & 243)

| Item<br>▪ While reading/reviewing the Submitted Plan, check and ensure info below is submitted.<br>▪ Place X in appropriate box.<br>▪ When referencing the NTL need to ensure submitting sufficient info for each item listed.<br>▪ Reference NTL 2008-G04<br>▪ Need to submit certification sheet for each State affected if plan is  an Initial (N) plan and if plan is for New Multi-Well structure in Supplemental (S) plans & Revised R (SEA) | Information acceptable? | | |
|---|---|---|---|
| | Yes | No | N/A |

**Appx-68**

BOEM022472

| | Yes | No | N/A |
|---|---|---|---|
| • Also see **CZMGOV Review Periods**<br>• Reference **OCS Plan Map for Coastal Zone Management Program**<br>• SEE emailing Instructions **States And Eglin Emailing Instructions**<br>• If FLORIDA CZM required see **States And Eglin Emailing Instructions** and **FED EX info** | | | |
| **For EPs and DOCDs requiring CZM** | | | |
| (a) Consistency certification | | | |
| Texas CZM certificate<br>• All N plans and S plans for New Multi-Well Structure or in SSRA Block & if R plan is EA | X | | |
| Louisiana CZM certificate<br>• All N plans and S plans for New Multi-Well Structure or in SSRA Block & if R plan is EA | X | | |
| Mississippi CZM certificate<br>• All N plans and S plans for New Multi-Well Structure & if R plan is EA | | | X |
| Alabama CZM certificate<br>• All N plans and S plans & if R plan is EA; and they receive info copy for Revised plan<br>*Note: If in Revised Plan the change is significant OE will advise q(2) determination* | X | | |
| Florida CZM certificate<br>• All N plans and S plans & if R Plan is EA; and they receive info copy for Revised plan<br>*Note: If in Revised Plan the change is significant OE will advise q(2) determination* | | | X |
| (b) Evaluation, including a set of findings relating the coastal effects from proposed activities to particular relevant enforceable policies from each affected state's CZM program (TX, MS, AL, FL)<br>• Must submit info on each of the enforceable policies in the link below as pertains to states required for each plan COASTAL ZONE MANAGEMENT PROGRAM POLICIES for the Gulf of Mexico States Applicable to Outer Continental Shelf (OCS) Plan Filings | X | | |
| **For EPs or DOCDs requiring FL CZM, a cross-reference to any information specifically identified in FL CZM program that is provided in other sections of the EP or DOCD.** (Example Florida Cross Reference) | | | X |
| Statement that relevant enforceable policies were considered in certifying consistency (LA)<br>Company does not need to submit LA enforceable policies if they make statement on Certification sheet that they will comply with enforceable policies | X | | |
| Public Information Copy includes all information except Proprietary info provided for Appendices A, B and C | X | | |

*Note: If CZMA is required for Alabama, Mississippi, Texas, & Florida here is a Checklist.*
*For Louisiana as long as company states will comply with enforceable policies then no LCZM checklist required.*

**Alabama Enforceable Policies (Appendix I)**

| Items | Information Included? | | |
|---|---|---|---|
| | Yes | No | N/A |
| **A. Coastal Resource Use Policies** | X | | |
| **1. Coastal Development** | X | | |
| **2. Mineral Resource Exploration and Extraction** | X | | |
| **3. Commercial Fishing** | X | | |
| **4. Hazard Management** | X | | |
| **5. Shoreline Erosion** | X | | |
| **6. Recreation** | X | | |
| **7. Transportation** | X | | |
| **A. Natural Resource Protection Policies** | X | | |
| **1. Biological Productivity** | X | | |
| **2. Water Quality** | X | | |
| **3. Water Resources** | X | | |
| **4. Air Quality** | X | | |
| **5. Wetlands and Submerged Grassbeds** | X | | |
| **6. Beach and Dune Protection** | X | | |
| **7. Wildlife Habitat Protection** | X | | |
| **8. Endangered Species** | X | | |
| **9. Cultural Resources Protection** | X | | |

**AUXILIARY CHECKLIST FOR PLANS REQUIRING TEXAS CZM CONSISTENCY**
**EP's and DOCD's**
**Texas Enforceable Policies (Appendix I)**

| Items | Information Included? | | |
|---|---|---|---|
| | Yes | No | N/A |
| CATEGORY 2 Construction, Operation and Maintenance of Oil and Gas Exploration and Production Facilities | X | | |
| CATEGORY 3 Discharges of Wastewater and Disposal of Waste from Oil and Gas | X | | |

**Appx-69**

| | | | |
|---|---|---|---|
| Exploration and Production Activities | | | |
| CATEGORY 4 Construction and Operation of Solid Waste Treatment, Storage, and Disposal Facilities | X | | |
| CATEGORY 5 Prevention, Response, and Remediation of Oil Spills | X | | |
| CATEGORY 6 Discharge of Municipal and Industrial Waste Water to Coastal Waters | X | | |
| CATEGORY 8 Development in Critical Areas | X | | |
| CATEGORY 9 Construction of Waterfront Facilities and Other Structures on Submerged lands | X | | |
| CATEGORY 10 Dredging and Dredged Material Disposal and Placement | X | | |
| CATEGORY 11 Construction in the Beach / Dune System | X | | |
| CATEGORY 15 Alteration of Coastal Historic Areas | X | | |
| CATEGORY 16 Transportation | X | | |
| CATEGORY 17 Emission of Air Pollutants | X | | |
| CATEGORY 18 Appropriations of Water | X | | |
| CATEGORY 20 Major Actions | X | | |
| CATEGORY 22 Administrative Policies | X | | |

