Case No. 26-11284

---

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

HEALTHY GULF, HABITAT RECOVERY PROJECT, CENTER FOR BIOLOGICAL DIVERSITY, SIERRA CLUB, and TURTLE ISLAND RESTORATION NETWORK,

*Petitioners,*

v.

U.S. DEPARTMENT OF THE INTERIOR; DOUG BURGUM, in his official capacity as Secretary of the Interior; BUREAU OF OCEAN ENERGY MANAGEMENT; and MATTHEW GIACONA, in his official capacity as Director of the Bureau of Ocean Energy Management,

*Respondents,*

BP EXPLORATION & PRODUCTION, INC.,
*Intervenor-Respondent.*

---

## PETITIONERS' OPPOSITION TO RESPONDENTS' TIME-SENSITIVE
## MOTION TO STAY MERITS BRIEFING

---

Rumela Roy
EARTHJUSTICE
1125 17th Street, Suite 1010
Denver, CO 80202
303-623-9466 Telephone
415-217-2040 Fax
rroy@earthjustice.org

Brettny Hardy
EARTHJUSTICE
180 Steuart St. #194330
San Francisco, CA 94105
415-217-2000 Telephone
415-217-2040 Fax
bhardy@earthjustice.org

*Counsel for Petitioners*

Petitioners Healthy Gulf, Habitat Recovery Project, Center for Biological Diversity, Sierra Club, and Turtle Island Restoration Network oppose Respondents' time-sensitive motion to stay merits briefing pending resolution of their motion to dismiss or transfer. Doc. 29. Indefinitely delaying consideration of the merits would prejudice Petitioners because BP Exploration & Production, Inc. ("BP") could begin its risky drilling operations any day. Moreover, the issue at the heart of Respondents' motion to dismiss or transfer requires this Court to decide a matter of first impression and evaluate record evidence. This Court should wait until merits briefing, when a complete factual record and complete briefing will be available, to decide this complicated, fact-dependent issue. Rather than stay merits briefing, this Court should instead carry Respondents and Intervenor-Respondent's motions to dismiss or transfer with the case. In the alternative, Petitioners request that the Court issue a time-limited stay.

## BACKGROUND

1.      Petitioners filed their petition for review on April 20, 2026. The petition challenges the Bureau of Ocean Energy Management's ("BOEM") approval of BP's development and operations plan to drill several wells in ultra-deep water, under high pressure conditions, which carry a high risk of blowout and worst-case oil spill event. Doc. 12-1, at 2–3; Doc. 12-3, at PDF pp. 10–12.

2

2.    BP's development and operations plan includes a tentative schedule for drilling, completion, and production of the wells to occur between July 1, 2026, and June 30, 2030, leaving a four-year window for BP to complete its risky drilling operations. Ex. A, BOEM00130. The associated environmental assessment ("EA") states that drilling, completion, and the commencement of production of one well takes 292 days, Ex. B, BOEM022504–05, meaning that BP must commence drilling of all its wells within the next three years, at the latest, to meet the current schedule.

3.    Petitioners contacted both BP and Respondents for any schedule updates and more specific information about when BP's risky drilling operations would begin. BP and Respondents have not provided any updates or additional information to date.

4.    This Court issued a jurisdictional question on May 15, 2026, asking the parties to address subject matter jurisdiction and standing. Doc. 7-2.

5.    In its response, dated May 15, 2026, Petitioners explained that full development of the record evidence will inform the main issue at the heart of the Court's question: whether Alabama is an "affected state" under 43 U.S.C. § 1349(c)(2). Doc. 12-1, at 6 (noting that the record "will more fully demonstrate" the answer to that question).

6.     In their response, dated May 15, 2026, Respondents also indicated that factual evidence would inform their own response to the Court's question. Doc. 10, at 1 (stating that BOEM had not "completed its review" of the record, which could inform its understanding of whether Alabama is an affected state).