## Environmental Impact Analysis (30 CFR 550.227 & 261)

| Item<br>• While reading/reviewing the Submitted Plan, check and ensure info below is submitted.<br>• Place X in appropriate box.<br>• When referencing the NTL need to ensure submitting sufficient info for each item listed<br>• To be submitted for all N & S & Revised R w/SEA<br>• Reference NTL 2008-G04<br>• Reference Environmental Impact Analysis Worksheet<br>  • Oper. should also include info to address NMFS 2020 Biological Opinion - https://www.fisheries.noaa.gov/resource/document/biological-opinion-federally-regulated-oil-and-gas-program-activities-gulf-mexico & https://www.fisheries.noaa.gov/resource/document/appendices-biological-opinion-federally-regulated-oil-and-gas-program-gulf-mexico | Information acceptable? | | |
|---|---|---|---|
| | Yes | No | N/A |
| (a) List of IPF's (worksheet preferred but not mandatory) | X | | |
| (b) List of environmental resources that could be affected by IPF's (worksheet preferred but not mandatory) | X | | |
| (c) Analysis of impacts of IPF's on each Environmental Resource which you identify as being impacted by that IPF | X | | |
| (d) Potential Impacts on your activities from environmental conditions | X | | |
| (e) Alternatives considered to reduce environmental impacts **(DOCDs only)** | X | | |
| (f) Self-imposed mitigation measures | X | | |
| (g) List of agencies, persons consulted | X | | |
| (h) List of preparers | X | | |
| (i) References | X | | |

## Administrative Information (30 CFR 550.228 & 262)

| Item<br>• While reading/reviewing the Submitted Plan, check and ensure info below is submitted.<br>• Place X in appropriate box.<br>• When referencing the NTL need to ensure submitting sufficient info for each item listed<br>• To be submitted for all N & S plans & if R plan is EA<br>• Reference NTL 2008-G04 | Information acceptable? | | |
|---|---|---|---|
| | Yes | No | N/A |
| (a) General description in PI copy of subject matter held proprietary | X | | |
| (b) Bibliography for any material referenced by EP or DOCD (e.g. previous plans) | X | | |

## Appx-70

BOEM022474

UNITED STATES DEPARTMENT OF THE INTERIOR
BUREAU OF OCEAN ENERGY MANAGEMENT
GULF OF AMERICA OCS REGION
NEW ORLEANS, LOUISIANA

SITE-SPECIFIC ENVIRONMENTAL ASSESSMENT

OF

DEVELOPMENT OPERATIONS COORDINATION DOCUMENT
NO. N-10256

FOR

BP EXPLORATION & PRODUCTION INC.

MARCH 13, 2026

## RELATED ENVIRONMENTAL DOCUMENTS

*Biological Opinion Oil and Gas Leasing, Exploration, Development, Production, Decommissioning, and All Related Activities in the Gulf of Mexico Outer Continental Shelf*
(FWS, April 20, 2018)

*Gulf of Mexico Catastrophic Spill Event Analysis: High-Volume, Extended-Duration Oil Spill Resulting from Loss of Well Control on the Gulf of Mexico Outer Continental Shelf; 2nd Revision*
(OCS Report BOEM 2021-007)

*Biological Environmental Background Report for the Gulf of Mexico OCS Region*
(OCS Report BOEM 2021-015)

*Programmatic Description of the Potential Effects from Gulf of Mexico OCS Oil- and Gas-Related Activities: A Supporting Information Document* (OCS Report BOEM 2023-053)

*Biological and Conference Opinion on Bureau of Ocean Energy Management and Bureau of Safety and Environmental Enforcement's Oil and Gas Program Activities in the Gulf of America*
(NMFS, May 20, 2025)

*Gulf of America Regional OCS Oil and Gas Lease Sales and Post-Lease Activities: Final Programmatic Environmental Impact Statement*
(OCS EIS/EA BOEM 2025-042)

**Appx-71**

**FINDING OF NO SIGNIFICANT IMPACT (FONSI)**

The Bureau of Ocean Energy Management (BOEM) has prepared a Site-Specific Environmental Assessment (SEA) (No. N-10256) complying with the National Environmental Policy Act (NEPA) at 42 United States Code (U.S.C.) §§ 4321 et seq. The United States Department of the Interior (DOI) NEPA implementing regulations at 43 Code of Federal Regulations (CFR) Part 46 (dated February 24, 2026; 91 FR 8738), the DOI NEPA Handbook and BOEM policy require an evaluation of proposed major Federal actions, which under BOEM jurisdiction includes approving a plan for oil and gas exploration or development activity on the Outer Continental Shelf (OCS).

Secretarial Order 3423 directed the renaming of the Gulf of Mexico to the Gulf of America (GOA). As a result, BOEM updated new and existing content, while legacy content such as previously published reports, studies, and NEPA documents remain unchanged.