7.     Although Respondents stated in their response that they intended to file a motion to dismiss or transfer venue based on the affected state issue "promptly," Doc. 10, at 6–7, Respondents waited two months, until July 15, 2026, to file their motion to dismiss or transfer, Doc. 28, only after they filed the administrative record on July 1, 2026, Doc. 24-1. Respondent's motion focused almost entirely on the issue of whether Alabama is an affected state. *See* Doc. 28.

8.     On July 15, 2026, BP also submitted a motion to dismiss or transfer, also focused on the issue of whether Alabama is an affected state. Doc. 26.

9.     In the motion to dismiss or transfer, Respondents cited extensively to record evidence, attaching excerpts from twelve record documents, which included over 95 pages of record material. Doc. 28, at PDF pp. 35–124.

10.     Petitioners have identified several documents that are missing from the record and unavailable to Petitioners, including proprietary information that BP included in its development and operations plan. Petitioners have provided the list of unavailable materials to Respondents and are engaged in negotiations with them

to supplement the record with that material. Some of this material may inform the central issue in Respondents' and BP's motions.

## ARGUMENT

11.    Rather than stay merits briefing, this Court should carry Respondents' and BP's motions to dismiss or transfer with this case. *See infra* at ¶ 16 (collecting examples of this practice). Indefinitely delaying merits briefing as Respondents propose will prejudice Petitioners who have an interest in ensuring that BP's drilling operations are safe and that BP is prepared to respond to a blowout, given the high risks involved in high pressure drilling.

12.    Under the current operations schedule, BP's risky drilling could start as early as this year or even this month. If drilling operations do begin soon, an indefinite stay of the merits briefing would undoubtedly prejudice Petitioners because the harms Petitioners seek to prevent through this litigation could manifest before this Court can review the merits.

13.    In contrast, aside from "rais[ing] the specter" that all parties may need to devote time to briefing that *could* become unnecessary, Doc. 29, at 6, Respondents identify no real prejudice to their interests in proceeding to merits briefing.

14.    In addition to the potential prejudice to Petitioners, this Court should carry Respondents' and BP's motions to dismiss or transfer with the case so it can

5

decide the motions based on a complete record, with all the relevant evidence. The central issue in Respondents' and BP's motions is whether Alabama is an "affected state." *See* Doc. 28; Doc. 29, at 3–4; Doc. 26. No court has had occasion to resolve contested readings of the "affected state" definition under 43 U.S.C. § 1349(c)(2). As Petitioners' and Respondents' filings demonstrate, consideration of that issue in this case is also highly dependent on factual record evidence.

15.    As described above, Petitioners have identified several documents that are missing from the record and unavailable to Petitioners. Rather than decide this precedential issue with an incomplete record, this Court should carry Respondents' and BP's motions with the case.

16.    This Court often carries jurisdictional issues with the case, even after respondents or appellees file a motion to dismiss. *E.g.*, *United States v. Oviedo*, No. 21-13046, 2022 WL 16985106, at *1–2 (11th Cir. Nov. 17, 2022) (Court ordered that the government's motion to dismiss for untimeliness be carried with the case for "careful review"); *Managed Care Advisory Group, LLC v. United Healthcare of N.C.*, No. 21-10247, 2022 WL 792267, at *1 (11th Cir. March 16, 2022) (carrying jurisdictional issue raised by the Court and in a subsequent motion to dismiss with the case); *Campos Ruiz v. U.S. Atty. Gen.*, 852 Fed. Appx. 416, 418 (11th Cir. 2021) (Court carried the issue of whether it had subject matter jurisdiction to the merits stage); *Payroll Mgmt., Inc. v. Lexington Ins.*, 566 Fed.

Appx. 796, 798 (11th Cir. 2014) (Court carried issue of subject matter jurisdiction with the case); *Mohammed v. Ashcroft*, 261 F.3d 1244, 1247 (11th Cir. 2001) (Court carried a "lengthy set of jurisdictional questions" with the case); *see also* Order of the Ct., *Ctr. for Biological Diversity v. EPA*, No. 25-10515 (11th Cir. April 15, 2025), Doc. 16-2, at 3 (carrying the issue of standing to merits briefing when the petitioner would provide evidence).