Impacts caused by similar actions to that proposed were examined at a basin-wide scale in the GOA in the following NEPA and relevant documents:

- *Biological Opinion Oil and Gas Leasing, Exploration, Development, Production, Decommissioning, and All Related Activities in the Gulf of Mexico Outer Continental Shelf (FWS 2018 BiOp) (Issued by United States Fish and Wildlife Service [FWS] on April 20, 2018)*

- *Gulf of Mexico Catastrophic Spill Event Analysis: High-Volume, Extended-Duration Oil Spill Resulting from Loss of Well Control on the Gulf of Mexico Outer Continental Shelf; 2nd Revision (Gulf of Mexico Catastrophic Spill Event Analysis) (OCS Report BOEM 2021-007)*

- *Biological Environmental Background Report for the Gulf of Mexico OCS Region (BEBR) (OCS Report BOEM 2021-015)*

- *Programmatic Description of the Potential Effects from Gulf of Mexico OCS Oil- and Gas-Related Activities: A Supporting Information Document (Oil and Gas SID)(OCS Report BOEM 2023-053)*

- *Biological and Conference Opinion on Bureau of Ocean Energy Management and Bureau of Safety and Environmental Enforcement's Oil and Gas Program Activities in the Gulf of America* (NMFS 2025 BiOp) (Issued by National Marine Fisheries Service [NMFS] on May 20, 2025)

- *Gulf of America Regional OCS Oil and Gas Lease Sales and Post-Lease Activities: Final Programmatic Environmental Impact Statement* (2025 GOA PEIS) (OCS EIS/EA BOEM 2025-042)

**Proposed Activities**: BP Exploration & Production Inc.'s (BP) Initial Development Operations Coordination Document (DOCD) for drilling operations on the

BOEM022493

OCS proposes to drill, complete and produce six wells with four associated back up locations (Proposed Action). Wells DC1-A, DC1-B, DC1-C, DC2-A, DC2-B, DC2-C, and backup wells DC1-D, DC1-E, DC2-D and DC2-E are located in Keathley Canyon (KC) Block 292, Lease Number OCS-G 25792 in the Central Planning Area (CPA) of the GOA OCS. In addition, a Floating Production Unit (FPU) will be installed in KC Block 293 with 12 mooring lines located in KC Blocks 292, 293, 336, and 337. The Proposed Action is located southwest of Port Fourchon, Louisiana, approximately 190 miles (mi) (306 kilometers [km]) from the nearest shoreline in Terrebonne Parish, Louisiana. The water depth of the project area ranges from 5,561 – 6,085 feet (ft) (1,695 – 1,855 meters [m]). BP proposes using a dynamically positioned drillship, a mobile offshore drilling unit (MODU), to drill these wells.

**Resources and Impacts Considered**: The impact analysis focused on the exploration activities and the resources that may be potentially impacted. The impact-producing factors (IPF) include (1) bottom disturbances, (2) waste and discharges, (3) noise, (4) vessel traffic, (5) air emissions, (6) spills, (7) spill response, and (8) marine trash and debris.

In the Initial DOCD, as amended, BP has included all required mitigation measures (e.g., lease stipulations and NMFS 2025 BiOp terms and conditions and reasonable and prudent measures) and regulatory guidance as part of its Proposed Action. BOEM has assessed the impacts of the Proposed Action on the following resources:

- marine mammals;
- sea turtles;
- air quality;
- archaeological resources;
- benthic communities;
- marine and coastal birds;
- fish resources and essential fish habitat (EFH);
- human/socioeconomic resources;
- other marine uses; and
- water quality;

Based on the site-specific analysis, the Proposed Action would result in negligible to minor impacts to marine mammals and sea turtles because those resources might be present at times or located near proposed activities and could potentially be impacted. Based on this site-specific analysis, BOEM's other

**Appx-73**

BOEM022494

environmental reviews under OCSLA and NEPA, and adherence to all required mitigation measures and regulatory guidance incorporated into the Proposed Action, no additional mitigation measures are required at this stage.

Section 2.1 of the DOCD provides information on the filing or approval status of the individual and/or site-specific Federal, State and local application approvals or permits that must be obtained prior to conducting the proposed activities. BOEM has a well-established suite of commonly applied mitigation measures (see Chapters 5 and 6 of the Oil and Gas SID) that can be applied to any of the required subsequent BOEM/BSEE permits or approvals to ensure compliance with BOEM and BSEE's regulations and other Federal laws. BOEM is also able to revise applicable mitigations as needed to adaptively manage mitigation compliance and effectiveness at each approval or permitting stage. Therefore, this SEA considers two alternatives: (1) No Action and (2) Proposed Action. Appendix C provides reasoning for why BOEM determined separate alternatives were not warranted to address the following topics of concern:

- Rice's Whale (see responses to BOEM-2025-0022-0004 and BOEM-2025-0022-0030)

- Deepwater and high-pressure/high-temperature (HP/HT) drilling (see responses to BOEM-2025-0022-0002, BOEM-2025-0022-0004, and BOEM-2025-0022-0051)

- Environmental justice concerns including community benefit agreements (see responses to BOEM-2025-0022-0013 and BOEM-2025-0022-0014)

In the N-10256 DOCD, and in accordance with lease terms and applicable regulations and guidance, BP has committed to employ required mitigation measures to address potential impacts to air quality, water quality, benthic communities, marine mammals, sea turtles, fish resources and EFH, and archaeological resources from the Proposed Action. Any remaining impacts would be negligible. Therefore, BOEM has selected Alternative 2, the Proposed Action, and will not require additional mitigation measures as conditions of approval (COAs) at the DOCD stage. Below are the required mitigation measures:

- **COMPLIANCE WITH BIOLOGICAL OPINION TERMS AND CONDITIONS AND REASONABLE AND PRUDENT MEASURES:** This approval is conditioned upon compliance with the Reasonable and Prudent Measures and implementing Terms and Conditions of the Biological Opinion issued by the National Marine Fisheries Service on May 20, 2025. This includes mitigation, particularly any Terms and Conditions applicable to the plan, as well as record-keeping and

**Appx-74**

BOEM022495

reporting sufficient to allow BOEM and BSEE to comply with reporting and monitoring requirements under the BiOp; and any additional reporting required by BOEM or BSEE developed as a result of BiOp implementation. The NMFS Biological Opinion may be found here: https://www.fisheries.noaa.gov/resource/document/biological-and-conference-opinion-bureau-ocean-energy-management-and-bureau. The BiOp Attachments and Appendices may be found here: https://www.fisheries.noaa.gov/resource/document/attachments-and-appendices-2025-gulf-america-oil-and-gas-biological-opinion.

- **MARINE DEBRIS PROTOCOL**: The applicant will follow the protocols provided under Attachment 2 (A.2): Marine Debris Protocol found in the Biological Opinion issued by the National Marine Fisheries Service on May 20, 2025. The protocols can be accessed on NOAA Fisheries internet website at https://www.fisheries.noaa.gov/resource/document/attachments-and-appendices-2025-gulf-america-oil-and-gas-biological-opinion.

- **VESSEL-STRIKE AVOIDANCE AND INJURED AND/OR DEAD AQUATIC PROTECTED SPECIES REPORTING PROTOCOLS:** The applicant will follow the protocols provided under Attachment 3 (A.3): Vessel Strike Avoidance and Injured and/or Dead Aquatic Protected Species Reporting Protocols found in the Biological Opinion issued by the National Marine Fisheries Service on May 20, 2025. The protocols can be accessed on NOAA Fisheries internet website at https://www.fisheries.noaa.gov/resource/document/attachments-and-appendices-2025-gulf-america-oil-and-gas-biological-opinion.

- **IN-WATER LINE PRECAUTION PROTOCOL:** The applicant will follow the protocols provided under Attachment 5 (A.4): In-water Line Precaution Protocol found in the Biological Opinion issued by the National Marine Fisheries Service on May 20, 2025. The protocols can be accessed on NOAA Fisheries internet website at https://www.fisheries.noaa.gov/resource/document/attachments-and-appendices-2025-gulf-america-oil-and-gas-biological-opinion.

- **MOON POOL MONITORING PROTOCOL:** The applicant will follow the protocols provided under Attachment 6 (A.5): Moon Pool Monitoring Protocol found in the Biological Opinion issued by the National Marine Fisheries Service on May 20, 2025. The protocols can be accessed on NOAA Fisheries internet website at https://www.fisheries.noaa.gov/resource/document/attachments-and-appendices-2025-gulf-america-oil-and-gas-biological-opinion.

BOEM022496

- **VESSEL TRANSIT WITHIN THE RICE'S WHALE AREA AS IDENTIFIED IN THE 2020 BIOLOGICAL OPINION'S REASONABLE AND PRUDENT ALTERNATIVE (2020 RWA):** The applicant will follow the protocols provided under Attachment 4 (A.6): Vessel Transit within the Rice's Whale Area as identified in the 2020 Biological Opinion's Reasonable and Prudent Alternative (2020 RWA) found in the Biological Opinion issued by the National Marine Fisheries Service on May 20, 2025. The protocols can be accessed on NOAA Fisheries internet website at https://www.fisheries.noaa.gov/resource/document/attachments-and-appendices-2025-gulf-america-oil-and-gas-biological-opinion.

- **SEA TURTLE RESUSCITATION GUIDELINES PROTOCOL:** The applicant will follow the protocols provided under Attachment 10 (A.7): Sea Turtle Resuscitation Guidelines Protocol found in the Biological Opinion issued by the National Marine Fisheries Service on May 20, 2025. The protocols can be accessed on NOAA Fisheries internet website at https://www.fisheries.noaa.gov/resource/document/attachments-and-appendices-2025-gulf-america-oil-and-gas-biological-opinion.

**Conclusion:** BOEM has evaluated the potential environmental impacts of the Proposed Action and, based on our evaluation in this SEA, BOEM has selected Alternative 2. The Proposed Action would have no new significant impacts on the human environment not already disclosed in the 2025 GOA PEIS, from which the SEA tiers. Therefore, preparation of an environmental impact statement is not required. Any new information relevant to resources was updated and analyzed in the attached SEA and the other documents listed above that were reviewed and considered by BOEM.

PERRY BOUDREAUX

Digitally signed by PERRY BOUDREAUX
DN: c=US, o=U.S. Government, ou=Department of the Interior, ou=Bureau of Ocean Energy Management, cn=PERRY BOUDREAUX, 0.9.2342.19200300.100.1.1=14001001318382
Date: 2026.03.13 11:26:24 -05'00'

March 13, 2026

_____
Supervisor, Environmental Assessment Unit 2
Office of Environment
Gulf of America OCS Region
Bureau of Ocean Energy Management

_____
Date

**Appx-76**

BOEM022497

# Certification of Environmental Assessment Compliance

This letter certifies the attached site-specific environmental assessment (SEA) for Development Operations Coordination Document (DOCD) No. N-10256 submitted by BP Exploration & Production Inc. complies with the requirements outlined in Section 1.5 of the DOI Handbook of National Environmental Policy Act Implementing Procedures (516 DM 1).