17.    In arguing this Court should stay merits proceedings, Respondents mischaracterize "settled practice and case law." Doc. 29, at 7. While it is certainly true that subject matter jurisdiction is a "threshold" issue that courts must decide before reaching the merits, *see id.* at 6, it does not follow that courts are required to hear "separate merits briefing," *id*. at 7. Rather, as demonstrated above, this Court often does not entertain separate briefing, but waits to decide threshold jurisdictional issues until completing its review of merits briefing.

18.    Moreover, it is unsettled whether the issue is even jurisdictional. As BP notes in its separate motion to dismiss or transfer, "[n]o court has addressed whether the failure to satisfy [the affected state requirement] is a jurisdictional, rather than venue, flaw." Doc. 26, at 8 n.2. Relying on Supreme Court precedent, BP characterized the affected state requirement as a venue issue. *Id.*

19.    If this Court is inclined to address Respondents' and BP's motions to dismiss or transfer before merits briefing begins, Petitioners respectfully request

that it order a time-limited stay, rather than Respondents' requested indefinite stay. A stay of proceedings until October 1, 2026, would reduce the risk of prejudice to Petitioners by limiting the likelihood that BP will commence drilling activities before this Court reaches a merits decision, and provide this Court with time to decide the motions.

## CONCLUSION

For the foregoing reasons, this Court should deny Respondents' motion to stay merits briefing in this case and should instead carry Respondents' and BP's motions to dismiss or transfer with the case. Even if the Court is inclined to issue a stay, it should only order a time-limited stay until October 1, 2026, to reduce the risk of prejudice to Petitioners.

Dated this 27th day of July, 2026.

Respectfully submitted,

*/s/ Brettny Hardy*
Brettny Hardy
EARTHJUSTICE
180 Steuart St. #194330
San Francisco, CA 94105
415-217-2000 Telephone
415-217-2040 Fax
bhardy@earthjustice.org

Rumela Roy
EARTHJUSTICE
1125 17th Street, Suite 1010
Denver, CO 80202
303-623-9466 Telephone

415-217-2040 Fax
rroy@earthjustice.org

*Attorneys for Healthy Gulf, Habitat Recovery Project, Center for Biological Diversity, Sierra Club, and Turtle Island Restoration Network*

## CERTIFICATE OF COMPLIANCE

I hereby certify:

1.  This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Rule 32(f), this document contains 1,482 words.

2.  This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Brettny Hardy*
Brettny Hardy

# EXHIBIT A

U.S. Department of the Interior
Bureau of Ocean Energy Management

PUBLIC INFORMATION

OMB Control Number:  1010-0151
OMB Approval Expires:  6/30/2021

## OCS PLAN INFORMATION FORM

### General Information

| Type of OCS Plan: | | Exploration Plan (EP) | X | Development Operations Coordination Document (DOCD) |
|---|---|---|---|---|

| | |
|---|---|
| Company Name:  BP Exploration & Production Inc. | BOEM Operator Number:  02481 |
| Address:    501 Westlake Park Blvd. | Contact Person:   Betsy Cleland |
| Houston, TX 77079 | Phone Number:   281-773-9088 |
| | E-Mail Address:  betsy.cleland@bp.com |

| If a service fee is required under 30 CFR 550.125(a), provide the | Amount paid | $55,650 | Receipt No. | 27LFQKNM, 27LF6LVA, 27LEBOCB |
|---|---|---|---|---|