## Page Limit Certification

The SEA, not including citations and appendices, does not exceed the 75-page limit. This document has been prepared in accordance with the specified formatting criteria outlined in Section 1.5(e) of 516 DM 1. As the responsible official, I certify that the breadth and depth of the analysis have been tailored to meet this page limit. This SEA represents BOEM's good-faith effort to prioritize the most important considerations required by NEPA within the mandated page limits. Our prioritization reflects the bureau's expert judgment, and any considerations addressed briefly or left unaddressed were, in our judgment, not of a substantive nature that would have meaningfully informed the environmental effects or the resulting decision.

## Deadline Certification

This SEA has been completed within the required statutory deadline described in Section 1.5(f) of 516 DM 1. The completion date of this document is within one year of November 13, 2025, which is when the amended DOCD was deemed submitted as per 30 CFR § 550.231 (i.e., 'the date the applicant was notified their application was complete'). I certify that this document represents the bureau's good-faith effort to fulfill NEPA's requirements within the congressional timeline. In our expert opinion, the analysis is thorough and adequate to inform and reasonably explain the bureau's decision regarding the Proposed Action.

PERRY BOUDREAUX

Digitally signed by PERRY BOUDREAUX
DN: c=US, o=U.S. Government, ou=Department of the Interior, ou=Bureau of Ocean Energy Management, cn=PERRY BOUDREAUX, 0.9.2342.19200300.100.1.1=14001001318382
Date: 2026.03.13 11:26:47 -05'00'

March 13, 2026

_____
Supervisor, Environmental Assessment Unit 2
Office of Environment
Gulf of America OCS Region
Bureau of Ocean Energy Management

Date

**Appx-77**

BOEM022498

# TABLE OF CONTENTS

LIST OF TABLES ...........................................................................................................ix

1 INTRODUCTION ................................................................................................... 1

   1.1 Background ................................................................................................... 2

   1.2 Purpose of and Need for the Proposed Action ............................................ 3

   1.3 Description of Proposed Action ................................................................... 3

   1.4 Impact-Producing Factors ........................................................................... 4

      1.4.1 Routine Activities ............................................................................... 5

      1.4.2 Accidental Events .............................................................................. 5

   1.5 Accidental Spill Concerns ........................................................................... 6

2 ALTERNATIVES CONSIDERED .......................................................................... 11

   2.1 No Action ................................................................................................... 11

   2.2 Proposed Action ........................................................................................ 12

   2.3 Summary and Comparison of the Alternatives ........................................... 14

3 AFFECTED ENVIRONMENT AND ENVIRONMENTAL IMPACTS ........................ 16

   3.1 Introduction ............................................................................................... 16

      3.1.1 Potentially Affected Resources ........................................................ 16

      3.1.2 Resources Not Affected or Negligibly Impacted................................ 16

   3.2 Marine Mammals ....................................................................................... 20

      3.2.1 Affected Environment........................................................................ 20

      3.2.2 Impact Analysis ............................................................................... 21

         3.2.2.1 Alternative 1 ........................................................................ 22

         3.2.2.2 Alternative 2 ........................................................................ 22

      3.2.3 Routine Activities ............................................................................. 23

      3.2.4 Accidental Events ............................................................................ 24

   3.3 Sea Turtles ............................................................................................... 27

      3.3.1 Affected Environment........................................................................ 27

      3.3.2 Impact Analysis ............................................................................... 28

         3.3.2.1 Alternative 1 ........................................................................ 29

         3.3.2.2 Alternative 2 ........................................................................ 29

      3.3.3 Routine Activities ............................................................................. 29

      3.3.4 Accidental Events ............................................................................ 31

   3.4 Air Quality ................................................................................................. 33

      3.4.1 Affected Environment........................................................................ 34

      3.4.2 Impact Analysis ............................................................................... 35

         3.4.2.1 Alternative 1 ........................................................................ 36

         3.4.2.2 Alternative 2 ........................................................................ 36

      3.4.3 Routine Activities ............................................................................. 36

      3.4.4 Accidental Events ............................................................................ 37

4 CONSULTATION AND COORDINATION ............................................................. 38

**Appx-78**

BOEM022499

5 PUBLIC COMMENT ........................................................................... 43

A IMPACT-PRODUCING FACTOR DESCRIPTIONS ................................................. A-1

B LIST OF PREPARERS ...................................................................... B-1

C PUBLIC REVIEW AND COMMENTS ON THE DOCD ........................................ C-1

D REFERENCES ............................................................................. D-1

**Appx-79**

BOEM022500

## LIST OF TABLES

Table 1-1. Worst-Case Discharges from Proposed Drilling Rigs and Vessels................ 7
Table 2-1. Summary of Alternatives and Potential Impacts to Resources ................... 14
Table 3-1. Resources Not Included for Further Analysis ............................................. 18
Table 3-2. Summary of Impact Levels to Marine Mammals........................................ 22
Table 3-3  Summary of Impact Levels to Sea Turtles.................................................. 29
Table 3-4. Nonattainment and Maintenance Areas on the U.S. Gulf Coast................. 34
Table 3-5. Summary of Impact Levels for Air Quality ................................................. 35
Table 3-6. Estimated Peak Yearly Emissions in Tons per Year (tpy) .......................... 36