### Project and Worst-Case Discharge (WCD) Information

| Leases:  OCS-G 25792 | Area:  Keathley Canyon | Blocks:  292 | Project Name (If Applicable): Kaskida |
|---|---|---|---|

| Objective(s) | X | Oil | | Gas | | Sulphur | | Salt | Onshore Support Base(s): Fourchon, LA |
|---|---|---|---|---|---|---|---|---|---|

| Platform / Well Name:  Kaskida | Total Volume of WCD: 4 mmbo | API Gravity:  24.4 |
|---|---|---|

| Distance to Closest Land (Miles): 190 | Volume from uncontrolled blowout:  45,000 bopd |
|---|---|

| | | Yes | X | No |
|---|---|---|---|---|
| Have you previously provided information to verify the calculations and assumptions for your WCD? | | Yes | X | No |
| If so, provide the Control Number of the EP or DOCD with which this information was provided | | | | |
| Do you propose to use new or unusual technology to conduct your activities? | X | Yes | | No |
| Do you propose to use a vessel with anchors to install or modify a structure? | | Yes | X | No |
| Do you propose any facility that will serve as a host facility for deepwater subsea development? | X | Yes | | No |

### Description of Proposed Activities and Tentative Schedule (Mark all that apply)

| Proposed Activity | Start Date | End Date | No. of Days |
|---|---|---|---|
| Drill, Complete and Produce Drill Center 1 (DC1) Wells A through E | 7/1/2026 | 6/30/2030 | 1460 |
| Drill, Complete and Produce Drill Center 2 (DC2) Wells A through E | 7/1/2026 | 6/30/2030 | 1460 |
| Install piles, pipelines, manifolds, flying leads, jumpers and associated appurtenances | 7/15/2027 | 10/31/2027 | 108 |
| Install Semi-Submersible Production Facility | 7/1/2028 | 7/30/2028 | 30 |
| Install risers, umbilicals, pipelines, manifolds, flying leads, jumpers and associated appurtenances | 7/30/28 | 9/13/2028 | 45 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

### Description of Drilling Rig

| | | | | | |
|---|---|---|---|---|---|
| | Jackup | X | Drillship | | |
| | Gorilla Jackup | | Platform rig | | |
| | Semisubmersible | | Submersible | | |
| | DP Semisubmersible | | Other (Attach description) | | |
| Drilling Rig Name (If known): Invictus, Atlas or available Drillship | | | | | |

### Description of Structure

| | | |
|---|---|---|
| | Caisson | Tension leg platform |
| | Fixed platform | Compliant tower |
| | Spar | Guyed tower |
| X | Floating production system | Other (Attach description) |

### Description of Lease Term Pipelines

| From (Facility/Area/Block) | To (Facility/Area/Block) | Diameter (Inches) | Length (Feet) |
|---|---|---|---|
| P1 KC 292 DC1 Manifold | KC 293 FPU | 9.625" | 14,467 |
| P2 KC 292 DC1 Manifold | KC 293 FPU | 9.625" | 14,767 |

1

**Form BOEM-0137** (June 2018 – Supersedes all previous editions of this form which may not be used.)

# EXHIBIT B

As required by 30 CFR § 550.201, lessees and operators submit EPs and DOCDs to provide BOEM with information needed to adequately evaluate the overall potential impacts to the human environment prior to conducting activities on the lease. Submittal of an environmental impact analysis (EIA) is required in EPs under 30 CFR § 550.227 and in DOCDs under 30 CFR § 550.261, wherein the operator provides environmental information and makes impact conclusions regarding their proposed activities.

## 1.2 PURPOSE OF AND NEED FOR THE PROPOSED ACTION

BP has submitted a plan to conduct development activities on the OCS. The purpose of the Proposed Action is to drill, complete, and commercially produce hydrocarbon resources from six wells on OCS Lease Number OCS-G 25792, which would contribute to the Nation's energy needs.

The need for this action is established by BOEM's responsibility under OCSLA to make OCS lands available for expeditious and orderly development, subject to environmental safeguards, in a manner that is consistent with the maintenance of competition and other national needs. Section 25 of OCSLA (43 United States Code (U.S.C.) § 1350) requires oil and gas lessees seeking to conduct development activities on the OCS to first obtain approval from the Secretary who has delegated the authority to grant such approval to BOEM.