**Appx-80**

BOEM022501

# Site-Specific Environmental Assessment (SEA)

# BP Exploration & Production Inc.
# Initial Development Operations
# Coordination Document: N-10256

## 1 INTRODUCTION

This Site-Specific Environmental Assessment (SEA) has been prepared to determine whether the proposed activities outlined in the Initial Development Operations Coordination Document (DOCD), N-10256, initially submitted by BP Exploration & Production Inc. (BP) on February 18, 2025, and amended on November 13, 2025, will significantly affect the quality of the human environment within the meaning of Section 102(2)(c) of the National Environmental Policy Act (NEPA) and, if so, require an environmental impact statement (EIS) to be prepared. BP's Initial DOCD, as amended, proposes to develop hydrocarbons by drilling, completing, and producing six wells with four associated back up locations (Proposed Action). Wells DC1-A, DC1-B, DC1-C, DC2-A, DC2-B, DC2-C, and backup wells DC1-D, DC1-E, DC2-D and DC2-E are located in Keathley Canyon (KC) Block 292, Lease Number OCS-G 25792 in the Central Planning Area (CPA) of the Outer Continental Shelf (OCS). In addition, a Floating Production Unit (FPU) will be installed in KC Block 293 with 12 mooring lines located in KC Blocks 292, 293, 336, and 337.

The DOI Handbook of NEPA Implementing Procedures (516 DM 1), dated February 2026, is designed to allow for the preparation of an SEA for an individual proposed action as long as any previously unanalyzed effects are not significant. As such, this SEA is tiered to, or incorporates by reference, the following Bureau of Ocean Energy Management (BOEM) NEPA and supporting documents, which evaluated the potential impacts resulting from exploration and development activities across the OCS.

- *Biological Opinion Oil and Gas Leasing, Exploration, Development, Production, Decommissioning, and All Related Activities in the Gulf of Mexico Outer Continental Shelf* (FWS 2018 BiOp) (Issued by United States Fish and Wildlife Service [FWS] on April 20, 2018) (FWS 2018)

- *Gulf of Mexico Catastrophic Spill Event Analysis: High-Volume, Extended-Duration Oil Spill Resulting from Loss of Well Control on the Gulf of Mexico Outer Continental Shelf; 2nd Revision* (Gulf of Mexico Catastrophic Spill Event Analysis) (BOEM 2021b)

- *Biological Environmental Background Report for the Gulf of Mexico OCS Region* (BEBR) (BOEM 2021a)

**Appx-81**

BOEM022502

- *Programmatic Description of the Potential Effects from Gulf of Mexico OCS Oil- and Gas-Related Activities: A Supporting Information Document* (Oil and Gas SID) (OCS Report BOEM 2023-053) (BOEM 2023)

- *Biological and Conference Opinion on Bureau of Ocean Energy Management and Bureau of Safety and Environmental Enforcement's Oil and Gas Program Activities in the Gulf of America* (NMFS 2025 BiOp) (Issued by National Marine Fisheries Service [NMFS] on May 20, 2025) (NMFS 2025b)

- *Gulf of America Regional OCS Oil and Gas Lease Sales and Post-Lease Activities: Final Programmatic Environmental Impact Statement* (2025 GOA PEIS) (OCS EIS/EA BOEM 2025-042) (BOEM 2025b)

This SEA analyzes the potential impacts resulting from the proposed site-specific activities. Relevant affected environment discussions and impact analyses from the 2025 GOA PEIS are summarized and utilized for site-specific analysis through tiering. Where applicable, additional information available in the BEBR, Oil and Gas SID, and other supporting documents above was incorporated by reference, consistent with DOI's Handbook of NEPA implementing procedures. Relevant new information published after the above-referenced environmental analyses is included by citation. Lease stipulations, the Outer Continental Shelf Lands Act (OCSLA), all applicable Federal, State, and local regulations (as per 30 CFR § 550.101(a)); guidance provided in all applicable Notices to Lessees and Operators (NTLs) (as per 30 CFR § 550.103); and mitigation and monitoring measures identified in this SEA, the 2025 GOA PEIS, FWS 2018 BiOp, and the NMFS 2025 BiOp have been considered in the evaluation of the Proposed Action.

Secretarial Order 3423 directed the renaming of the Gulf of Mexico to the Gulf of America. As a result, BOEM is updating new content to refer to the Gulf of America, while legacy content such as previously published reports, studies, and NEPA documents remain unchanged.

## 1.1 BACKGROUND

BOEM and the Bureau of Safety and Environmental Enforcement (BSEE) have been delegated the authority under OCSLA to manage and oversee the exploration and development of OCS oil, gas, and mineral resources while ensuring safe operations and the protection of the human environment. Working together, BOEM and BSEE manage oil and gas leases, permits, authorizations, and regulate exploration, development, production, and decommissioning. Prior to authorizing activities related to these phases, BOEM conducts resource and NEPA reviews. BOEM's Office of Leasing and Plans oversees the submittal of Exploration Plans (EPs) and DOCDs pursuant to 30 CFR part 550 subpart B.