In response to the Proposed Action in BP's plan, BOEM is required by OCSLA to approve, approve with modifications, or deny the plan within 120 days (refer to 43 U.S.C. § 1345(h)(1)). The criteria that BOEM will apply in reaching a decision to approve, approve with modifications, or deny the plan within 120 days and the scope of its discretion are provided by Section 25 of OCSLA and detailed in the implementing regulations (30 CFR part 550 subpart B). Authorizing the Proposed Action, as outlined in the Initial DOCD N-10256, allows BP to pursue its rights under the lease and to conduct development drilling activities, producing oil and gas and resulting in royalties for the U.S. Treasury and an important feedstock for the economy.

## 1.3 DESCRIPTION OF PROPOSED ACTION

BP's Initial DOCD, as amended, proposes to drill, complete and produce six wells with four associated back up locations (Proposed Action). Wells DC1-A, DC1-B, DC1-C, DC2-A, DC2-B, DC2-C, and backup wells DC1-D, DC1-E, DC2-D and DC2-E are located in KC Block 292, Lease Number OCS-G 25792 in the CPA of the OCS. In addition, an FPU will be installed in KC Block 293 with 12 mooring lines located in KC Blocks 292, 293, 336, and 337. The Proposed Action is located southwest of Port Fourchon, Louisiana, approximately 190 miles (mi) (306 kilometers [km]) from the nearest shoreline in Terrebonne Parish, Louisiana. The water depth of the project area ranges from 5,561 – 6,085 feet (ft) (1,695 – 1,855 meters [m]). BP proposes using a

BOEM022504

dynamically positioned (DP) drillship, i.e., a mobile offshore drilling unit (MODU), to drill these wells. The projected duration of the proposed drilling, completion, and commencement of production of one well is 292 days, with all proposed activities in the Initial DOCD planned between July 2026 and June 2030. The installation of the FPU and associated infrastructure is planned between July 2027 through September of 2028.

The DOCD provides air quality and activity schedule information for associated lease term infrastructure. Drill Center 1 (DC1) includes four (4) well/manifold jumpers, one (1) subsea pump system, four (4) flowline jumpers, and four (4) PLETS and holdback system. Drill Center 2 (DC2) includes four (4) well/manifold jumpers, and one (1) flowline jumper. The proposed ROW pipelines would be built, owned and operated by Enbridge and are not included in this DOCD but rather, will undergo separate site-specific environmental reviews through the BOEM/BSEE TIMS Web application submittals. However, potential impacts from pipelines and mitigation measures were analyzed more broadly in the 2025 GOA PEIS, from which this SEA tiers, with additional information and analyses in the Oil and Gas SID, BEBR, and NMFS 2025 BiOp, which are incorporated by reference. Chapter 5.2.7.3 of the Oil and Gas SID describes the permitting and NEPA review processes associated with pipeline applications. Pipeline applications are reviewed separately but not approved by BSEE until any associated DOCDs are approved by BOEM. Through these reviews, BOEM will verify that BP has conformed to all requirements. Therefore, it is anticipated that any potential impacts from associated pipelines would be mitigated by existing lease sale stipulations and COAs applied through site-specific reviews of pipeline applications.

Supply and crew boat facilities to support the proposed activities are to be located in existing facilities in Port Fourchon, Louisiana, approximately 220 mi (354 km) northeast of the project location. Port Fourchon would be used as the debarkation point for equipment, supplies, and crews supporting the proposed activities. Helicopter support would be flown out of Houma, Louisiana, approximately 229 mi (369 km) northeast of the project area. BP does not expect any shore-based construction or expansion in association with these proposed activities. The types of support vessels and their potential travel frequency during exploratory drilling are included in BP's plan (BP Exploration & Production Inc. 2025). No new or unusual technology is proposed by BP.

## 1.4 IMPACT-PRODUCING FACTORS

For purposes of this analysis, an impact-producing factor (IPF) is the outcome of a proposed activity that may pose a vulnerability risk or potential impact to the human environment, such as noise (acoustic source), air emissions, discharges and waste (effluent), or offshore habitat modification (physical disturbance). The impact analysis evaluates the potentially affected environment and the degree of the effects of the

BOEM022505