BOEM022503

As required by 30 CFR § 550.201, lessees and operators submit EPs and DOCDs to provide BOEM with information needed to adequately evaluate the overall potential impacts to the human environment prior to conducting activities on the lease. Submittal of an environmental impact analysis (EIA) is required in EPs under 30 CFR § 550.227 and in DOCDs under 30 CFR § 550.261, wherein the operator provides environmental information and makes impact conclusions regarding their proposed activities.

## 1.2 PURPOSE OF AND NEED FOR THE PROPOSED ACTION

BP has submitted a plan to conduct development activities on the OCS. The purpose of the Proposed Action is to drill, complete, and commercially produce hydrocarbon resources from six wells on OCS Lease Number OCS-G 25792, which would contribute to the Nation's energy needs.

The need for this action is established by BOEM's responsibility under OCSLA to make OCS lands available for expeditious and orderly development, subject to environmental safeguards, in a manner that is consistent with the maintenance of competition and other national needs. Section 25 of OCSLA (43 United States Code (U.S.C.) § 1350) requires oil and gas lessees seeking to conduct development activities on the OCS to first obtain approval from the Secretary who has delegated the authority to grant such approval to BOEM.

In response to the Proposed Action in BP's plan, BOEM is required by OCSLA to approve, approve with modifications, or deny the plan within 120 days (refer to 43 U.S.C. § 1345(h)(1)). The criteria that BOEM will apply in reaching a decision to approve, approve with modifications, or deny the plan within 120 days and the scope of its discretion are provided by Section 25 of OCSLA and detailed in the implementing regulations (30 CFR part 550 subpart B). Authorizing the Proposed Action, as outlined in the Initial DOCD N-10256, allows BP to pursue its rights under the lease and to conduct development drilling activities, producing oil and gas and resulting in royalties for the U.S. Treasury and an important feedstock for the economy.

## 1.3 DESCRIPTION OF PROPOSED ACTION

BP's Initial DOCD, as amended, proposes to drill, complete and produce six wells with four associated back up locations (Proposed Action). Wells DC1-A, DC1-B, DC1-C, DC2-A, DC2-B, DC2-C, and backup wells DC1-D, DC1-E, DC2-D and DC2-E are located in KC Block 292, Lease Number OCS-G 25792 in the CPA of the OCS. In addition, an FPU will be installed in KC Block 293 with 12 mooring lines located in KC Blocks 292, 293, 336, and 337. The Proposed Action is located southwest of Port Fourchon, Louisiana, approximately 190 miles (mi) (306 kilometers [km]) from the nearest shoreline in Terrebonne Parish, Louisiana. The water depth of the project area ranges from 5,561 – 6,085 feet (ft) (1,695 – 1,855 meters [m]). BP proposes using a

**Appx-83**

dynamically positioned (DP) drillship, i.e., a mobile offshore drilling unit (MODU), to drill these wells. The projected duration of the proposed drilling, completion, and commencement of production of one well is 292 days, with all proposed activities in the Initial DOCD planned between July 2026 and June 2030. The installation of the FPU and associated infrastructure is planned between July 2027 through September of 2028.

The DOCD provides air quality and activity schedule information for associated lease term infrastructure. Drill Center 1 (DC1) includes four (4) well/manifold jumpers, one (1) subsea pump system, four (4) flowline jumpers, and four (4) PLETS and holdback system. Drill Center 2 (DC2) includes four (4) well/manifold jumpers, and one (1) flowline jumper. The proposed ROW pipelines would be built, owned and operated by Enbridge and are not included in this DOCD but rather, will undergo separate site-specific environmental reviews through the BOEM/BSEE TIMS Web application submittals. However, potential impacts from pipelines and mitigation measures were analyzed more broadly in the 2025 GOA PEIS, from which this SEA tiers, with additional information and analyses in the Oil and Gas SID, BEBR, and NMFS 2025 BiOp, which are incorporated by reference. Chapter 5.2.7.3 of the Oil and Gas SID describes the permitting and NEPA review processes associated with pipeline applications. Pipeline applications are reviewed separately but not approved by BSEE until any associated DOCDs are approved by BOEM. Through these reviews, BOEM will verify that BP has conformed to all requirements. Therefore, it is anticipated that any potential impacts from associated pipelines would be mitigated by existing lease sale stipulations and COAs applied through site-specific reviews of pipeline applications.

Supply and crew boat facilities to support the proposed activities are to be located in existing facilities in Port Fourchon, Louisiana, approximately 220 mi (354 km) northeast of the project location. Port Fourchon would be used as the debarkation point for equipment, supplies, and crews supporting the proposed activities. Helicopter support would be flown out of Houma, Louisiana, approximately 229 mi (369 km) northeast of the project area. BP does not expect any shore-based construction or expansion in association with these proposed activities. The types of support vessels and their potential travel frequency during exploratory drilling are included in BP's plan (BP Exploration & Production Inc. 2025). No new or unusual technology is proposed by BP.

## 1.4 IMPACT-PRODUCING FACTORS

For purposes of this analysis, an impact-producing factor (IPF) is the outcome of a proposed activity that may pose a vulnerability risk or potential impact to the human environment, such as noise (acoustic source), air emissions, discharges and waste (effluent), or offshore habitat modification (physical disturbance). The impact analysis evaluates the potentially affected environment and the degree of the effects of the

4

**Appx-84**

# 4  CONSULTATION AND COORDINATION

**Coastal Zone Management Act**

Per 15 CFR part 930 subpart D (private activities that require a Federal permit or license) and subpart E (OCS plans), proposed activities must be "fully consistent" with enforceable policies of a State's coastal management program. Consistency concurrence has been received from the states of Louisiana, Texas, and Alabama.

**Endangered Species Act**

The ESA of 1973 (16 U.S.C. §§ 1531 *et seq.*), as amended, establishes a national policy designed to protect and conserve threatened and endangered species and the ecosystems upon which they depend. Section 7(a)(2) of the ESA requires each Federal agency to ensure that any action that it authorizes, funds, or carries out is not likely to jeopardize the continued existence of a listed species or result in the adverse modification of designated critical habitat.

BOEM and BSEE engaged in consultation under the ESA with NMFS and FWS. On May 20, 2025, the NMFS published their Biological and Conference Opinion on Bureau of Ocean Energy Management and Bureau of Safety and Environmental Enforcement's Oil and Gas Program Activities in the Gulf of America (NMFS 2025b) and associated Attachments and Appendices (NMFS 2025a), which contain protocols BOEM implements for ESA compliance, including several included as part of the Proposed Action for the consultation. In addition, any future BiOp amendments or COAs will be binding on subsequent post-lease actions. The NMFS 2025 BiOp and supporting documents can be found online at https://www.fisheries.noaa.gov/resource/document/biological-and-conference-opinion-bureau-ocean-energy-management-and-bureau. The NMFS 2025 BiOp Attachments and Appendices can be found online at: https://www.fisheries.noaa.gov/resource/document/attachments-and-appendices-2025-gulf-america-oil-and-gas-biological-opinion.

Based on BOEM's internal step-down review on February 24, 2026, this plan does not require a step-down review by NMFS. BOEM concludes the action or activity may affect listed species or critical habitat, but it is an action or activity whose effects have been analyzed and addressed programmatically in the NMFS 2025 BiOp.

On April 20, 2018, the U.S. Fish and Wildlife Service (FWS) issued a 10-year BiOp for BOEM and BSEE activities with no terms and conditions, and any future consultations may be informal, dependent upon the likelihood of take of ESA-listed species under that Service's jurisdiction (FWS 2018). On March 6, 2024, BOEM and BSEE requested reinitiation of consultation with FWS regarding updated oil-spill risk analyses, new listings, and general species information. FWS requested additional information from BOEM and BSEE in a letter dated December 20, 2024; the Bureaus

BOEM022539

# EXHIBIT B



# OCS Plans Map for
# Coastal Zone Management Program

**BOEM**
BUREAU OF OCEAN ENERGY MANAGEMENT

# EXHIBIT C



# EXHIBIT D

No. 26-11284

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

HEALTHY GULF, HABITAT RECOVERY PROJECT, CENTER FOR
BIOLOGICAL DIVERSITY, SIERRA CLUB, and TURTLE ISLAND
RESTORATION NETWORK,
*Petitioners*,

*v.*

U.S. DEPARTMENT OF THE INTERIOR; DOUG BURGUM, in his
official capacity as Secretary of the Interior; BUREAU OF OCEAN
ENERGY MANAGEMENT, and MATTHEW GIACONA, in his official
capacity as Director of the Bureau of Ocean Energy Management,
*Respondents*.

---

## DECLARATION OF MICHELLE PICOU

---

I, Michelle Picou, state the following:

1. I am the Supervisor of Plans Section for Bureau of Ocean Energy Management's (BOEM) Gulf of America Region in the United States Department of Interior (DOI). In this position I oversee BOEM's assessment and approval of Development Operations Coordination Documents (DOCD), and determine which states receive notice of the submittal of such documents for review and comments as required by

statute. I also oversee any designation or finding that a state is an "affected" state under section 1331(f) of the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1331. I performed these duties for the DOCD at issue in the present litigation.

2.     When determining which states will receive notice that a DOCD has been submitted, BOEM uses an analysis that combines the definitions for "affected state" from the Outer Continental Shelf Lands Act (OCSLA) located at 43 U.S.C. § 1331(f) and 30 C.F.R. 550.105, and the consistency determinations under section 307 of the Coastal Zone Management Act (CZMA).

3.     Under this approach, BOEM provides notice to states that qualify as "affected" under the auspices of OCSLA, as well as those states for which a consistency determination would be required under the CZMA. BOEM does not typically make a discrete, written finding as to which statute triggered the notice to each individual state.

4.     In the case of the DOCD submitted by BP for the BP Kaskida installation, I determined that Alabama should receive notice of the DOCD because it included the port of Mobile, Alabama as a backup port for the transport of supplies, which likely would require a

consistency determination under the CZMA. Notice was not sent to Alabama because BOEM determined or believed that Alabama qualified as an affected state under OCSLA.

5.    BOEM has not designated Alabama as an affected state or found Alabama to be an affected state under 42 U.S.C. § 1331(f) for purposes of the Kaskida DOCD. Nor does it believe that Alabama would qualify as an affected state under OCSLA.

6.    The statements made in this declaration are based upon my personal knowledge, or upon information available to me in my official capacity and are true and correct to the best of my knowledge and belief.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 under the laws of the United States of America that the foregoing is true and correct.


Respectfully Submitted this 15th day of July 2026.

MICHELLE PICOU

Digitally signed by MICHELLE PICOU
Date: 2026.07.15 15:57:17 -05'00'

Michelle Picou